# ORIGINAL

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TYRONE P. JAMES | : |
| Plaintiff | : CIVIL NO. 1:CV-01-1015 |
| | : Judge Kane ✔ |
| v. | : Mag. J. Mannion |
| YORK COUNTY POLICE DEPT., | : |
| ET AL., | : FILED |
| | HARRISBURG, PA |
| Defendants | MAR 1 1 2002 |
| | MARY E. D'ANDREA, CLERK |
| | Per _____ |

## OPPOSITION TO DEFENDANTS MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

### I

Now Come, Tyrone P. James hereafter Plaintiff, hereby respectfully move this Honorable Court in opposition to Correctional officer Baylark (hereafter Defendant) and the York County Prison (Hereafter Co- Defendants) motion for Summary Judgment.

On June 8, 2001 plaintiff's, a prisoner confined in the York County Prison, filed a complaint alleging a violation of his constitutional rights under 42 U.S.C section 1983.

On November 9, 2001 the defendants filed answer with affirmative complaint is directed toward many law enforcement officers including the defendants.

## II

**WHETHER PLAINTIFF IS ENTITLE TO JUDGMENT AS A MATTER OF LAW AND AS TO ANY MATERIAL FACT THAT HIS SUBSTANTIVE AND PROCEDURAL DUE PROCESS RIGHT WERE VIOLATED BY DEFENDANTS**

## III

### ARGUMENT

The issue before this Court is whether the Defendant violated plaintiff's right to substantive and procedural due process when he was denied access to contact counsel and family, and was never presented with a prison Handbook.

Plaintiff was arrested for an alleged crime, and interrogated by defendants, plaintiff asked for counsel and a telephone call, but defendant denied him access on an instruction of Co-defendant. Plaintiff was not given a handbook, rather defendant placed plaintiff in "BAU unit" where detainees are held for disciplinary action. Plaintiff was not in violation of any prison regulations or rules. Placement of plaintiff in the "BAU unit" was a violation of the Fifth, Sixth and Fourteenth Amendment right guaranteed by the United

States Constitution. (Note Phone calls are not allowed in "BAU" see exhibit B, York Inmate Handbook.)

The Fourteenth Amendment states that no person nor shall any states deprive any person of life, liberty or property, without due process of law; nor deny to any person within its Jurisdiction the equal protection of the laws. See <u>Johnson v. Avery</u>. 393 U. S 483 (1969) (Due Process); <u>Mcclelland v. Sigler,</u> 327 F. Supp. 829 (Nebraska 1971) aff'd 456 F.2d 1266 (8th Cir 1972) (Equal protection) These Court held that prison officials are not supposed to deprive one of his right to attorney or counsel; such is at the core the clause protects, without fair procedure. <u>Brown v. City Of Oneonta, NY</u>, 195 F.3d 111 (2nd Cir 1999) The Court also held that the equal protection clause is essentially a direction that all person's in similarly situation should be treated alike.

Any inmate upon arrival at the York County Prison, would have been treated differently and would not have been subjected to a denial of right to access to attorney or counsel. See <u>Murell v. School Dist. No1, Denver Colo,</u> 186 F.3d 1238 (10th Cir 1999) denial of equal protection by municipal entity or any other person acting under color of state law are actionable under Section 1983; <u>Brown v. City of Oneonta NY</u> Supra.

3

Police department regulation required that person in custody be allowed phone call before incarceration and within hour after arrival at the police station. At that particular stage of arrest plaintiff was accused of a crime and have been charged. He was also being interrogated by Co-defendant, there fore he was entitled to counsel and access to phone call. In U.S. v. Melgar, 139 F.3d 1005 (4th Cir 1998) if suspect request counsel in an interrogation context, the Fifth Amendment affords him protection regardless of subject of interrogation; U.S. v. Klat, 156 F.3d 1258 (D.C. Cir 1998). Hold that Defendant has right to counsel at every critical stage of criminal prosecution.

Plaintiff's complaint is base on a steam of constitutional violations that occurred by all the of defendants named in Plaintiff's complaint. A single event that occurred at the prison and does not concern prison condition. Therefore need not be litigated through the administrative remedy, because this was a deliberate and intentional act done by defendant upon instruction by Co-defendant (Morgan) [See Exhibit A]. In Oxy USA, INC v. Babbit, 230 F.3d 1178 (10th Cir. 2000); Tallahassee Memorial v. Cook, 109 F.3d 693 (11th Cirri. 1997); McCarthy v. Madigan, 503 U. S 140, 117 LEd 2d 291, 112 S. Ct. 1081(1992. These Courts held that exhaustion of administrative remedies is not required where it would be futile.

