ORIGINAL

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF PENNSYLVANIA

Tyrone P. James                    :
            Plaintiff              :      Civil Action No. 1:01-1015
                                   :      (Kane D.M.)
        v.                         :      (Mannion M.J.)
                                   :
                                   :
York County Police Department,     :
James H. Morgan, Richard           :
Peddicord, Raymind E. Craul,       :
Gene Fells, Detective Kessler,     :
C.O. Baylark, Randy Snipes, Brian  :      FILED
Westmoreland, and Detective        :      HARRISBURG, PA
Glowczeyke                         :
                                   :      MAR 2 6 2003
            Defendants             :
                                   :      MARY E. D'ANDREA, CLERK
                                   :      Per_____

PLAINTIFF OBJECTION TO MAGISTRATE JUDGE PROPOSED

FINDINGS FOR REPORT AND RECOMMENDATION

    Plaintiff has reviewed the recommendations of the MAgistrate

Judge addressing case dispositive motions and hereby objects to

the Magistrate Judge's proposed findings and recommendations

or report addressing a motion or matter described in 28 U.S.C.

§ 636 (b)(1)(B).

    The briefing requirement set forth in local rule 72.2 M.D. PA.

STATEMENT OF THE CASE

    On june 8, 2001, Plaintiff filed a Civil Rights Action

Pursuant to 42 U.S.C. § 1983, in which Plaintif alleged various

violations of his Constitutional Rights under the Fourth, Fifth,

Sixth, Eigth, and Fourteenth Amendmants of the United States

(1)

Constitution.

The facts and procedural history have been outlined in the Magistrate Judge's report and recommendation, EXCEPT THAT:

On November 17, 2001, Plaintiff served interrogatories upon Defendant Baylark, in accordance with rule 33 of the Federal Rules of Civil Procedure.

Defendant failed to comply with rule 33, Fed. R. Civ. P, Plaintiff's Motion to Compel Discovery was stricken, July 10, 2001.

A court should not grant summary judgement against a party who has not had an opportunity to pursue discovery or whose discovery request has not been answered. Salahucldin v. Coughlin, 993 F22d.306, 309-10 (2d Cir 1993); Klingeles v. Eikenberry, 849 F. 2d. 409, 412-13 ((th Cir. 1988); WSB-TV v. Lee 842 F. 2d. 1266, 1269 (11th Cir 1988); Villantew Dept. of Corrections of City of New York. 786 F. 2d. 526, 521-23 (2d Cir. 1986); Pacitti v. Macy's, 193 F. 3d. 766 (3rd Cir. 1999). The Federal rules allow broad and liberal discovery. (See Fed r. Civ. P. 56(f))

On February 27, 2002, Defendant Baylark, sued in his individual capacities, filed motion for summary judgement, along with Brief and Exhibits in support thereof.

Plaintiff filed responding Brief opposing Defendant's motion; Statement of Material Facts, and Exhibits, on March 11,2002.

On March 20, 2002, Defendant's filed a reply Brief, Affidavit of Andrew Krepps (Counselor, York County Prison).

Copies of reports made out by the Defendants and other prison staff do not count as proof for the Defendants, since prison staff can say anything they want in their report. Bracey

v. Herringa, 466 F.2d., 702 (7th Cir. 1972).

Plaintiff was at S.C.I. Camp Hill at the Diagnostic Center, a state reception center, without any law library access within the month of MArch.

Plaintiff filed an opposing response, as to the defendant reply brief.

On July 10, 2002, District Court directed this case back to the Magistrate for further consideration on the Motion for Summary Judgement, stating that the interest of justice and judicial economy would be best served if this matter is returned to the Magistrate Judge to whom it was originally assigned, for further processing.

On March 13, 2003, Plaintiff received Magistrate Judge's Report and Recommendation.

In deciding a motion to dismiss the court may consider documents which are attached to or submitted with the complaint. O'Brian v. Di Grazia, 344 F2d. 543 (1st Cir. 1976). The Court may also consider legal arguments presented in memoranda and Brief as well as "Matter outside the pleading" when the motion is alternatively styled as a motion for summary judgement; frequently they include, Affidavit, Deposition Testimony, Answere to Interrogatories, and Admissions.

"When the judge considers a motion for summary judgement, he is supposed to view the evidence submitted by both sides, "in the light most favorable to the party opposing the motion." United States v. Diebold, 369 U.S. 654, 655 (1962); Adickes v. S.H. Kress and Company, 398 U.S. 144, 157, 160 (1970). See also

United States v. Western Electric Company, 337 F2d. 568, 575
(th Cir. 1964) and Verdon v. Henry, 91 F3d. 370 (2nd Cir, 1996).

The opposing party is supposed to be given the benefit
of the doubt because the purpose of having summary judgement
is not to cut the people off from trial where there ia a genuine
issue to be decided.

See City Management Corp. V. U.S. Chemical Company, Inc.,
43 F3d. 244 (6th Cir. 1994).  Role of the Judge at summary Judge-
ment stage is not to weigh evidence, but to determine whether
there is genuine issue of material fact.

QUESTIONS PRESENTED

1.  Whether there is a genuine issue to any material fact
that his substantive and procedural Due Process Rights
to the United States Constitution were violated by the
Defendant.

2.  Whether Plaintiff is entitled to judgement as a matter
of law.

3.  Whether this Court should dismiss complaint with respect
to the York County Prison and the York County Police Depart-
ment, which the Plaintiff has actually named as a Defendant.

ARGUMENT

Whether there is a genuine issue to any material fact
that his substantive and procedural Due Process Rights
to the United States Constitution were violated by the
Defendant.

The issue before this Court is whether the Defendant, Correctional Officer Baylark; sued in his individual capaticities, an employee at the York County Prison, violated Plaintiff's right to substantive and procedural due process; when he was on duty, working second shift at admission/intake, at the York County Prison, where he denied Plaintiff access to contact counsel, his immediate family member, and bailbonds man, upon instruction by co-defendant James Morgan (See Exhibit "A"), "Not to give Plaintiff any phone calls, pending investigation, by not allowing Plaintiff access to a telephone.  Further Plaintiff was never provided with an prison handbook.

