# YORK COUNTY PRISON - INMATE PERSONAL PROPERTY SHEET

Prisoner's Name: JAMES, TYRONE PHILLIP

Date: 1/10/2001

Do NOT list allowable items worn by Prisoners at time of admission and which the new Inmate desires to keep in his/her possession (except heavy shoes containing METAL which should be appropriately checked below). They may keep and wear underwear, socks, soft shoes, belt with SMALL buckle, hankies, wedding band ONLY, and religious medallion only if these items were worn or in their possession at the time of admission. IN THE DESCRIPTION OF ALLOWED ITEMS, INCLUDE CONDITION, COLOR, ETC.

Trousers/Slacks: GRN PANTS

Shirt/Blouse: WHT T-SHIRT

Belt (List only if LARGE buckle or not worn by Inmate in jail): BRO BELT

Keys: NONE

Watch (if NOT kept Inmate): 1 SIC WATCH

Sundries (all other items): 15 CREDIT CARDS 2 PIECES OF FOREIGN MONEY

1 BLU HAT

Coat: BLK COAT

Sweater: NONE

Wallet/Pocketbook: BLK WALLET BRO WALLET

Rings/Jewelry: 3 GIC RINGS 1GIC EARRING 1 GIC CHAIN W/ MEDALION

Cash (money slip must be issued): 41.55

Checks: NONE

Shoes containing METAL, (put an X in the appropriate box).

- [x] Shoes Worn by Inmate.
- [ ] Shoes placed in property box.

***SPECIAL NOTICE:***

Any suitcase, bags, excess clothing, and anything NOT ALLOWED in the inmate's possession are to be SENT OUT OF THE PRISON AT ONCE or as soon as possible following the admission process. An extra phone call can be allowed for purpose.

ALL NEW PRISONERS are to READ or have READ TO THEM, the following, BEFORE SIGNING:
I understand that the above listed personal property items, allowed by the Prison Rules, will be held by the Prison until the time of my DISCHARGE from their custody. I understand all EXCESS items MUST be sent out of the Prison AT ONCE or as soon as possible because the Prison has no space or safe keeping place for any such items. Neither the Prison, nor the County of York, WILL be responsible in any way for excess items left in or around the prison by any Prisoner. I further understand that any ALLOWED PROPERTY (normally 1 shirt and 1 pair of pants, plus a coat during cold weather) may NOT EXCEED A TOTAL VALUE OF $20.00. COURT CLOTHING for JURY TRIAL ONLY may be sent to the Prison on THE DAY BEFORE THE COURT APPEARANCE - Marked with the INMATE'S NAME on the container (paper bag) and on EACH PIECE OF CLOTHING. Such COURT CLOTHING MUST be SENT OUT AT ONCE FOLLOWING THE COURT APPEARANCE. RECEIPTS will be made and SIGNED (legibly) for all articles coming into or going out of the Prison. I understand that I CAN MAKE A PHONE CALL FOLLOWING THE ADMISSION PROCEDURE IF MY BEHAVIOR IS WITHIN NORMAL STANDARDS. I hereby authorize all incoming MAIL TO BE OPENED FOR INSPECTION FOR CONTRABAND (letters and packages), or IF NOTED BELOW "DO NOT OPEN MAIL", it will be held until my discharge from the Prison. All "OFFICIAL/LEGAL" MAIL will always be opened in the PRESENCE of the Inmate addressed.

Prisoner's Signature (not printed): X Tyrone James

Receiving Officer's Signature (CHECKED above articles): #145

NOTE: ALL "CASH" and VALUABLES/JEWELRY MUST BE SENT TO THE FRONT OFFICE WITHIN ONE HOUR.

Effective June 1, 1996, any medications brought to the York County Prison by the inmate will no longer be stored. All new admissions are to be told that they have seventy-two (72) hours to make arrangements to have medications picked up and that any medications that are not picked up will be destroyed by medical. After the inmate has been informed, send the Receiving Screening form and any medications to medical.

**UPON DISCHARGE:**
I certify that all listed articles have been returned to me by York County Prison staff. I understand that I can receive all money and jewelry (if any) remaining in my account by SIGNING AT TIME OF RETRIEVAL my "MONEY SLIP" and turning it in to the Prison Business Office any weekday, excluding Holidays, from 7:00 AM to 3:00 PM.

