**Westlaw.**

2001 WL 872960 Page 1
(Cite as: 2001 WL 872960 (E.D.Pa.))

▷
Only the Westlaw citation is currently available.

United States District Court, E.D. Pennsylvania.

John Eugene COLBURN, et al.
v.
CITY OF PHILADELPHIA, et al.

No. CIV. A. 00-2781.

April 11, 2001.

Gregory C. Dicarlo, Leonard, Tillery & Sciolla, Phila, for John Eugene Colburn, Joyce Colburn, H/W, Plaintiffs.

James Duckworth, City of Philadelphia Law Department, Assistant City Solicitor, Edward D. Chew, Jr., Deputy City Solicitor, City Law Department, Philadelphia, for McDowell, Police Officer, Individually and Officially in His Capacity as a City of Philadelphia Police Officer, Police Officers Jane and John Doe, Individually and Officially in Her/His Capacity as a City of Philadelphia Police Officer, City of Philadelphia, Police Department of the City of Philadelphia, Maryann Foley, Police Officer, Individually and Officially in Her Capacity as a City of Philadelphia Police Officer, Defendants.

ORDER AND OPINION

HART, Magistrate J.

*1 In this civil rights action, plaintiffs John Eugene Colburn and Joyce Colburn have named as defendants the City of Philadelphia, the Police Department of the City of Philadelphia, Police Officer McDowell, and Detective Mary Ann Foley. The City of Philadelphia ("the City") has moved to dismiss certain counts of the complaint, and for summary judgment on other counts. For the reasons discussed below, the City's motion will be granted in its entirety.

I. *Factual and Procedural Background*

On November 29, 1998, John Colburn was arrested at his home following an incident in which he admittedly displayed a handgun to "his neighbors and their guests." Memorandum in Support of Plaintiffs' Response, at 1. Officer McDowell was the arresting officer, and Detective Foley was the investigating detective.

The parties agree that the handgun Colburn displayed was seized by the police, and listed on a property receipt. Detective Foley testified at her deposition that she sent Colburn's gun permit to "permits", and did not list it on the property receipt. Foley Deposition Excerpt, attached to Plaintiffs' Response as Exhibit A, at 25.

According to Detective Foley, Colburn was charged with aggravated assault, simple assault, reckless endangerment, terroristic threats, possession of the instrument of a crime, and carrying a firearm without a license. Foley Deposition Excerpt, attached to Defendants' Reply as Exhibit A at 33. He was detained for three days. He claims that he was never given his *Miranda* warnings during this time. Plaintiffs also claim that eventually all charges against Colburn were dismissed, although Defendants deny this. Amended Complaint at ¶ 39; Answer to Amended Complaint at ¶¶ 30-40.

Plaintiffs set forth the following counts against all defendants on behalf of John Colburn in both their original and amended complaints [FN1]: (1) false arrest in violation of 42 U.S.C. § 1983; (2) false imprisonment, in violation of 42 U.S.C. § 1983; (3) malicious prosecution in violation of 42 U.S.C. § 1983; and (4) state law claims including "assault and battery, false imprisonment, false arrest, police recklessness, willful misconduct, intentional infliction of emotional distress, negligent infliction of emotional distress, negligence and gross negligence." A fifth count asserts a loss of consortium claim against all defendants, on behalf of Joyce Colburn.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works



2001 WL 872960                                                                                                                         Page 2
(Cite as: 2001 WL 872960 (E.D.Pa.))

> FN1. Plaintiffs' original complaint named as defendants only the City, the Police Department, Officer McDowell, and "John and Jane Doe" Officers. The parties stipulated that Plaintiffs could file an amended complaint, and a few days after the City's motion was filed, Plaintiffs did so, naming Detective Foley in place of "John and Jane Doe." In their reply in this motion, Defendants include a section heading stating "Defendants Object to Plaintiffs' Use of Their Untimely Amended Complaint as a Basis for Denying Defendants' Motion for Summary Judgment." However, there is no argument under the sub-heading. Also, Defendants have not sought to dismiss the amended complaint as untimely. In fact, they have already answered it. In any case, all of the material in the first complaint which Defendants seek to dismiss is also included in the amended complaint. For that reason, it is appropriate to decide the City's present motion.

In its Motion to Dismiss/Motion for Summary Judgment, the City makes these arguments: (1) the Philadelphia Police Department is not an entity subject to suit, and should therefore be dismissed as a defendant; (2) the City is immune from liability on the state tort claims alleged, and should therefore be dismissed from counts four and five; (3) summary judgment is warranted on Plaintiff's *Monell* claims.