4

Restrictions on a detainee's telephone that prevent him from contacting his attorney violate the Sixth Amendment right to counsel. See Tuck v. Randall, 948 F.2d 388, 390-91 (7th Cir. 1991); US v. Klat, Supra

Plaintiff was never given York County Prisoner's Handbook that explains the prison grievance procedure at the York County Prison upon arrival neither did he ever signed for one; any grievance system would have been ineffective because plaintiff needed counsel at that particular moment, to protect his constitutional right. In which every inmate at intake (admission) would allowed to make a call, if they asked for it. In Patsey v. Board of Regents, 457 US 496, 73 LEd. 2d, 102 S. Ct. 2557 (1982), the Supreme Court held that an individual is not required to exhaust administrative remedies prior to instituting an action under Section 1983; See also Preiser v. Rodriquesz, 411 US 475 488-90 (1973); Where Plaintiff need not exhaust state remedies before bringing a 42 U.S.C 1983 Suit this "Exhaustion requirement applied to a petition for Writ of Habeas Corpus. In the Federal Court. See Houghton v. Shafer, 392 U.S 639 (1968), the U.S. Supreme Court ruled that a prisoner does not need to exhaust his prison administrative remedies before he can file a section 1983 Suit. See Wilwording v. Swenson, 404 US 249 (1971); Monroe v. Pape, 365 U. S, 180-183 (1961); Damico v. California, 389 US

5

416 (1967); <u>Biven v. Six Unknown Agents</u>, 403 US 388; <u>Mccarthy v. Madigan,</u> Supra.

Although York County prison explain that they have an administrative system that provides for administrative remedies that include monetary damage, is it legally conform, or whether their policies are legal. Who is to say that, plaintiff would have gotten a settlement for the amount plaint sought.

However prisoners are not required to exhaust administrative remedies if they seek monetary damage for which the administrate process allow no reward. See <u>Wright v. Hollingsworth</u>, 201 F.3d 663 665 (5th Cir. 2000); <u>Rumble v. Hill</u>, 182 F.3d 1064, 1069 (9th Cir 1999); <u>Nusslev. Willette</u>, 244 F.3d 95, 100 (2nd Cir.2000), Exhaustion requirement does not apply to section 1983 of excessive force or assault by prison official.

The incident in which defendant referred to above[in his brief], the INS inmate and the settled award to him on October 18, 2001. In the amount of $50,000 dollar. The INS inmate was physically confine at the prison for a period of time where the use of excessive force occur. Therefore exhaustion of administrative remedies was necessary

Plaintiff was just entering York County Prison when his constitutional right was violated by the defendants, therefore no administrative remedy

should apply, because plaintiff was not confines at York County Prison, when the incident occurred.

Further, an inmate can only be subject to administrative remedies when he has been admitted into the prison population. An inmate who is still at admission cannot be properly included or considered admitted. Assuming for arguedo, that he is admitted, if inmate was not provided of the inmate handbook, he should not be held liable for rule and regulations that was not available to him.

This is a single incident in which correctional officer Baylock was name as a Defendant. Plaintiff was in the intake area of the prison. The defendant was deliberate and intentionally instructed by Co-Defendant (Morgan)"Not to give plaintiff any phone call pending investigation" (See Exhibit A Preliminary Transcript).

Therefore Defendant act out of his duties as a correctional officer and perform an act which was instructed by the Co-Defendant by denying Plaintiff access to the phone and right to counsel, depriving Plaintiff's right to counsel and due process right under the Fifth, Sixth and Fourteenth Amendment of the United States Constitution..

The amount that Plaintiff's sought in his complaint would not have been recommended by the prison Board, as stated in Appeals (C)(1) "Any

7

monetary settlement in excess of $250.00 shall have prior approval of the County Commissioner and be noted and approved according to law." The issue of monetary damages will be for this Court to decide, considering that the Plaintiff's substantive and procedural due process right guaranteed by the constitution are violated. See <u>Biven v. Six Unknown Agents</u>, Supra the Court held that when government agent acts in an unconstitutional manner he becomes liable for money damages

Defendant claimed that Plaintiff's did not exhaust his administrative Remedies and that his complaint should be dismissed under 42 U.S.C. Section 1997 (e) as stated Plaintiff should not be remedy under Section 1997 (e), because exhaustion was not necessary for that particular incident and would have been futile. Plaintiff's would have been engage in empty formality the prison administrative process for a form of relief would not have provided. See <u>White v. Fauver</u> 19 F. Supp. 2d 305, 317 (D. N. J. 1998) A speedy and effective response (See Procedures Manual For York County Prison, Instructional Level (B); and Record Keeping and Procedural Guidline Flow Chart (4)) See <u>McCathy v. Madigan</u> 112 S. Ct. 1081.