Plaintiff was arrested for an alleged crime and was interrogated by co-defendant Morgan.  Plaintiff asked for counsel and a telephone call, but Defendant denied him access to the telephone on the instruction of co-defendant Morgan.  Co-defendant Morgan subjected Plaintiff to continuous interrogation on January 11, 2001.  (See Exhibit "A")

Plaintiff was not given a prison handbook, rather Defendant placed Plaintiff in "BAU unit", where detainees are held for disciplinary action, although Plaintiff was not in violation of any prison regulations or rules.

Denial of Telephone access and placement of Plaintiff in the "BAU unit" was a violation of the Fifth, Sixth, and Fourteenth rights guarenteed by the United States Constitution, the Pennsylvania Constitution, Article 1, Section 9, and the Pennsylvania Rules of Criminal Proceedure, Rule 540(f). (Also see Exhibit "B").

In Moody v. City of Hoboken, 959 F2d. 461, 467 (3rd Cir 1982);

Black v. Stephens, 662 F.2d. 181 (3rd Cir. 1981).  Court found there was sufficent evidence to show a causal connection between the police chief's action and the detective's unconstitutional activity.

Here the Defendant did not deny coming into concact with Plaintiff and co-defendant James Morgan, on January 10, 2001.

The Fourteenth Amendment to the United States Constitution states that:  No state shall deprive any person of life, liberty, or property, without due process of the law, nor deny to any person within its jurisdiction the equal protection of the law. See Johnson v. Avery, 393 U.S. 483 (1969) (Due Process); Mcclellani v. Steiger, 327 f. Supp. 829 (Nebraska 1971) affirmed 456 F.2d. 1266 (8th Cir, 1972)  (Equal Protection). Daniel V. William, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), Rochin v. California, 342 U.S. 165, 172, 72 S.Ct. 205, 98 L.Ed. 183 (1952) (Conduct which shock the conscience); Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d. 420 (1981) (Substantive due process and procedural due process).

These courts held that prison officials are not supposed to deprive one of his right to attorney or counsel; such is the core principal which the clause protects. Brown v. City of Oneonta, New York, 195 F3d. 111 (2nd Cir 1999)  The court also held that the equal protection clause is essentially a direction that all persons in similarlysituation  should be treated alike.

Any inmate, upon arrival, would have been treated differently and would not have been subjected to a denial of right to access

to attorney or cousel, or his immediate family.  See <u>Miller v.</u>
<u>School District No.1, Denver Colorado</u>, 186 F.3d. 1238 (10th Cir.
1999), denial of equal protection by municipal entity or any other
person acting under color of state law are actionable under
section 1983; <u>Brown v. City of Oneonts New York Supra</u>, <u>Farmer</u>
<u>v. Brennan</u>     Y.S.   , 114 S.Ct. 1970 (1994), <u>Clinton v. Harris</u>,
489 U.S. at 390.

Due Process violations where an official who deliberately
deprives a person of his life, liberty, or property carefully
follows established state procedures tahtaare late found to
be constitutionally inadaquate, because the official would be
without fault.  See <u>Sourbeer v. Robinson</u>, 791 F.2d. 1094, 1105
(3rd Cir. 1986).

This Defendant intentionally and deliberately denied Plaintiff
access to counsel upon the instruction of Co-defendant Morgan,
without contacting his supervisor for approval or advice.

Defendant's actions amount to deliberate indifference and
cruel and unusual punishment.  See <u>Sacramento County v. Lewis</u>,
98 F.3d. 434 (9th Cir. 1996); Rev'd 118 S.Ct. 1708 (1998), (an
officer can be held liable for section 1983 claim if that officer's
conduct deliberately indifferent to or in reckless disregard
of a person's right to life and personal security. Id. 441.

The Due Process clause imposes affirmative obligations
on the state in the treatment of pretrial detainees.  To determine
whether a particular restriction imposed on a pretrial detainee
comports with due process, a court must determine whether the
restriction is for (1) the purpose of punishment, or is (2)

reasonably related to a legitimate and nonpunative governmental purpose.  See Fuentes V. Wagner, 206 F3d. 343-43 (3rg Cir. 2000). The Supreme Court has stated that courts should usually defer to prison officials in determining whether a particular regulation is reasonably related to a legitimate interest other than punishment.  See Block v. Rutherford, 468 U.S. 576, 587-88 (1984); Wolfish, 441 U.S. at 540-41 N.23;  U.S. v. Felipe, 148 F.3d. 101, 108 (2nd Cir.1998); Thompson v. City of Los Angeles, 885 F.2.d 1439, 1448 (9th Cir. 1989).

Defendant Baylark and Co-defendant's misuse of power possessed by virtue of state law and made possible only because the wrong-doer is clothed with the authority of state law, is action taken under color of law.  See Monroe v. Pape, 365 U.S. at 184, quoting United States v. Classic, 313 U.S. 325, 326 (1941); Accord West v. Atkin, 487 U.S. at 50; Screws v. United States, 352 U.S. 91, 111, 65 S.Ct. 1031 (1945); Accord Dang Vang v. Vang Xiong X. Toyed, 944 F.3d. 141, 447, 479.

See also Abbott v. Latshaw, 164 F.3d. 141, 147-48 (3rd Cir. 1998) (Private party who conspires with state actors to deprive another of his constitutional rights, acts under color of state law.

Police Department regulations required that person in custody be allowed a phone call before incarceration and within one(1) hour after arrival at the police station.  At that particular stage of arrest, Plaintiff was accused of a crime and had been charged.  He was also being interrogated by Co-defendant; therefore he was entitled to counsel and access to a phone call.  In U.S. v.

Melgart, 139 F.3d. 1005 (4th Cir. 1998); If suspect requests

counsel in an inerrogation context, the Fifth Amendment affords

him protection regardless of the subject of interrogation.