Date:

Discharged Inmate's SIGNATURE:

EXHibits "A" CASE NO. 1:01-CV-1015

Q Did you leave any information with the York County Prison not to allow him a phone call?

A I asked that he not be permitted phone calls until the next day.

Q Who did you give that instruction to?

A I believe the guards at the intake.

Q This was what date, on the 11th?

A On the 10th, when he was incarcerated.

MR. NERO: I have no further questions at this time.

JUSTICE KESSLER: Redirect?

REDIRECT EXAMINATION

BY MS. ADAMS:

Q Are you aware of when the package was due in York?

A We initially thought that it was gonna be an overnight package, but we learned it was due in on the 10th.

MS. ADAMS: That's all.

JUSTICE KESSLER: Recross?

MR. NERO: No.

JUSTICE KESSLER: Very well. You may step down. Thank you.

MS. ADAMS: That's our case, Your Honor. Officer Craul is the affiant and would be able to testify

Q He never told you he wanted to call his wife or a lawyer?

A I think he asked me the night before that he wanted to make -- before the night he was arrested.

Q What day are we talking about?

A The 10th.

Q He asked on the 10th to make a phone call?

A Yes.

Q When did he ask you this?

A I think after I had -- after he had been -- after we processed him and were moved to arraigning him, I think he asked to make a phone call.

Q That's when?

A That's correct.

Q You say the following day on the 11th he never asked to make a phone call or you don't recall?

MS. ADAMS: I'm going to object to this entire line of questioning. At this point he's getting to discovery materials. If he wishes to file a motion for discovery, he can do so at that time.

JUSTICE KESSLER: Response.

MR. NERO: This is very relevant information. This was already testified --

MS. ADAMS: Not for this purpose.

MR. NERO: It could have been. This was

Q What time did it begin?

MS. ADAMS: Your Honor, I'm going to object to the relevance of all these questions.

MR. NERO: I think it's very relevant. He's claiming my client made statements and he's the one that knows what he specifically said. I'm trying to figure out does he remember this or not.

JUSTICE KESSLER: I believe he's answered numerous attempts to. Try to narrow down the time period here. He's indicated he doesn't remember.

I'll sustain the objection.

BY MR. NERO:

Q Was that the only conversation you had with him?

A Other than filling out the arrest form, yeah, that may have been.

Q It may have been. Did there come a time when he was transported from the station to York County Prison?

A Yes.

Q Did you speak with him there? Did you interview him there?

A At the prison?

Q Yes.

A The next day, the next morning, yes.

Q Before you did that, did you Mirandize him

testified to by Agent Morgan yesterday and before. I'm simply asking the same thing I asked him yesterday, which he answered.

    MS. ADAMS: Then you don't need to hear it today.

    MR. NERO: I did need to hear it today, of course.

    JUSTICE KESSLER: The Court's listened to the objection and the responses that have been made. This is indeed a preliminary hearing; it's not a discovery hearing. There is a process by which to arrange for discovery.

    I believe that the witness has answered the question at least once, if not twice. I'm going to sustain the objection and ask counsel to move along, please.

BY MR. NERO:

    Q    Do you recall ever saying to him that you are not -- besides the 9th, besides that first time, do you recall denying him access to the phone?

    A    The only time that I would have had the power or control of allowing him a phone call would have been in--when he was in my custody. Once he was in custody of York County Prison, I have no control over him using the phone.

2nd Miranda again

again?

A Yes.

Q And did he indicate he wanted to talk to you or was it then he wanted to see a lawyer?

A He spoke with us briefly and he said he wanted an attorney.

Q What did he say at that time?

A What did he say?

Q Yeah.

A He claimed he's on disability; that he receives his checks in California; that he lives here in York with his wife; that he's manager of her hair salon; that she pays him, I believe -- I don't remember the amount of money, but she pays him a certain amount. He helps with various utility bills and stuff at the residence. That he lives in York, that he doesn't live in California. And that he goes to Los Angeles to pick up his disability check.

Q Did you memorialize this?

A Yes, that's in my report.

Q That's in your report?

A Yes.

Q Did he tell you that he wanted to make a phone call?

A No.