II. *Discussion* [FN2]

> FN2. Language is included in the proposed order attached to Plaintiffs' response which seems to indicate that Plaintiffs agree to the dismissal of their claims against the Police Department, and of the state law tort claims asserted against the City. This is not, however, mentioned in their actual response. Moreover, Plaintiffs did not delete any of these claims from their amended complaint. For this reason, we will discuss them briefly.

A. *The City's Motions to Dismiss*

1. *The City of Philadelphia*

The City is correct in stating that the Police Department is not a separate legal entity that can be sued apart from the City of Philadelphia. 53 P.S. § 16257; *Atkinson v. City of Philadelphia,* Civ. A. No. 99-1541, 2000 WL 295106 at *2 (E.D.Pa. Mar. 20, 2000); *Brown v. City of Philadelphia,* Civ. A. No. 97-4737, 1998 WL 372549 at *4 (E.D.Pa. May 20, 1998). "Because all suits, including those brought under Section 1983, growing out of activities of a department of the City of Philadelphia must be brought in the name of the City of Philadelphia, an action against the Police Department of Philadelphia cannot be maintained." *Atkinson, supra, quoting Zamichielli v. Stott,* Civ. A. No. 96-9254, 1999 WL 447311 at *3 (E .D. Pa. Jul. 1, 1999). Accordingly, all charges against the Philadelphia Police Department will be dismissed.

2. *The Tort Claims*

**\*2** The City is also correct in arguing that the Political Subdivision Tort Claims Act, 42 Pa.C.S.A. § § 8541-8564 ("Tort Claims Act"), protects it from liability for all of the torts asserted in Count Four of Plaintiffs' complaints (original and amended). That section provides that the City may be sued in tort only for liability arising out of (1) vehicle liability; (2) care, custody and control of personal property; (3) care, custody and control of real property; (4) trees, traffic controls and street lighting; (5) utility service facilities; (6) a dangerous condition of streets; (7) a dangerous condition of sidewalks; and (8) care, custody or control of animals. *Id.* at § 8542.

The torts included in Count Four--assault and battery, false imprisonment, false arrest, police recklessness, willful misconduct, intentional infliction of emotional distress, negligent infliction of emotional distress, negligence and gross negligence--are not within the purview of the eight exceptions to the City's immunity set forth in the Tort Claims Act. Count Four will therefore be dismissed.

Joyce Colburn's loss of consortium claim in Count Five must be dismissed as well. Claims for loss of consortium are not cognizable under § 1983. *Ballas v. City of Reading,* Civ. A. No. 00-2943, 2001 WL 73737 at *7 (E.D.Pa. Jan. 25, 2001); *Quitmeyer v. SEPTA,* 740 F. Sup. 363, 370 (E.D.Pa.1990). Joyce Colburn's claim, therefore, could only have derived

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

2001 WL 872960                                                                                         Page 3
(Cite as: 2001 WL 872960 (E.D.Pa.))

from the state tort claims which will be dismissed. Where the allegedly injured spouse fails to plead a cognizable claim, his spouse's claim for loss of consortium cannot survive. *Quitmever, supra.*

B. *The Summary Judgment Motion*

1. *Summary Judgment Standard*

Summary judgment is warranted where the pleadings and discovery, as well as any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Pr. 56. The moving party has the burden of demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). In response, the non-moving party must adduce more than a mere scintilla of evidence in its favor, and cannot simply reassert factually unsupported allegations contained in its pleadings. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986); *Celotex Corp. v. Catrett, supra* at 325; *Williams v. Borough of West Chester,* 891 F.2d 458, 460 (3d Cir.1989).

When ruling on a summary judgment motion, the court must construe the evidence and any reasonable inferences drawn from it in favor of the non-moving party. *Anderson v. Liberty Lobby, supra* at 255; *Tiggs Corp. v. Dow Corning Corp.,* 822 F.2d 358, 361 (3d Cir.1987). Nevertheless, Rule 56 "mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett, supra,* at 323.