## CONCLUSION

The genuine issues of material fact have been presented to the Honorable Court. See City Management Corp. v. US Chemical Co. INC. 43 F.3d 244 (6th Cir. 1994) ( The role of the Judge at Summary Judgment is not to weigh, evidence, but to determine whether there is genuine issue of material fact.)

WHEREFORE, Plaintiff's respectfully pray and move this Court to deny Defendants motion for Summary Judgment and proceed with this matter to trial.

Respectfully Submitted,

Date March 8th 2002.

_Tyrone P. James_
TYRONE P. JAMES Pro Se
#62154
York County Prison
3400 Concord Road
York, PA 17402

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

TYRONE P. JAMES
      Plaintiff    :    CIVIL ACTION NO.
                                 1:CV-01-1015
                          :    Judge Kane

v.

YORK COUNTY POLICE DEPT.,    :
      ET AL.,
      Defendants    :

### **CERTIFICATE OF SERVICE**

I certify under penalty of perjury that the foregoing **OPPOSITION TO DEFENTANTS MOTION FOR SUMMARY JUDGMENT,** is true and correct pursuant to 28 U.S.C. 1746, and was caused to be served on the date shown below by depositing same in the United States mail, first-class, postage prepaid thereon, addressed as follows:

# ORIGINAL

Tyrone P. James
Civil Case No. 1:CV-01-0115

**FILED**
HARRISBURG, PA

MAR 1 1 2002

MARY E. D'ANDREA, CLERK
Per _____

# EXHIBIT
# "A"

1    Q    Did you leave any information with the York
2    County Prison not to allow him a phone call?
3    A    I asked that he not be permitted phone calls
4    until the next day.
5    Q    Who did you give that instruction to?
6    A    I believe the guards at the intake.
7    Q    This was what date, on the 11th?
8    A    On the 10th, when he was incarcerated.
9         MR. NERO:  I have no further questions at this
10   time.
11        JUSTICE KESSLER:  Redirect?
12                    REDIRECT EXAMINATION
13   BY MS. ADAMS:
14   Q    Are you aware of when the package was due in
15   York?
16   A    We initially thought that it was gonna be an
17   overnight package, but we learned it was due in on the
18   10th.
19        MS. ADAMS:  That's all.
20        JUSTICE KESSLER:  Recross?
21        MR. NERO:  No.
22        JUSTICE KESSLER:  Very well.  You may step
23   down.  Thank you.
24        MS. ADAMS:  That's our case, Your Honor.
25   Officer Craul is the affiant and would be able to testify

Bridget A. Marchio, Official Court Reporter, RPR

1    Q    What time did it begin?

2         MS. ADAMS: Your Honor, I'm going to object to
3    the relevance of all these questions.

4         MR. NERO: I think it's very relevant. He's
5    claiming my client made statements and he's the one that
6    knows what he specifically said. I'm trying to figure out
7    does he remember this or not.

8         JUSTICE KESSLER: I believe he's answered
9    numerous attempts to. Try to narrow down the time period
10   here. He's indicated he doesn't remember.

11        I'll sustain the objection.

12   BY MR. NERO:

13   Q    Was that the only conversation you had with
14   him?

15   A    Other than filling out the arrest form, yeah,
16   that may have been.

17   Q    It may have been. Did there come a time when
18   he was transported from the station to York County Prison?

19   A    Yes.

20   Q    Did you speak with him there? Did you
21   interview him there?

22   A    At the prison?

23   Q    Yes.

24   A    The next day, the next morning, yes.

25   Q    Before you did that, did you Mirandize him

Bridget A. Marchio, Official Court Reporter, RPR

Tyrone P. James
Civil Case No. 1:CV-01-0115

**ORIGINAL**

FILED
HARRISBURG, PA

MAR 1 1 2002

MARY E. D'ANDREA, CLERK
Per _____

# EXHIBIT "B"

Counselor will see mental health requests and, if necessary, refer you to the Prison Psychiatrist. Dental requests will be reviewed by the dentist or dental assistant.