U.S. v. Klot, 156 F.3d. 1258 (D.C Cir. 1998 holds that Defendant

has right to counsel at every critical stage of criminal prosecut-

ion.

Plaintiff was also under a doctor's care and ineeded to

to inform his immediate family of his whereabouts, to obtain

medical information and information relating to bail bond.

The Genuine issues of material fact have been presented

to this Honorable Court.  Plaintiff aver this Court to grant

him Summary Judgement.


II


## WHETHER PLAINTIFF IS ENTITLED TO JUDGEMENT

## AS MATTER OF LAW


Plaintiff's complaint is based on a stem  of Constututional

violations that occured by all member Defendants.  A single

event that occurred at the York County Prison and does not concern

prison conditions.  Co-defendant Morgan a State Agent and Defendant

sued in their individula capacities.  This was a deliberate

and intentional act, done by the Defendant upon instruction

of Co-Defendant at the admission section of the prison.  Therefore

nedd not be litigated through the administrative remedy.  Defen-

dant stepped out of his official dutied as a Correctional Officer

and became an agent for Co-defendant Morgen. See Abbott v. Latshaw,

Supra.

In Oxy USA, Inc. V. Babbit, 230 F.2d. 1178 (10th Cir. 2000);
Tallahassee Memorial v. Cook, 109 F.3d. 613 (11th Cir.1997);
McCarty v. Madigan, 503 U.S. 140, 117 L.Ed.2d. 291, 112 S.Ct.
1081 (1992). The courts held that exhaustion of administrative
memidies is not required where it would be futile.

Plaintiff submitted claim for injunctive relief in his
complaint, whibh this court rejected.

The decision to require exhaustion of administrative remidies
pursuant to section 1997 (e) would depend, in part upon the
relative strength of the individual prisoner's interest in obtain-
ing prompt judicial redress and the countervailing institutional
interests that favor exhaustion. See Wendell v. Asher, 162 F.3d.
887, 890 (5th Cir. 1998) (Citation omitted; McCarthy v. Madigan
503 U.S. 140 (1992).

Plaintiff was never given an Inmate Handbook from the York
County Prison, which would have explained the prison grievance
procedure, nor did he sign for one upon arrival at the York
County Prison. Plaintiff was of the belief that the time frame
allowed to file his complaint, was expired, because he never
received the handbook, to read any procedure and policies. Even
at the time he exercised use of the Grievance Procedure, on March
29, 2001 and April 19,2001. As stated in the affidavit of Deputy
Warden Roger Thomas, Plaintiff actually came into a copy of this
"Amendment to Procedures Manual for the York County Prison
and Inmate Handbook", when Defendant Baylark submitted his Affi-

davit and exhibits with his "Motion for Summary Juggement."
Plaintiff learned of the Grievance Procedure when he was denied
adaquate law library access, through the inmate law clerk.
He was supplied with a complaint form (801), by him.  Without
his being informed of such grievance procedure by staff members,
this procedure would have been essentially unavailable to Plaintiff.
Further Plaintiff did NOT sign any documents acknowledging his
receipt of this Prisoner Handbook.  This shows that the affidavit
of Andrew Krepps, a counselor, should be questioned, because
it lacks proof that counselor ever mentioned or gave Plaintiff
a copy of this grievance procedure on January 11, 2001.  See
Brown v. Croak, 312 F.3d. 109 (3rd Cir. 2002.  Dismissal was
not warranted for failure to exhaust administrative remidies.
Although sworn affidavits establish that a material issue of
fact exsists, none show a signature of Plaintiff, proving he
received a Prison Handbook, since such does not exsist.  See
Bracey v. Herringa 466 F2d. 702 (7th Cir, 1972).

The Prison Litigation Reform Act (PLRA) does not require
exhaustion of all administrative remidies, only those remidies
that are available, Civil Rights of Institutionalized Persons
Act, Section 7(a) as amended, 42 U.S.A. § 1997 (e)(a).

The availability of administrative remidies to a prisoner
is a matter of law.  See Ray v. Kerte, 285 F.3d. 287, 295 (3rd
Cir. 2002).

The PLRA does not require exhaustion of ALL remidies, rather,
it requires exhaustion of such administrative remidies "as are
available" 42 U.S.C. § 1997 e(a); Camp v. Brennan, 219 F.3d. 279,

281 (3rd Cir. 2000).

This is a single incident in which Correctional Officer Bay-lark was named as a defendant. Plaintiff was in the intake area of the York County Prison. The Defendant was deliberately and intentionally instructed by Co-defendant Morgan, "Not to give Plaintiff any phone calls pending investigation" See exhibit "A", Preliminary Transcript, Defendant Morgan testimony.

Therefore Defendant acted out of his duties as a Correctional Officer, and performed an act, which was instigated by Co-defendant Morgan, which deprived Plaintiff of his Civil Rights, by denying him access to a telephone, and thereby access to counsel. This is Constitutional legal issue which the York County Grievance Pro-cedure is not competent to resolve. See McCarthy v. Madigan, 112 S.Ct. at 1088; Mitchell v. Horn 318 F3d. 523 (3rd. Cir 2003) Prisoner's failure to exhaust administrative remidies in connect-ion with his Eigth Amendment conditions of confinement claim, was not a permissable basis for district court's Sua Sponte dismissal under Prison Litigation Reform Act (PLRA), Civil Rights of Institutionalized Persons Act,  7(a & c), 42 U.S.C.A. § 1997 e (a & c).

Restriction on a detainee's access to telephones that pre-vented him contacting his attorney violates the Sixth Amendment right to counsel. See Tuck v. Randall, 948 F.2d. 388, 390-91 (7th Cir. 1991); U.S. v. Klat, Supra.

Plaintiff seeks injunctive relief in this case. Any grievan-ce system would have been ineffective because, Plaintiff nedded counsel at that particular moment in time, to protect his Consti-

tutional rights, in that every other inmate at intake (admission) would be allowed to make a phone call, if they asked for it, while going through the psychological trauma of being arrested without a warrant and therefore illegally, constituting deliberate indifference. See Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970.