2. *Section 1983; Monell Claims*

*3 To maintain a cause of action under 42 U.S.C. § 1983 a plaintiff must establish both that the alleged conduct was committed by a person acting under color of state law, and that the conduct deprived the plaintiff of rights, privileges and immunities secured by the Constitution or laws of the United States. *Moser v. Exeter Township Borough Council Members,* Civ. A. No. 98-3525 (E.D.Pa., Sep. 4, 1998) at *1; citing, *Hicks v. Feeney,* 770 F.2d 375, 377 (3d Cir.1985):
  Section 1983 is not a source of substantive rights; it only provides "a method for vindicating federal rights elsewhere conferred." *Graham v. Connor,* 490 U.S. 386, 393-94 (1989).... Consequently, § 1983 does not provide "a right to be free of injury whenever the State may be characterized as the tortfeaser"--the plaintiff must show a deprivation of a federally protected right. *Paul v. Davis,* 424 U.S. 693, 701 ... (1976).
*Moser v. Exeter* at *1. Thus, not every wrong committed by a state actor provides grounds for a § 1983 action. The wrong must amount to a constitutional violation.

When a municipality is sued under § 1983, the plaintiff must show that his injuries were a result of an official City policy or custom. In *Monell v. New York City Department of Social Services,* 436 U.S. 658 (1978), the United States Supreme Court said: "It is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 692; *Beck v.. City of Pittsburgh,* 89 F.3d 966, 970 (3d Cir.1996), *cert. denied* 519 U.S. 511 (1997); *Andrews v. City of Philadelphia,* 895 F.2d 1469, 1480 (3d Cir.1990).

In *Andrews,* the Court of Appeals for the Third Circuit explained:
  A government policy or custom can be established in two ways. Policy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict. A course of conduct is considered to be a 'custom' when, though not authorized by law, 'such practices of state officials [are] so permanent and well-settled' as to virtually constitute law.
895 F.2d at 1480.

In proving a custom, a § 1983 plaintiff must demonstrate that a municipal policymaker was aware of the practice alleged to be a custom and acquiesced in it. *Beck, supra,* at 972; *also see Easley v. Philadelphia Housing Authority,* Civ. A. No. 99-4329, 2000 WL 1100868 at *2 (E.D.Pa. Aug. 2, 2000). A 'policymaker' is an official who, under state law, is identified as having "final, unreviewable discretion to make a decision or take an action." *Louis v. Prapotnik,* 485 U.S. 112 (1988) ; *Beck* at 973.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

2001 WL 872960                                                                                          Page 4
(Cite as: 2001 WL 872960 (E.D.Pa.))

### 3. *Colburn's Claims*

Colburn argues that the following were official City policies or customs which violated his constitutional rights: (a) not giving *Miranda* warnings to suspects at the time of arrest; (b) failure to adopt a fixed time period after arrest within which a person arrested must be read the *Miranda* warnings; (c) not taking a statement from a person arrested at the time of arrest; and (d) not listing gun permits on property receipts.

*4 In each instance, he relies exclusively upon Detective Foley's deposition testimony. Detective Foley testified that a gun permit is not listed on a property receipt: "That's our policy." Foley Deposition Excerpt at 25, attached as Exhibit A to Plaintiffs' response. She also testified that around 25 % of the time, when she is called to an arrest scene, the arrest "was not made on the basis of any statement or any version of events received by the person arrested." *Id.* at 30. Detective Foley testified that she read Colburn his *Miranda* rights when he was in detention, but she testified that "it's the City's policy" not to read a person his rights at the time of arrest: "I don't think it's printed anywhere. It's standard practice." *Id.* at 31-32. Finally, she testified that she "did not think" that there was a policy with regard to how much time could elapse between an arrest and the giving of *Miranda* right as long as it was "a reasonable length of time. *Id.* at 32-33.

It is far from clear that Officer Foley's testimony, standing alone, is sufficient to show the existence of City policy or custom. Certainly, it does not prove the existence of an "official proclamation, policy or edict", which would constitute a policy. It may also be insufficient to prove a custom, i.e., that official policymakers acquiesced in the practices alleged. This issue need not be decided, however, since Colburn's claims must be dismissed on different grounds. None of the practices Colburn cites is an appropriate basis for a § 1983 action. Even if they are customs of the City, none could be said to have violated his constitutional rights.

#### a. *Failure to Give Timely Miranda Warnings*

It is well-established that there is no cause of action under § 1983 against police officers for failure to follow *Miranda* procedures. In *Giuffre v. Bissell,* 31 F.3d 1241 (3d Cir.1994), the Court of Appeals for the Third Circuit explained:
> [V]iolations of the prophylactic *Miranda* procedures do not amount to violations of the Constitution itself ... The right protected under the Fifth Amendment is the right not to be compelled to be a witness against oneself in a criminal prosecution, whereas the 'right to counsel' during custodial interrogation recognized in [*Miranda* ] is merely a procedural safeguard, and not a substantive right.