**MEDICATION**: If the Doctor prescribes medication for you, a nurse will bring it to your living quarters at medication passes. Some medications, such as antibiotics, may be given to the inmate to self-administer. The nurses pass medication three (3) times a day (approximately-7:30 A.M., 4:00 P.M. and 9:00 P.M.). To ensure you receive your medication, the following rules must be adhered to:

- A. Your Block or Dorm Officer will announce, "MEDICATION". It is your responsibility to be at the door with water when the nurse arrives. **NOTE**: If you **are not at the door with a cup of water, you have missed your opportunity to receive you medication**. If you demand your medication, you will be given your medication and a "Write Up".
- B. When it is your turn at the door, show the nurse your wristband. When the nurse gives you your medication, you are to take it in front of the nurse. After you have swallowed the medication, you must open your mouth to show the nurse that you have indeed swallowed the medication.
- C. If you are going to be absent during "medication pass" (e.g. visits, etc.), please let your Block or Dorm Officer know so that medical can be notified. Being in the shower or in bed is not an acceptable reason for missing medication.
- D. **Hoarding (mouthing or hiding) of medication is a serious offense!!**

## TELEPHONE CALLS

We can not pass messages to you unless it is a true **EMERGENCY**. Phones are located in each living area of the prison. You may make a reasonable number of outgoing calls per day. **Do not abuse or dominate the use of the phone. Others would also like to make calls.** All calls are collect calls. A **strict time limit of twenty minutes for each call is automatically installed in the phone.** If there is no one waiting for their first allowed call of the day, "an extra" phone call may be made. Phone calls are a privilege and can be taken away by a Captain.

**No inmate is permitted** to call his/her probation or parole officer, police agency, Magistrate, or the County. These departments have requested that you write to them with your requests or problems. Inmates are prohibited from making calls to any individual in which a "Protection From Abuse" (PFA) order is in effect. **Harassing, threatening, nuisance, or third party (3-way calls) are forbidden.** Any violation of these procedures will result in the loss of phone privileges, disciplinary action and/or criminal prosecution.

Page 24

Any inmate placed in BAU loses ALL telephone privileges during the time he/she is in BAU.

# BAIL

A list of Bonding Companies (Professional Bondsmen) is available at Admissions or while in Pre-classification Housing. It is posted on the window by the phone and at the Officers' Booth. It may be best that you have your family or a friend make the contact, as they will need to do the arranging and the leg work to make it work smoothly.

Nominal Bail ("R.O.R."-Released on [one's own] Recognizance) and Supervised Bail will be considered in appropriate cases. To apply, contact your Counselor for an application and he/she will see that it is given to the Pre-Trial Probation Officer. The Probation Officer will let you know if you are eligible.

# MAIL

You may write as many letters as you wish, provided that the contents of the letters are NOT obscene, threatening, or forbidden by a PFA. Stationary and stamps may be purchased through the Canteen. If you are without funds you will be permitted to mail one free letter per week. Place the initials "N.F." (No Funds), in the upper right hand corner of your letter where the stamp would go and it will be stamped before being sent. Inmate to inmate correspondence is not permitted.

All incoming mail is opened and inspected for contraband. It is not read! You may receive no more than five (5) standard size photographs in the mail. If there are more than five (5) photographs, (no polaroids) the entire letter will be returned to sender. The cost of the postage to send the letter back will be taken out of your account. Stamps, cash, personal checks, oversized photos, large cards, stickers, and metal of any kind is contraband. Letters containing contraband will be returned to sender. Money orders made out to you will be accepted. The money will be placed in your account. Inform your family and friends to clearly write your name and I.D.# as written on you I.D. bracelet. Many inmates have aliases. You will only receive mail if the name on the letter matches the name on your I.D. bracelet. If the name is difficult to read it will be sent to Records Department. They will attempt to decipher it but that may take several days.

Incoming mail from public officials, Courts, and attorneys (legal mail) will be opened and checked for contraband in the presence of the inmate.

All outgoing mail is to be placed in the wicket of your cell door or in the collection box in your dorm. Your full name, I.D. number and return address must be on the envelope. All outgoing mail is recorded in a log book. The prison's address is: York County Prison, 3400 Concord Road, York, PA 17402-9007. Homemade envelopes are not permitted.