The Fourteenth Amendment forbids a state to deny any person within its jurisdiction the equal protection of the laws of the United States Constitution; Amendment XIV. The Fifth Amendment requires the federal government to obey the same equal rights standard as the states. See Weinberger v. Wiesenfeld, 420 U.S. 636, 638 N.2, 95 S.Ct. 1225 (1975).

Under the Due Process clause; people who have not been convicted of crimes cannot be punished at all. See City of Revere v. Masachusetts General Hospital, 463 U.S. 239, 244. 103 S.Ct. 2979 (1983); Bell v. Wolfish, 441 U.S. 520, 535, 99 S.Ct. 1861 (1979).

In Patsey v. Board of Regents, 457 U.S. 494, 73 L.Ed. 24, 102 S.Ct. 2557 (1982), the Supreme Court held that an individual is not required to exhaust administrative remidies before instituting an action under section 1983, See also Preiser v. Rodriquez, 411 U.S. 475, 488-90 (1973); Where Plaintiff need not exhaust state remidies before bringing a 42 U.S.C. § 1983 suit, this "Exhaustion requirement" applied to a petition for writ of Habeas Corpus in the federal court. See Houghton v. Shafer, 392 U.S. 639 (1968). The U.S. Supreme Court ruled that a prisoner does not need to exhaust this prison administrative remidies before

he can file a section 1983 suit. See Wilwording v. Swenson, 404
U.S. 249 (1971) ; Monroe v. Pape, 365 U.S. 167, 180-183 (1961);
Damico v. California, 389 U.S. 416 (1976); Brown v. Six Unknown
AGENTS, 403 U.S. 388; McCarthy v. Madigan, Supra.

Although York County Prison Officials expained and presented
sworn affidavits, that they provide for administrative remidies
that include monitary damages, do they legally conform, or are
their policies illegal under federal law?

Who is to say that Plaintiff would have gotten a settlement
for the amount the Plaintiff sought, or would have even gotten
his complaint beyond the first stage, based on the Defendant's
sworne[d] affidavits.

However prisoners are not required to exhaust administrative
remedies if they seek monetary damages for which the administra-
tive process allows no reward. See APPEALS (c)(1). See also:
Wright v. Hollingsworth, 201 F.3d. 663, 665 (5th Cir. 2000);
Rumble v. Hill, 182 F.3d. 1064 (9th Cir. 1999); Nussle v. Willette,
244 F.3d. 95, 100 (2nd Cir. 2000). Exhaustion requirement does
not apply to section 1983 for excessive force or assault by
prison official. Plaintiff's complaint deals with the use of
excessive force and other constitutional violations, in which
Defendant Baylark is a Co-defendant, sued in his individual
capacity.

As a mataer of law, Plaintiff prays this Honorable Court
grant him SUMMARY JUDGEMENT. See Houghton v. Shafer, 342 U.S.
639, 88 S.Ct. 2119, 20L.Ed. 1319 (1968); Porter v. Nussle, 534
U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d. 12 (2002); Ray v. Kerte,

Supra; <u>Brown v. Croak</u>, Supra; <u>WB v. Matula</u>, 67 F.3d. 484, 487

(3rd Cir. 1995); <u>McCarthy v. Madigan</u>, 112 S.Ct. 1081 (1992);

<u>Mitchel v. Horn</u>, 318 F.3d. (3rd Cir. 2003; <u>Miller v. Norris</u>,

247 F.3d. 736 (8th Cir.)2001).


III


## WHETHER THIS COURT SHOULD DISMISS COMPLAINT WITH
## RESPECT TO THE YORK COUNTY PRISON AND THE YORK COUNTY
## POLICE DEPARTMENT, WHICH WERE NAMED AS DEFENDANTS

It is the custom and policy of the York County Prison to

give a newly arrived detainee or arrestee, at admission/intake,

a 15 minute telephone call, to contact immediate family members

bail bondsmen, and attorney's.  Due Process, under the Fourteenth

Amendment to the United States Constitution and the Sixth Amend-

ment right to counsel, is attached at the time an arrestee is

formally charged, has a preliminary hearing, is indicted, has

a bill of information hearing or is arraigned.  See <u>Brewer v.</u>

<u>Williams</u>, 430 U.S. 378, 288 (1977).

Plaintiff was formally charged and had preliminary arraignment

on January 10, 2001, before entering the York County Prison.

When Plaintiff was denied phone access, to contact his

attorney by Defendant Baylark, at Co-defendant Morgan's request,

without contacting his supervisor, defendant failed to follow

a custom and policy of the York County Prison, and thus, deprived

Plaintiff of his Sixth Amendment right to counsel. PA.R. Crim.P. Rule 540(f

A municipality is liable for damages under Section 1983,

for violation of federal law that occurs pursuant to an official governmetn policy or custom.

Federal detainee's, state, and local arrestee's are allowed a 15 to 20 minute phone call at intake/admission at York County Prison.

A custom or usage can constitute "Municipal Policy" even if it is contrary to written policy or the law. See Redman v. County of San Diego, 942 F.2d. 1435, 1445 (9th Cir. 1991). (en banc)(Routine failure to follow written policy can be a "Custom", supporting municipal liability. Cert. denied; 112 S.Ct. 972 (1992); Anela v. City of Wildwood. 790 F.2d. at 1066-67; Martin v. Ezeagu, 816 F.Supp 20, 25 (D.O.C. 1993).

Municiapalities can be held liable for customs even if their policy makers do not have actual knowledge of them. See Thompson v. City of Los Angeles, 885 F.2d. 1439, 1444 (9th Cir, 1989); Spell v. McDaniel, 824 F.2d. at 1391.

Where there is a single incident of police officer misconduct, this can serve as the sole evidentiary basis for a finding of local government liability for failure to train. See Estate of Bailey by Oare v. York County, 768 F.2d. 503 (3rd Cir. 1985) (Local government liability for gross negligence, recklessness, or deliberate indiference in failure to prevent killing of child by mother's boyfriend, where some "special relationship" alleged. See Leathern v. Tarrant County Narcotic intelligence and Co-ordination Unit. 507 U.S. 163, 113 S.CT. 1160, 122 L.Ed.2d. 517(1993).