31 F.3d at 1256. *See also Olender v. Township of Bensalem,* 21 F.Supp.2d 775, 786 (E.D.Pa.1999).

Because the purpose of the *Miranda* warnings is to prevent compelled self- incrimination, the remedy for a *Miranda* violation is the exclusion from evidence of any such compelled self-incrimination, not a § 1983 action. *Olender, supra.* Summary judgment is therefore warranted on this claim.

#### b. *Failure to Take a Statement at the Time of Arrest*

Summary judgment is also warranted on Colburn's claim that his constitutional rights were violated by a City custom of not taking a statement from a suspect at the time of arrest. The Fourth Amendment to the United States Constitution requires an arrest to be supported by probable cause, but it does not require that any particular element of probable cause--such as the taking of a statement from the suspect--be present in a particular arrest.

*5 Instead, probable cause is determined with specific reference to all of the elements surrounding a particular arrest. The United States Supreme Court has described probable cause as "defined in terms of facts and circumstances 'sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense." ' *Gerstein v. Puch,* 420 U.S. 103, 111 (1975), *quoting Beck v. Ohio,* 379 U.S. 89 (1964); *Merkle v. Upper Dublin School District,* 211 F.3d 782, 789 (3d Cir.2000); *Sharrar v. Felsing,* 128 F.3d 810, 817-818 (3d Cir.1997). Regarding a warrantless arrest such as Colburn's, "[t]he determination that probable cause exists ... is fundamentally a factual analysis that must be performed by the officers at the scene ." *Sharrar v. Felsing,* 128 F.3d 810, 818 (3d Cir.1997); *United States v. Glasser,* 750 F.2d 1197, 1206 (3d Cir.1984), *cert. denied,* 471 U.S. 1018 (1985).

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

2001 WL 872960            Page 5
(Cite as: 2001 WL 872960 (E.D.Pa.))

Thus, if at the moment Officer McDowell arrested Colburn, the facts and circumstances within his knowledge and of which he had reasonably trustworthy information were sufficient to warrant a prudent man in believing that Colburn had violated the law, probable cause was present, whether or not Officer McDowell spoke to Colburn. *Beck v. Ohio, supra,* at 379 U.S. 91; *Merkle, supra,* at 211 F .3d 789.

In evaluating the facts and circumstances surrounding Colburn's arrest to decide whether probable cause existed, the jury may take into consideration Officer McDowell's interaction with Colburn, or lack thereof. *See, Merkle, supra,* at 788. Nevertheless, a practice of taking statements from persons at the time of their arrest is not constitutionally required. Therefore, a general policy of *not* doing so is not a basis for a *Monell* claim against the City.

c. *Failure to List Firearm Permits on Property Receipts*

The last practice Colburn points to is that of failing to list firearm permits on property receipts. As noted above, Detective Foley testified at her deposition that forwarding them instead to the property division was "our policy." Colburn argues that this resulted in the Defendants initiating proceedings against him without probable cause for failing to display a valid permit for his gun. He has stated: "Detective Foley effectively precluded Plaintiff from presenting his defense and resulted in baseless charges being brought against him." Memorandum in Support of Motion at 7.

There is no evidence, however, that Detective Foley or any other police officer recommended that the charge of failing to display a valid gun permit be brought against Colburn. On the contrary, Detective Foley testified that this charge was added by the District Attorney's office. Foley Deposition Excerpt, attached to the City's reply as Exhibit A, at 33 -34. Moreover, Colburn could not in any event have "presented a defense" to an offense before he was charged with it. Colburn is really charging the City's policy, therefore, with simply having caused an error on the part of the District Attorney. This does not amount to a constitutional violation by the City, necessary for a § 1983 action.

III. *Conclusions*

*6 For the reasons set forth above, I now enter the following:

ORDER

AND NOW, this 11 day of April, 2001, upon consideration of Defendant, City of Philadelphia and Police Department of the City of Philadelphia's Motion to Dismiss/Motion for Summary Judgment, Plaintiff' response thereto, and Defendants' reply, it is hereby

ORDERED that Defendants' motion is GRANTED in its entirety, and that both the Police Department of the City of Philadelphia and the City of Philadelphia are DISMISSED as defendants in this action.

2001 WL 872960, 2001 WL 872960 (E.D.Pa.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works