Although York County Prison was not named as a defendant in

in Plaintiff's complaint, as each of the Defendant's was sued in their individual capacities, York County should be held liable for failure to train its employees. See City of Canton v. Harris, 489 U.S. 378 387, 390(1989) (Municipality may be held liable under section 1983, for failure to train police officers only when failure to train amounts to deliberate indifference to rights of persons with whom police interact and when policy actually caused injury.

It is the custom and policy of the York County Police Department, not to use excessive force against individuals, especially when they are not resisting arrest. Here excessive force was used by these Defendants, when they used a vehicle to hit Plaintiff to the ground and then trample upon him. Using a van to apprehend a suspect is excessive force.

Local govenrment can be found liable when they act formally or informally, in additon they can be held liable for their deliberately indifferent failure to train. See City of Canton, Ohio v. Harris, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.ed. 412 (1989).

Monell v. Department of Social Services of the City of New York, 436 U.S. 658, 98 Ct. 2018, 56 L.Ed.2d. 492 (1978); Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 522 L.Ed.2d. 492(1961); Cities and counties were consistantly considered not to be "Persons" within the meaning of 42 U.S.C. § 1983, hence they were immune from liability for damages.

However there is a significant condition of : 1983, local government liablity: There must be a local government official

policy or custom which is a cause.

The court also concluded in Monell, that local governmental officials may be sued in their official capaticy for damages and retrospective declarity and injunctive relief, even though the local government body itself pays.

The court declared that an interstate compact agency, created by California and Nevada, and for which federal approval was required and given, was a suable person for § 1983 purposes.

See Lake County Estates, Inc. V. Tahoe Regional Planning Agency, 440 U.S. 391, 405 N.29, 99 S.Ct. 1171, 59 L.Ed.2d. 401 (1979); also see Bogan v. Scott-Harris. 118 .S. Ct. 166(U.S. 1998), holding that the Eleventh Amendment did not bar suit in Federal Court against the planning agency.

Where the Police Department of the City of San Jose was sued, together with other defendants, the 9th Circut noted that the capicity of the police department to be sued was to be determined under state law, pursuant to Federal Rules of Civil Procedure 17)b). The court then concluded that under California law, the police department was a suable "Public Entity". Shaw v. State of California Department of Alcoholic Beverage Control, 788 F.2d. 600 (9th Cir.1986).

Monell v. Department of Social Services of the City of New York, 436 U.S. 658, 98 S.Ct. 1018; Hafer v. Melo, 112 S.Ct. at 363; Fay v. South Colonie Centeral School District, 802 F.2d. 21, 27 (2nd Cir.1986); Schelz v. Monroe County, 954 F.2d. 1540, 1543 (1st Cir. 1992). Local government and their agencies are not protected by the Eleventh Amendment. See City of Canton

v. Harris, Supra.

V

CONCLUSION

In considering a motion for Summary Judgement, the evidence
must be considered in the light most favorable to the non-moving
party, and all inferences must be drawn in that party's favor.
In Anderson v. Liberty Lobby, Inc., 577 U.S. 242, 254, 106 S.Ct.
2505, 91 L.Ed. 2d. 202 (1986) "I[n] ruling on a motion for summary
judgement, the judge must view the evidence through the prism
of the substantive evidentiary burdon".

The non-moving party may not rest on mere alligations of
denial, but must establish, by specific facts, that there is
a genuine issue for trial, from which a reasonable juror could
find for the non-movant.  See Saldana v. K-Mart Corporation,
42 V.I. 358, 360-61, 84 F.Supp 2d. 629-631-32(D.V.I. 1999) affirmed
in part and reversed in part, 260 F.3d. 228 (3rd Cir.)2001)
Only evidence admissable at trial shall be considered and the
court must draw all seasonable inference therefrom in favor of
the non-movant.  See id.

Pursuant to Federal Rules of Civil Procedure, 56(c), summary
judgement is proper, "If the pleading, deposition, answeres
to interrogatories, and admission on file, together with the
affidavits, if any, show that there is no genuine issue as to
any material fact and that the moving party is entitled to any
material fact and that the moving party is entitled to a judge-
ment as a matter of law.  Federal Rules of Civil Procedure, 56(c).

See <u>Michaels v. New Jersey</u>, 222 F.3d. 118,    (3rd Cir. 2000),
Cert. denied, 531 U.S. 118, 121 S.Ct. 873, 148 L.Ed.2d. 780 (2001).
See also <u>Celotex Corporation v. Catrett</u>, 477 U.S. 317 (1986).

Issues of fact are genunie "Only if a reasonable jury consid-
ering the evidence presented, could find for the non-moving party.
<u>Childer v. Joseph</u>, 842 F.2d. 689. 693-4 (3rd Cir. 1998) (Citations
omitted)

Plaintiff's allegations against Defendant Baylark and Co-de-
fendant Morgan were the denial of Plaintiff's Sixth and Four-
teenth Amendment rights guarenteed by the United states Consti-
tution, in that Plaintiff was denied access to counsel when
he was denied access to the telephone during admission/intake
at the York County Prison on January 10, 2002[1]. The Plaintiff's
right to counsel was officially attached when he was officially
charged, arraigned, and booked. Plaintiff was repeatedly, inten-
tionally and deliberately, denied access to a telephone, and
thereby to counsel, by Defendant Baylark, at Co-defendant James
Morgan's request.

Defendat's have failed to show in their affidavit any signed
documents to prove that Plaintiff actually received a copy of
the York County Prison Inmate Handbook, which would have explain-
ed the Inmate Grievance Procedure, nor  was this procedure ever
explained to him by any counselor or other staff member at the
York County Prison.

Again, Plaintiff only became aware of the Inmate Grievance
Procedure from an Inmate Law Clerk, when he was allowed only

limited access to the law library during the months of January through March of 2001. It was then that the Plaintiss made use of the Inmate Grievance System.

Defendant's have failed to comply with the Federal Civil Rules of Discovery, Federal Rules of Civil Procedure, Rule 33, as to interrogatories:

"A court should not grant summary judgement against a party who has not had an opportunity to pursue discovery materials, or whose discovery requests have not been answered."

See Salahuddin v. Coughlin, 993 F.2d. 306, 309-10 (2nd Cir.(1993); Klingeles v. Eikenberry, 849 F.2d. 409, 412-13 (9th Cir, 1988); WSB-TV v. Lee, 842 F.2d. 1266, 1269 (11th Cir. 1988); Villante v. Department of Corrections of City of New York, 786 F.2d. 516, 521-23 (2nd Cir. 1986).

Defendant is a Co-defendant sued with other local and state agents in a civil suit filed by Plaintiff under a section 1983 claim, which consists of several Constitutional violations that occured at the time of his arrest. This single event occurred at the prison and does not concern prison conditions, since Plaintiff was still in the custody of Co-defendant Morgan, going through the arrest and booking process, and therefore need not be litigated through the administrative remedy process. This was a deliberate and intentional act done by Defendant Baylark and Co-defendant Morgan, to deprive Plaintiff of his right to counsel. See Abbott v. Latshaw; 164 F.3d. 141, 147-48 (3rd Cir. 1998) (Private party who conspires with state actors to deprive another of his or her Constitutional Rights, acts under

color of state law; Jensen v. Lane County, 222 F.3d. 570, 574-75 (9th Cir. 2000) (Psychiatrist and state employees intertwine in the determination)  See also Mitchell v. Horn, 318 F.3d. 523 (3rd Cir.)2003).

Summary Judgement is not proper if material factual issues exsist for trial.  See Nodine v. Shiley, Inc., 240 F.3d. 1149 (9th Cir.)2001); City Management Corporation v. U.S. Chemical Co.; Inc., 43 F.3d. 244 (6th Cir. 1994).

THEREFORE, Plaintiff prays this Honorable Court to grant him Summary Judgement, or to postpone this matter, because Defendants have not yet answered discovery requests, as to interrogatories. Also this Court has not yet decided on Co-defendant's "Motion to Dismiss."  In the alternative, Plaintiff prays that the Court grant a stay on this matter, in order that the Plaintiff may pursue the York County Inmate Grievance Procedure, as to Defendant Baylark.  See Francis v. Marquez, 741 F.2d. 1127, 1128 (9th Cir. 1984); Bean v. Dormire, 10 F.3d. 538,539 (8th Cir. 1993). See also Exhibit "C", Letter to Complaint Supervisor and Complaint form (801)).  BAIL WAS SET.

Respectfully submitted,

DATED: MARCH 23    ,2003

Tyrone James
Tyrone P. James
EX-9451
Box "A"
Bellefonte PA   16823-0800

UNITED STATES DISTRICT COURT FOR THE

MIDDLE DISTRICT OF PENNSYLVANIA

Tyrone P. James                      :
          Plaintiff                  :    Civil Action No. 1:01-1015
                                     :    (Kane D.M.)
          v.                         :    (Mannion M.K.)
                                     :
York County Police Department,       :
James H. Morgan, Richard             :
Peddicord, Raymond E. Craul,
Gene Fells, Detective Kessler,       :
C.O. Baylark, Randy Snipes,
Brian Westmoreland, and              :
Detective Glowczeski
                                     :
          Defendants
                                     :

VERIFICATION

     I, Tyrone P. James, hereby verify that he facts set forth in
the foregoing Motion are true and correct to the best of my
knowledge and belief.

     I understand this certification is made under the penalty
of perjury pursuant to 28 U.S.C. 1746.

                              Respectfully

                              Tyrone James
                              Tyrone P. James

DATED:   MARCH  23       , 2003

UNITED STSTES DISTRICT COURT FOR THE

MIDDLE DISTRICT OF PENNSYLVANIA

Tyrone P. James                    :
            Plaintiff
                                   :    Civil Action No. 1:01-1015
                                   :    (Kane D.J.)
        v.                         :    (Mannion  M.J.)
                                   :

York County Police Department,    :

James H. Morgan, Richard           :
Peddicord, Raymond E. Craul,
Gene Feils, Detective Kessler,     :
C.O. Baylark, Randy Snipes,
Brian Westmoreland, and            :
Detective Glowczeski
                                   :
        Defendants
                                   :

                                   :


CERTIFICATE OF SERVICE


    I, Tyrone P. James, certify, under penalty of perjury,

that one true and correct copy of the foregoing, Plaintiff

Objection to MAgistrate Judge Proposed Findings for Report and

Recommendation, Pursuant to 28 U.S.C. 1746, was caused to be

served upon the persons listed below by First Class United States

Mail, Postage prepaid, on this  23rd  day of  MARch    , 2003.


Office of the Clerk              Donald L. Reinhart, Esq

United States District Court     Law Offies  of Donald L. Reihart
Middle District of Pennsylvania  3015 Eastern Blvd
228 Walnut Street, P.O. BOX 983  York Pa  17402
Harrisburg Pa 17108

Linda s. Lloyd, Esq.
15th Floor-Strawberry Square
Harrisburg Pa  17120

                                 _Tyrone James_
                                 Tyrone P. James
DATED: MARch 23, 2003            EX-9451

Tyrone P. James
Civil Case No. 1:CV-01-0115

HARRISBURG, PA

MAR 2 6 2003

MARY E. D'ANDREA, CLE
Per

# EXHIBIT

# "A"

1     Q     Did you leave any information with the York

2     County Prison not to allow him a phone call?

3     A     I asked that he not be permitted phone calls

4     until the next day.

5     Q     Who did you give that instruction to?

6     A     I believe the guards at the intake.

7     Q     This was what date, on the 11th?

8     A     On the 10th, when he was incarcerated.

9           MR. NERO:  I have no further questions at this

10    time.

11          JUSTICE KESSLER:  Redirect?

12                    REDIRECT EXAMINATION

13    BY MS. ADAMS:

14    Q     Are you aware of when the package was due in

15    York?

16    A     We initially thought that it was gonna be an

17    overnight package, but we learned it was due in on the

18    10th.

19          MS. ADAMS:  That's all.

20          JUSTICE KESSLER:  Recross?

21          MR. NERO:  No.

22          JUSTICE KESSLER:  Very well.  You may step

23    down.  Thank you.

24          MS. ADAMS:  That's our case, Your Honor.

25    Officer Craul is the affiant and would be able to testify

Bridget A. Marchio, Official Court Reporter, RPR

1      Q      What time did it begin?

2             MS. ADAMS:  Your Honor, I'm going to object to

3      the relevance of all these questions.

4             MR. NERO:  I think it's very relevant.  He's

5      claiming my client made statements and he's the one that

6      knows what he specifically said.  I'm trying to figure out

7      does he remember this or not.

8             JUSTICE KESSLER:  I believe he's answered

9      numerous attempts to.  Try to narrow down the time period

10     here.  He's indicated he doesn't remember.

11            I'll sustain the objection.

12     BY MR. NERO:

13     Q      Was that the only conversation you had with

14     him?

15     A      Other than filling out the arrest form, yeah,

16     that may have been.

17     Q      It may have been.  Did there come a time when

18     he was transported from the station to York County Prison?

19     A      Yes.

20     Q      Did you speak with him there?  Did you

21     interview him there?

22     A      At the prison?

23     Q      Yes.

24     A      The next day, the next morning, yes.

25     Q      Before you did that, did you Mirandize him

31

1    Q    He never told you he wanted to call his wife or

2  a lawyer?

3    A    I think he asked me the night before that he

4  wanted to make -- before the night he was arrested.

5    Q    What day are we talking about?

6    A    The 10th.

7    Q    He asked on the 10th to make a phone call?

8    A    Yes.

9    Q    When did he ask you this?

10    A    I think after I had -- after he had been --

11  after we processed him and were moved to arraigning him, I

12  think he asked to make a phone call.

13    Q    That's when?

14    A    That's correct.

15    Q    You say the following day on the 11th he never

16  asked to make a phone call or you don't recall?

17    MS. ADAMS:  I'm going to object to this entire

18  line of questioning.  At this point he's getting to

19  discovery materials.  If he wishes to file a motion for

20  discovery, he can do so at that time.

21    JUSTICE KESSLER:  Response.

22    MR. NERO:  This is very relevant information.

23  This was already testified --

24    MS. ADAMS:  Not for this purpose.

25    MR. NERO:  It could have been.  This was

Tyrone P. James
Civil Case No. 1:CV-01-0115

FILED
HARRISBURG, PA

MAR 2 6 2003

MARY E. D'ANDREA, CL
Per _____

# EXHIBIT

# "B"

Counselor will see mental health requests and, if necessary, refer you to the Prison Psychiatrist. Dental requests will be reviewed by the dentist or dental assistant.

**MEDICATION**: If the Doctor prescribes medication for you, a nurse will bring it to your living quarters at medication passes. Some medications, such as antibiotics, may be given to the inmate to self-administer. The nurses pass medication three (3) times a day (approximately-7:30 A.M., 4:00 P.M. and 9:00 P.M.). To ensure you receive your medication, the following rules must be adhered to:

    A.    Your Block or Dorm Officer will announce, "MEDICATION". It is your responsibility to be at the door with water when the nurse arrives. **NOTE**: If you **are not at the door with a cup of water, you have missed your opportunity to receive you medication**. If you demand your medication, you will be given your medication and a "Write Up".

    B.    When it is your turn at the door, show the nurse your wristband. When the nurse gives you your medication, you are to take it in front of the nurse. After you have swallowed the medication, you must open your mouth to show the nurse that you have indeed swallowed the medication.

    C.    If you are going to be absent during "medication pass" (e.g. visits, etc.), please let your Block or Dorm Officer know so that medical can be notified. Being in the shower or in bed is not an acceptable reason for missing medication.

    D.    **Hoarding (mouthing or hiding) of medication is a serious offense!!**

## TELEPHONE CALLS

We can not pass messages to you unless it is a true **EMERGENCY**. Phones are located in each living area of the prison. You may make a reasonable number of outgoing calls per day. **Do not abuse or dominate the use of the phone. Others would also like to make calls.** All calls are collect calls. A **strict time limit of twenty minutes for each call is automatically installed in the phone.** If there is no one waiting for their first allowed call of the day, "an extra" phone call may be made. Phone calls are a privilege and can be taken away by a Captain.

**No inmate is permitted** to call his/her probation or parole officer, police agency, Magistrate, or the County. These departments have requested that you write to them with your requests or problems. Inmates are prohibited from making calls to any individual in which a "Protection From Abuse" (PFA) order is in effect. **Harassing, threatening, nuisance, or third party (3-way calls) are forbidden**. Any violation of these procedures will result in the loss of phone privileges, disciplinary action and/or criminal prosecution.

**Any inmate placed in BAU loses ALL telephone privileges during the time he/she is in BAU.**

## BAIL

A list of Bonding Companies (Professional Bondsmen) is available at Admissions or while in Pre-classification Housing. It is posted on the window by the phone and at the Officers' Booth. It may be best that you have your family or a friend make the contact, as they will need to do the arranging and the leg work to make it work smoothly.

Nominal Bail ("R.O.R."-Released on [one's own] Recognizance) and Supervised Bail will be considered in appropriate cases. To apply, contact your Counselor for an application and he/she will see that it is given to the Pre-Trial Probation Officer. The Probation Officer will let you know if you are eligible.

## MAIL

You may write as many letters as you wish, provided that the contents of the letters are NOT obscene, threatening, or forbidden by a PFA. Stationary and stamps may be purchased through the Canteen. If you are without funds you will be permitted to mail one free letter per week. Place the initials "N.F." (No Funds), in the upper right hand corner of your letter where the stamp would go and it will be stamped before being sent. Inmate to inmate correspondence is not permitted.

All incoming mail is opened and inspected for contraband. It is not read! You may receive no more than five (5) standard size photographs in the mail. If there are more than five (5) photographs, (no polaroids) the entire letter will be returned to sender. The cost of the postage to send the letter back will be taken out of your account. Stamps, cash, personal checks, oversized photos, large cards, stickers, and metal of any kind is contraband. Letters containing contraband will be returned to sender. Money orders made out to you will be accepted. The money will be placed in your account. Inform your family and friends to clearly write your name and I.D.# as written on you I.D. bracelet. Many inmates have aliases. You will only receive mail if the name on the letter matches the name on your I.D. bracelet. If the name is difficult to read it will be sent to Records Department. They will attempt to decipher it but that may take several days.

Incoming mail from public officials, Courts, and attorneys (legal mail) will be opened and checked for contraband in the presence of the inmate.

All outgoing mail is to be placed in the wicket of your cell door or in the collection box in your dorm. Your full name, I.D. number and return address must be on the envelope. All outgoing mail is recorded in a log book. The prison's address is: York County Prison, 3400 Concord Road, York, PA 17402-9007. Homemade envelopes are not permitted.

Tyrone P. James
Civil Case No. 1:CV-01-0115

HARRISBURG, PA

MAR 2 6 2003

MARY E. D'ANDREA, CLERK
Per

# EXHIBIT
## "C"

March 20th, 2003

Tyrone James
EX9451
P.O. Box A
Bellefonte, PA
16823-0820

Re:Tyrone James
#62154

Complaint Supervisor
York County Prison
3400 Concord Rd.
York, Pennsylvania 17402

Dear Complaint Supervisor,

 I, Tyrone James, an inmate at SCI-Rockview, wishes to pursue the York County Prison Grievance System. Please see information set forth on complaint (801)Form submitted with this letter.
 Please file this complaint as timely and forward all correspondance to this inmate at the address listed about; with any available Appeal Forms, if necessary. Thank you.

Sincerely,

Tyrone James

Tyrone James
EX9451
P.O. Box A
Bellefonte, PA
16823-0820

York County Prison – Inmate Complaint (801)

Date Submitted: ___March 20th, 2003_____

To: Complaint Supervisor         From:_____**Tyrone James**_____
                                              (Inmate's Name)

                                    ___**(no longer at York County)**___
                                        (Block)        (Pod)          (Cell)

Instructions:
1. Before writing this complaint please take any possible action to resolve this matter. Contact your Block Officer, ask for a Supervisor, or put in a request to your Counselor. On many occasions your problem can and will be quickly resolved. Use the 801 as the last resort.
2. You will usually receive an interview with the Complaint Supervisor within a few days. You may also receive a written response. In any case, you will receive a response within 10 days.
3. If more than one person writes the same complaint at the same time, a representative will be chosen.
4. Do not use this form:
(a) As a request or suggestion.
(b) As a "petition" (more than one person signing).
(c) As a "grievance" against any other inmate(s).
(d) For matters concerned with challenge of or review of disciplinary action.
Use a Request Form for the above.

State your complaint:

On January 10th, 2001, 10:30am, I, Tyrone James #62154, was arrested on criminal charges by Agent James Morgan, State Attorney General Office and the York County Drug Task Force.
At approximately, or about 8 to 9pm, while being escorted by Agent Morgan, to the Tork County Prison admission (intake); I made a request for a phone call to speak to my attorney, and to contact my immediate family, so I could inform them of my immediate situation and to be prepared for bail arragnment[PA. Rule Crim. P. 540(f). Agent Morgan, deliberately and intentionally, instructed correctional officers Bay lark and Asbury "not to give James, any phone call pending investigation"; I made repeated requests to C.O. Baylark and was deliberately, intentionally, and repeatedly denied, stating "he was instructed not to give me a phone call". Other intakes were allowed phone usage to contact their attorney, immediate family and a bailbond man. C.O. Baylark never conferred, or seek the approval of his supervisor, of whether to comply with Agent Morgan's instruct-ions; knowing that Mr. James' Due Process rights were being violated, and that the state allow a arestee, a resonable opportunity to contact his attorney, immediate family, or bailbond, through the use of a phone call. PA. Rule Crim. P. Rule 540(f). C.O. Baylark bluntantly denied James access to an attorney at Agent Morgan's request.
James was taken to the "BAU Unit" that same night without any access to a phone, to contact counsel, or immediate family members.
----------**COMPLAINT CONTINUED ON BACK OF PAGE**----------
DO NOT WRITE BELOW THIS LINE. USE REVERSE SIDE IF NECESSARY

_____
                    (Name)                        (Date)

He was subjected to continuous interrogation, by Agent Morgan.
The next morning January 11, 2001, in which Agent Morgan
illicited "incriminating statement" from James.

The denial of the use of a phone call by C.O. Baylark,
upon Agent Morgan's instruction; and the continually
interrogation the next morning, violated inmate James "Bill
of Rights" under the United States Constitution; under the 6th,
5th, 8th, and 14th Amendments. (Right to Counsel,
self-incrimination, cruel and unusual punishment and due process
right)

This was an immediate arrest in which James needed counsel,
and immediate family support to prepare bond. Other intakes
(arrestees and detainees were given reasonable access to the
phone by C.O. Baylark)

Inmate James' Constitutional Rights were violated by C.O.
Baylark who acted in conjunction with Agent Morgan in denying
James access to counsel; and subjecting him to continuous
interrogation.

James is seeking a change in Procedure and Monetary Damage
in a Fix Amount.

Tyrone James.

TYRONE JAMES
# 62154

INMATE MAIL
PA DEPT OF
CORRECTION...

Tyrone James
EX9451
P.O. Box A
Bellefonte, PA
16823-0820

FILED
HARRISBURG, PA

MAR 2 6 2003

MARY E. D'ANDREA, CLERK
Per _____

To Office of The Clerk
United State District Court
Middle District of Pennsylvania
228 Walnut Street, P.O. Box
Harrisburg, PA 17108.

Legal Mail!