FILED
HARRISBURG, PA

JUL 15 2004

MARY E. D'ANDREA, CLERK
Per _____
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

TYRONE P. JAMES
        Plaintiff,        :

                        :

        v.                 :

                        :

YORK COUNTY POLICE DEPARTMENT,  :
JAMES H. MORGAN, RICHARD PEDDICORD,  :
RAYMOND E. CRUAL, GENE FELLS,  :
DET. KESSLER, CO. BAYLARK,  :
RANDY SIPES, BRIAN WESTMORELAND,  :
and DETECTIVE GLOWCZESKI  :
        Defendants,        :

CIVIL ACTION NO. 1:01-CV-1015
(Judge Kane)
(Magistrate Judge Mannion)

JURY TRIAL DEMANDED

**BRIEF IN OPPOSITION OF DEFENDANT MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT**

**OF HIS SUMMARY JUDGMENT IN FAVOR OF THE PLAINTIFF'S**

### Statement Of The Case

This is a § 1983 action filed by a pro se prisoner, plaintiff's Tyrone P. James, seeking damages, Declaratory relief (judgment); punitive damages; Compensatory relief; in violation of his constitutional rights, under the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments; Due Process and Equal Protection; Deliberate Indifference; base on the use of excessive force used against Plaintiff's, when County and State and Federal Agents (Officers), in effectuating an arrest against the Plaintiff on January 10, 2001. The unlawful search and seizure, of plaintiff's Private Mail Box, his person and property without obtaining an arrest or search warrant; the illegal arrest and search of plaintiff's. The Failure to Give Miranda Warning and the Denial of Counsel, at this Plaintiff's Repeated Request. Unlawful detention and Excessive Bond set in the Amount of $2.5 millions, after Defendants, gave misleading and false sworn statements orally and in their Affidavit Of Probable Cause, to the District Justice, in the setting of Bonds.

### Statement Of Facts

As set Forth in the accompanying Declaration of the Plaintiff's, Tyrone P. James, and Complaint; where the plaintiff's alleges that on January 10,

2001, while he was retrieving mail from a mail box, rented at Mail Box Etc., at 2536 Eastern Blvd., York Pa 17402. Upon him exiting the building, he was approached by several individual, in plain clothes, who looked like "Thugs" running toward him; without identifying themselves as police officers. See also (Doc. NO. 1, ¶¶ 1-2; Doc. NO. 22 ¶ 5). Has Plaintiff's retrieved a "Make Shift Box," which was placed there by the Defendants, without a warrant, from the clerk, inside the Mail Box Etc., and exiting the building, Defendants Westmoreland and Morgan came running toward him, without identifying themselves, In fear of great bodily injury, plaintiff's dropped the "Box" retrieved from the mail box, and moving back toward the Mail Box Etc. (Doc. NO. 1 ¶ 3; Doc. NO. 22 ¶ 5); suddenly as plaintiff's was moving away from these strange defendants, he was intentional hit with a government vehicle, a van, driven by defendant Glowczeski and subsequently thrown to the ground. (Doc. NO. 1 ¶ 4; Doc. NO. 22 ¶¶ 5-6). While on the ground, plaintiff was trampled upon, cuffed and stepped upon numerous time. Neither did plaintiff's fight with these defendants or resisted arrest. Defendants took hold of his person, along with his personal property, example, is: Wallets, Keys, (House and Car Keys), personal credit cards, bank cards and checks, frequent flyer cards, lawyers network cards, business cards and notes. (Doc. NO.1 ¶ 4, Doc NO. 22 ¶ 5). the use of excessive force were in force at all time. Plaintiff's was lifted up off the grounds, placed in the van, and was immediately questioned by Defendant Morgan, without reading Plaintiff's his Miranda warning. There were no arrest or search warrant enforced. At no time did plaintiff's evade or run from these plain clothes individual, who he later found out to be police officers.

While in the van, Plaintiff's was approached by defendant James H. Morgan, whom blunted out, and asked him, "If I Know what was in the package?" without giving any Miranda warning or explaining, what the purpose for the stop, or the arrest. Plaintiff's was never read his Miranda warning by any of the defendants (Doc. NO. 1 ¶¶ 5-6).

Plaintiff's was transported to the York City Police Department, where he was interrogated by Defendant Morgan. Plaintiff's requested on several occasions, to speak to his Attorney, by Defendant Morgan refused, to allowed, this Plaintiff's to contact his counsel. Plaintiff's was denied Telephone access, to contact his attorney, or his family member, or a Bond man. (Doc. NO. 1 ¶ 6-10). Plaintiff's was again questioned by Defendant Morgan, at the the York County Prison. Defendant Peddicord and Craul, took hold of plaintiff's personal papers, business Cards, Credit Cards, lawyer Network Card, Airline Frequent Flyer Cards from his Wallet. Plaintiff's was held at the York City Police Department, for approximately 10:35 a.m. until 7:05 (Doc. NO. 1 ¶ 7). Plaintiff's was charged and processed, by Defendant Raymond Craul. (Doc. NO. 1 ¶ 8). Plaintiff's was taken to District Justice Leppo Offices, where he was later charged by criminal complaint, without an arrest or search warrant; by Defendant Craul and Morgan. Defendants, at that time, made false and misleading statements, sworn, orally and written, on the Affidavit Of Probable Cause. Plaintiff's was issued an excessive Bond and eventually taken to the York County Prison. (Doc. NO. 1 ¶ 9 ).

At York County Prison, Admission, Plaintiff's requested a phone call, from Defendant Morgan, to his Attorney, a Bond man, and his family. Defendant Morgan denied Plaintiff's a phone call and instructed, Correctional Officers Baylark and Asbury, "Not to give Plaintiff's any Phone calls pending investigation." Prison Guard, Baylark, subsequently denied Plaintiff's access to phone, his attorney, or contact his counsel. Plaintiff's was denied access to the used of Phone from January 10, 2001, at 10:35, through January 12, 2001, after 5:30 p.m.

Plaintiff's was subjected to steady and persistent questioning by Morgan, from January 10, 2001, until January 12, 2001. Plaintiff repeated request counsel, but Defendant Morgan ignored Plaintiff's and persisted on questioning him trying to elicit information from this Plaintiff's. Plaintiff's also informed Defendant of his disability. (Doc. NO. 1 ¶ 11). I was take to

Administrative Segregation Unit in the York County Prison, where you are denied access to phone calls, and the proper medical care.  Upon my release into General population; I was told that my wife was interrogated, her house search without a search warrant, by Defendant Morgan; furthermore, she was not informed about her husband whereabout until Defendant Morgan finishing harrassing her.

On Friday January 12, 2001, around 3:30, p.m., Plaintiff was taken from the York County Prison, escorted by a constable, to a District Justice Office on West King Street, after a brief hearing and Defendant Morgan and Peddicord, gave sworn and misleading statement, Plaintiff's was charged with two additional charges; Defendants requested from the District Justice for a "No Cash" Bond, in the amount of $2.5 million, "Cash Only."  After that Morgan gave abusive statements, and Defendant Peddicord, stated, that, " The Republican Farmer, is going to Hang me in Strawberry. PA."

## Procedural Facts

On June 8, 2001, this Plaintiff's filed a civil right action pursuant to 42 U.S.C. § 1983; which alleges various violation of his constitutional right; relating to his arrest on unspecified (Doc. NO. 1).

On June 25, 2001, the Magistrate Court gave the plaintiff's complaint preliminary consideration pursuant to 28 U.S.C. § 1915A and recommended that the complaint be dismissed pursuant to Heck v. Humphrey, 512 U.S. 477 (1994) and Smith v. Holtz, 87 Fed 108 (3d. Cir 1996), Finding that the plaintiff's had pending criminal prosecution in the state courts and that there would be the preterit for inconsistent determinations the civil and criminal cases (Doc. NO. 7). Plaintiff's filed objections.

By Memorandum and Order, dated September 18, 2001, the District Court, adopted in part and rejected in part the Findings and recommendation; specifically, the Court dismissed those portions of the complaint which sought injunctive or other relief to end or alter the Plaintiff's state prosecution and confinement; dismissed those portions of the complaint which assert claims on behalf of third parties and directed that the complaint be served for

consideration of the remaining matter. (i.e. the plaintiff Fourth Amendment Claim for unlawful seizure of his person and unreasonable search of his property, the plaintiff's Eighth Amendment claim for excessive Bond and plaintiff's Fourth, Fifth and Sixth Amendment claims for warrantless search, failure to Mirandarize and denial of Counsel). (Doc. NO. 16).

On February 25, 2002, the District Court permitted This Plaintiff to file a Amended Complaint, which sough to add new Defendants not named in his original complaint (i.e. Snipes Westmoreland and Glowczeski) ( Doc. NO. 55, Order; Doc. NOs. 22 & 56, Amended Complaint).

On December 28, 2001, The Defendants filed Motion To Dismiss, (Doc. NO. 45). A Brief In Support of the defendants motion to dismiss was filed on January 14, 2002, (Doc. NO. 53). On July 10, 2002, the District Court directed, that the case be Transferred back to the undersigned for preparation of a report and recommendation. (Doc NO. 77). Defendant motion to dismiss was brought pursuant to provision of Fed.R.Civ.P. 12(b)(6).

On March 13, 2003, the Magistrate Judge, Malachy E. Mannion, submitted is report and recommendation, recommending that Complaint, be granted in part and denied in part. Defendant Motion to Dismiss, the Magistrate, construed that Defendant Motion To Dismiss, should be granted, (1) Plaintiff's Eight Amendment excessive force claim concerning his arrest, (2) Plaintiff's Fourteenth Amendment Excessive Force Claim concern his arrest, (3) Plaintiff's Sixth Amendment claim related to denial of counsel prior to initiation of formal judicial proceeding, However, it should be denied with respect to (4) his Fourth Amendment claim of excessive force in the effectuation of his arrest (5) His Fifth Amendment Claim related to denial of his Miranda right and his continual interrogation; (6) His Fourth Amendment claim for unlawful search and seizure of his person during arrest, and (7) His Eight Amendment claim of excessive Bond.

On October 8, 2003, the Court adopted in full the report and recommendation (Doc. NO. 79 ), filed by Magistrate Judge Mannion; Defendants objection (Doc,

was overruled; Defendants motion to dismiss (Doc. No. 45) was granted in part, and denied in part; as follows: Plaintiff's Eighth Amendment excessive force claim; Fourteenth Amendment excessive force claim, and Sixth Amendment right to counsel claim were dismissed; the remaining of the motion was denied.

Discovery commenced. Plaintiff's requested appointment of counsel; production of documents, interrogatories, and admissions; Defendants refused to submits several relevant documents, to the Plaintiff's gave misleading responses, improper objection, insufficient response, general statement and totally evaded most of the requests. Plaintiff's seek motion to compel discovery, appointment of counsel, to pursue deposition and other discovery on behalf of this plaintiff's which was all denied by the Magistrate Judge Mannions. May 4, 2004, this Court Order the Defendants to take deposition of this plaintiff's and denied, plaintiff's motion Protective order, and temporary restraining order. Defendants, through counsel Jason C. Giurintano, served plaintiff's notice to conduct deposition on May 25, 2004, at the visiting room, SCI-Rockview. Deposition was conducted, by undersigned counsel and court reporter, Cynthia Piro Blough. At the end of the Deposition; Plaintiff's requested corrections, and the sealing of the documents,(See Plaintiff Motion For Enlargement Of Time); on June, 14, 2004, Court Report, forward Deposition Transcript, to undersigned counsel, who forward transcripts to the Superintendent Assistance, Mr. Jeffrey Rackovan, to arrange, for the corrections. (See Affidavit and Declaration in Support). On July 2, 2004, Plaintiff's completed corrections and on July 7, 2004, Prison Official Notarize corrections; and forward said documents.

On April 30, 2004, Defendants by undersigned Counsel filed Motion For Summary Judgment. Plaintiff's filed Motion For Enlargement Of Time. Plaintiff's also served the U.S. Marshals Service, to served Subpoenas upon the Defendants Employers, for Work relating documents, relating to work history, such as IAD Reports, Misconduct, Complaints filed by other Arrestee, and greivances. Documents request were to impreach purposes, by the Defendants,

as to credibility determination; to the Defendants answer to Interrogatories, Admissions, and Productions of Documents.

On July 7, 2004, Plaintiff received a Supplemental Motion For Summary Judgment, filed by undersigned counsel Jason C. Giurintano, submitting the uncorrected and uncertified Deposition Transcripts as Exhibits. Defendants counsel claiming that he elicited this information from Plaintiff's in violation of his Fifth Amendment Right under the U.S. Constitution; and Rule of Professional Conduct, by Attorney, and Discovery Rules Of Federal Procedure. His conduct amount to misconduct, inadmissible of the evidence and sanction, in favor of the Plaintiff's.

Plaintiff's hereby file this Opposition Motion of Defendant Motion For Summary Judgment; and Declaration in Support.

## Question Presented

ARE DEFENDANTS ENTITLED TO SUMMARY JUDGMENT IN THEIR FAVOR FOR PLAINTIFF'S

FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED?

Suggested Answer: No.

## ARGUMENT

**Summary Judgment Standard:**

It has long been recognized that the underlying purpose of summary judgment is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense. Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir. 1976) cert. denied, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). Summary Judgment is appropriate if the pleading deposition answers to interrogatories and admissions on file together with the affidavits, if any show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of laws. Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the records which demonstrate the absence of a genuine issue of material fact. Id. The moving party can

discharge that burden by "showing... that there is an absence of evidence to support the nonmoving party case." Id. at 325.


Issues of fact are genuine "Only if a reasonably Jury, considering the evidence presented, could find for the nonmoving party." Childer v. Joseph, 842 F.2d 689-94 (3d Cir. 1988)( Citations Omitted); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); Oritano Saving & Loan Association v. Fidelity & deposit Company of Maryland, (3rd Cir 1993); Troy Chemical Corp. v. Teamster Union Local NO.408, 37 F.3d 123 125-126 (3rd Cir.1994); Arnold Pontiac GMC,Inc. v. General Motors Corp., 700 F.Supp. 838, 840 (W.D.Pa. 1988).

An issue of material fact is said to be genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.

Material facts are those which will effect the outcome of the trial under governing law. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed 202 (1986). The Court may not weight the evidence or make credibility determination. Boyle v. County of Allegheny, 139 F3d 386, 393 (3d Cir. 1998). In determining whether an issue of material facts exist, the Court must consider all evidence and inferences drawn therefrom in the light most favorable to the nonmoving party. Id. at 393. If the moving party meets his initial burden, the opposing party must do more than raised some metaphysical doubt as to material fact, but must show sufficient evidence to support a jury verdict in its favor. Id. See Morgan v. Havir Manufacturing Co., 887 F.Supp. 759 (E.D.Pa. 1994); Mc. Grath v. City of Philadelphia, 864 F.Supp. 466, 472-473 (E.D.Pa 1994).

I

WHETHER THE UNDISPUTED MATERIAL FACTS REVEAL THAT DEFENDANT ARE ENTITLED TO SUMMARY JUDGMENT BECAUSE THERE IS NO VIABLE EIGHT AMENDMENT EXCESSIVE BAIL CLAIM AGAINST DEFENDANTS.

Suggest Answer: No.

Under the United States Constitution, the Eighth Amendment clearly states, "that excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted.

The Defendant argued that the Defendant did not set the Plaintiff's bail; and that Plaintiffs, avers that Defendant did not set the amount of bail in this matter, but rather, the District Justice did.  Defendants avers that Court are clear from the setting of bail, because it is a judicial act.   The Defendants citing Cleavinger v. Saxner, 474 U.S. at 206, 106 S.Ct. 496 (1985). Defendants also cited, Com. v. Chopak, 615 A.2d 696 (Pa.1992). Stating that Pennsylvania law grant judges the authority to set bail and any conditions thereto.

The Defendants an officers of the Courts, most be liable for their wrong doing. This court must consider the official independent act and the attended his/her  procedural safe guards in the decision-making process cause by the defendants.  Cleavinger, 474 U.S. at 202, 106 S.Ct. 496.; Hamilton v. Leavey 322 F.3d 776 (3rd Cir. 2003).

First this Plaintiff's property was search without a warrant or judicial approval, subsequently, plaintiff's was arrested without a warrant; Defendant interrogated plaintiff's in violation of his Fifth Amendment right to self-incrimination, and his Sixth Amendment right to counsel; Plaintiff was detained on January 10, 2001, by Defendants from 10:35a.m., until 7:30 p.m., without a preliminary hearing.  Upon defendants taking plaintiff's to the District Justice Leppo, Defendant Crual and Morgan made sworn false statements, before the District Justice, orally and in the sworn Affidavit of Probable Cause, signed and dated, January 10, 2001, By Defendant Crual, stating that defendants was arrested with controlled substance, "Drug" and that said drugs was in the State of Pennsylvania, when intentionally and knowingly, the Defendant know that plaintiff's was not in no possession of any controlled substance, and that said package was place at the Mail Box Etc., by the Defendant for plaintiff's to retrieve, then arrested him. See Defendant Erroneous Criminal Complaint Filed, (Defendant Exhibit 4).  Defendants went on to tell the District

Justice, that, "Plaintiff's was a Flight risk," even though plaintiff's live with his wife and children in Pennsylvania. Defendants further went on to make sworn false statement about defendant criminal past, and about his attire, (clothing, and personal belonging sworn, at that time, to the Justice District; stating, "that the clothing, watch and jacket, worn by Plaintiff's, they could n't afford, and from his attire, they could tell that he was a drug dealer, involved in criminal activity," even though, there was no contraband, found, or taken off this plaintiff's or in his possession). Plaintiff's didn't show a risk of flight, or a danger to the Community. Furthermore, Defendants sworn statement was misleading; defendant committed perjury by sworn false statements. These State Defendant abuse their authority; by denying plaintiff's an attorney, at his request, who would of challenged every judicial decisions at each charging and bail setting. Allegation of legal error do not deprive a judge of judicial immunity, "However erroneous the act may have and however injurious in its consequences it may have proved to the plaintiff's, Moore, 96 F.3d at 1244 (quoting Cleavinger v. Saxner 474 U.S. 193 119-200, 106 S.Ct. 496,(1985). The abuse of authority, in misleading the District Justice in setting in excess of 2.5 millions, was unreasonable, unfair and unjust and in violation of his Eighth Amendment right. It also give rise to deliberate indifference and Equal Protection; because an arrestee in similar situation would not be subjected to such excessive bond; also plaintiff Agenda or race had lot to do with the violation. See Farmer v. Brennan, 511 U.S. 825, 847, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)

The Defendants citing Com. v. Chapak, 615 A.2d 696 (Pa.1990); and Lutz v. Lavelle, 809 F.Supp. 323, 327 (M.D.Pa 1991) which held that decision to allowed, or deny remission of bail forfeiture lies within sound discretion of trial Court; and principle that state officials sued pursuant to 42 U.S.C. § 1983 are entitled to qualified immunity from suit for damages. when those sound decisions are related to Affiant misleading and false statements, and perjury, then federal Court should adjudicate its duties to protect this citizen

constitutional right. Plaintiff's his not arguing that he wasn't give a bond, plaintiff arguments, are that if it was not for Defendants Craul, Peddicord and Morgan, give misleading and false information and committing perjury, he would be allow reasonable bond; U.S.C.A, 8. While the administrator simple cannot make routine and automatic argument that protecting the "Constitutional Right of prisoner will lead to a breakdown in institutional discipline and security . Cleavinger v. Saxner, supra. The District Justice should have made a more thorough investigation on the evidences presented to him, in a neutral manner, than relying solely on the Defendants oral and sworn statement under oaths. Even though, Defendants believes that the state provide a judicial remedy. Pa.R.Crim.P.529(b)(1). A remedy that was tainted, by the Defendants, and Depriving him of his constitutional rights.

On January 12 2001, around, 3:30 or 4:00 p.m., Defendants Morgan and Peddicord summons Plaintiff's, by a Constable Kelly, to Be escorted to the District Justice Haskell Office. Defendants, specifically request a "cash only" bond in lieu of 2 million; which District Justice , Haskell, Set. "there Defendant Peddicord told the District Justice, that, "Plaintiff, would be facing a 30 years sentence in Federal Custody." These defendants misleading and false information, sworn under oaths, before the District justice, influenced the Judge decision; likewise any other arrestee, of a different racial background, would not be treated in this manner; under Equal Protection of the law. See Cleburne v. Cleburne Living Center, 473 U.S. 432 87 L.Ed.2d 313, 105 S.Ct. 3249 (1985); Power v. Ohio, 499 U.S. 400, 113 L.Ed. 2d 411,111 S.Ct. 1364(1991).

Pa.R.Crim.P. 518(A) and Rule (a)(F); when a arrestee is arrested without a warrant, he most be taken before and Judicial Office, without unnecessary delay; prompt Judicial proceedings, here plaintiff's was delayed in going before a Judge, for a preliminary arraignment, to be read the charge against him. Riverside v. McLaughlin 500 U.S. 44 (1991); Com. v. Willaim, 400 A.2d 1258 (Pa. 1979).

Pa.R.Crim.P. Rule: Bail before Verdict:

(A) Bail before verdict shall be set in all cases as permitted by law. Whenever bail is refused, the bail authority shall state in writing or on records the reasons for that determination.

Article 1 § 14 of the Pennsylvania Constitution was amended in 1998 to read "All prisoners shall be bailable by sufficient sureties, unless for capital offense for which the maximum sentence is life imprisonment or unless no condition or combination of conditions other than imprisonment will reaonsably assure the safety of any person and the community when the proof is evident or presumption great; and the privilege of the Writ of Habeas shall not be suspended; unless when in case of rebellion or invasion the safety may require it." Com. v. Truesdale, 296 A.2d 829 (Pa. 1972). The record shows, that this Plaintiff's was held beyond the Sixth hour Rule, when he was held at the York City Police Department, by Defendant, without giving opportunity to find out the charges to be filed against him. See Pa.R.Crim.P. Rule 518 and 540 furthermore the unnecessary delay before arraignment was unwarranted. Defendants violated Plaintiff's Due Process right by detaining him without a search or arrest warrant, under false imprisonment, then when out and gather evidences, in other to charge, this Plaintiff of an offense he had no knowledge of. These Defendants made sworn and false statement before District Justice Leppo and Haskell, under oaths, in the decision making of the bond issue, which was Harsh, unreasonable and Excessive; Plaintiff's isn't disputing the Judicial process, of the Pennsylvania Statutes; Plaintiff's challenge his Constitutional Right under the Eighth Amendment Right to Equal Protection against, excesive bond and cruel and unusual punishment; incited by these Defendants, Morgan, Craul and Peddicord; in fluencing the District Justice decision-making.

The Eighth Amendment State that excessive bail shall no be required ... This Constitutional provision is interpreted to prohit excessive bail without creating a right to bail. Bail become excessive when a Court sets the amount of bail higher than the reasonably necessary to ensure a defendant appearance at trial. Government action depriving an individual of life liberty or property

be implemented in a fair manner and not be <u>arbitrary</u>.  See <u>United States v.</u> <u>Salerno,</u> 481 U.S. 739, 95 L.Ed.2d 697, 107 S.Ct. 2095.  Plaintiff right to a fair and reasonable bail was violated, when Defendant gave false statement under oaths, and specifically requested the District Justice, to issue, "Cash Only" Bond, in the total amount of $2.5 million.  It was lead to believe that Plaintiff was impermissible punish before trial.  See <u>Bell v. Wolfish</u>, 441 U.S. 520, 535, and 16n. 60 L.Ed.2d 447 99s.  Accordingly, Plaintiff's claim under Excessive Bond, should be proceed, and Summary Judgment should be in favor of the Plaintiff.  The Defendant failed to file objection to the arguing for dismissal of Plaintiff's claim that his Eighth Amendment right were violated by setting of excessive bail (Doc.No.119 at 13).  Also see (Doc.N0. 16).

II

**THE UNDISPUTED MATERIAL FACTS REVEAL THAT DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT AND THE COMPLAINT SHOULD BE DISMISSED BECAUSE THERE IS NO VIABLE FIFTH AMENDMENT CLAIM AGAINST DEFENDANTS.**

Suggested Answer: No.

In <u>Missouriv. Seibert</u>, U.S. N0. 02-1371; The Supreme Court recently rule that A two step interrogation in which police deliberately interrogated an in-custody suspect thoroughly prior to providing the advisement of rights required by <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966), and resumed questioning her on the same matter shortly therefore following the provision of Miranda warning violated her Fifth Amendment rights to be free from compelled self-incrimination and required suppression of the post-warning statements.

It has "long been settled that [the Fifth Amendment] protection encompasses compelled statements that lead to the discovery of incriminating evidence even though the statements themselves are not in criminating and are not introduced into evidence.  <u>United States v. Hubbell 530 U.S. 27, 37 (2000)</u>.  By "Incriminating we have meant disclosure that "could be used in a criminal prosecution or could lead to other evidence that might be so used.  <u>Kastigar</u> <u>v. United State</u>, 406 U.S. 441, 445 (1972).  Commonwealth in other words that

"would furnish a link in the chain of evidence needed to prosecute the Claimant for a Federal Crime. Hoffman v. United State, 341 U.S. 479 486 (1951). Thus "[C]ompelled testimony that communicates information that may lead to incriminating evidence is privileged even if the information itself is not inculpatory." Hubbell, 530 U.S. at 38 (citing Doe, 487 U.S. at 208; n.6). Yarborough v. Alvarado, NO. 02-1684 (6/01/04).

Plaintiff's avers that his Fifth Amendment his Miranda warning at the time of his arrest was not administered; when Defendants Morgan, confronted Him at the "Van" and Bluted out to Plaintiff's, "If he know that it was 'marijuana' in the Package?" Without explaining the reason for the stop, or his arrest. [ See Exhibit in support of this Opposing brief, Defendant Morgan Testimony, dated, March 28, 2001, before, District Justice Kessler, page 6-35, specifically page 9 and 28]. Plaintiff was never read his Miranda warning by any of the Defendants (Doc.NO.1 ¶ 5). Plaintiff's was transported to the York City Police Department, where he was later subjected to interrogation by Defendant Morgan, without Miranda warning. Plaintiff's never signed a Miranda waiver, or card, neither was he giving one. Plaintiff's on several occasions during Defendant Morgan trying to interview Plaintiff's, by filling out the arrest report, [See Exhibit, Arrest Report, stating that Plaintiff's was arrested by warrant, but in actuality, there was no warrant to arrest, Plaintiff's and the no statements were made by plaintiff's at the time of his arrest; yet, Morgan fabricate statement of what this Plaintiff's said any used it against him]. Plaintiff's asked Defendants Morgan and Craul on several occasion for a "Phone Call" to Contact his Attorney' but was denied by both Defendants. See (Doc.NO.1 ¶ 6). Plaintiff's "Lawyer Network Card," was confiscated By Defendant Morgan and destroyed. Defendant Morgan, subjected this Plaintiff's to persistent interrogation, verbal abuse, coercion, by telling this Plaintiff, that, "He is going the arrest his wife, lock her up, and take the children, to be placed in a Faster Care;" and that, "It will be a long time before Plaintiff's will ever have sex with his wife;" Defendant Morgan, later instructed prison officials, "Not to give Plaintiff's any phone call,

pending investigation;" after the preliminary arraignment. Defendant Morgan

brag about, "How this will let him look good, in the York Daily Newspaper."

[copies of vary articles, was printed before this Plaintiff trials, in which

this plaintiff's is waiting to obtain copies to be submitted to this Court].

Plaintiff's was placed in Segregated Confined, without any medical care, a

phone call to an attorney, and on January 11, 2001, while he was still confined

in the lock up unit, was called out, and was subjected to further interrogation

by Defendant Morgan and a Agent Abel Rios, from the Attorney General Office.

Plaintiff's invoke his rights to counsel; while Defendant Morgan, tried to

elicit information about other crime and financial transactions, and bank

information. [ Plaintiff Declaration In Support]. Plaintiff's Due Process,

under the 14th Amendment, U.S. Constitutions, embedded in the state, was

violated.

First, the Court has held that [Mis[use of power, possessed by virtue

of state law and made possible only because the wrong doer is clothed with

the authority of state law is action taken " under color of " state law. U.S.

v. Classic 313 U.S. 299. 326 (9141); Monroe v. Pagre 365 U.S. 167, 184087

(1961); West v. Atkins 487 U.S. 42 54-55 (1988).

The Fourteenth Amendment to the United State Constitution provide that

the State can not deprives any person of life, liberty, or property without

due process of the law. See Hewitt v. Helms, 549 U.S. 460 (1983); Blakledge

v. Perry, 417 U.S. 21, 40 L.Ed. 628, 94 S.Ct. 2098 (1974)(Due process protects

criminal defendant against prosecutorial or judicial action intend as penalties

for defendants exercise of his constitutional rights). Defendant Morgan

psychological tactics and abusive behavior, amount to coercion, when he

approached plaintiff's , without Mirandarized him, then further subject him

to persistent interrogations. Defendant Morgan claimed that this Plaintiff's

blurted out that, "He thought the parcel was beauty supplies and that he didn't

know anything about any mariguana." [ page 9 from Morgan Note Of Testimony

March 28, 2001, Exhibit]. Show that Defendant Morgan never read plaintiff's

his Miranda warning; because, "Why would Plaintiff's blurted out such statement, if he had no knowledge of the content of the "Make shift Package," placed at the Mail Box Etc. 2536 Eastern Blvd., York Pennsylvania, by Defendants?" to incriminated himself. Furthermore, Plaintiff's has no X-Ray vision, to know what was mail to him, in a seal box; and would had invoked is right under Miranda.

"There can be no doubt that the Fifth Amendment privilege is available outside of criminal Court proceeding and serves to protect persons in all settings in which their freedom of action is curtailed in any significant way from being compelled to incriminate themselves." Miranda v. Arizona 384 U.S. 436, 467 (1966). It is a "settled principle" that "the police have the right to request citizen to answer voluntary questions concerning unsolved crimes," but they have no right to compel them to answer." Davis v. Mississippi, 394 U.S. 721, 723, n.6 (1969). The protections of the Fifth Amendment are directed squarely toward those who are the focus of the government investigative and prosecutorial powers. In a criminal trial, the individual defendant has an unqualified right to refuse to testify and may not be punished for invoking that right. See Carter v. Kentucky, 450 U.S. 288 299-300 (1981). The unindicted target of a grand jury investigation enjoys the same constitutional protection even if he has been served with a Subpoena. See Chavez v. Martinez, 538 U.S. 760, 767-768 (2003). So does an arrested suspect during custodial interrogation in a police station. Miranda 384, U.S. at 467.

There is no reason why the subject of police interrogation based on mere suspicions, rather than probable cause, should have any lesser protection; indeed, the Court have said, that the Fifth Amendment protections apply with equal force in the context of Terry, stop. See Terry v. Ohio, 392 U.S. 1 (1968). Where an officer's inquiry "must be reasonably related in scope to the justification for [the stop's] initiation." Typically, this means that the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the

officer's suspicions; but the detainee is not obliged to respond; Ibid, See also Terry, 392 U.S. at 34 (White; J. Concurring) ("of course, the person stopped is not obliged to answer, answers may not be compelled, and refused to answer furnishes no basis for arrest, although it may alert the officers to the need for continued observation"). See also Hiibel v. Sixth Judicial Dist. Court of Nov. Hambold Cty., U.S. NO. 03-5554 (6/21/04).

The Supreme Court, state that "We do not ask police officers to consider these contingent psychological factor when deciding when suspects should be advised of their Miranda Rights. See Berkemer v. McCarty, 468 U.S. at 431-432. The inquiry turns too much on the suspects subjective state of mind and not enough on the "Objective" circumstance of the interrogatories. See Stansburg. 511 U.S. at 323; Yarborough v. Alvarado, U.S., NO. 02-1684, (6/1/04).

Under Miranda and its progeny, the determination of whether a suspect was "in custody" is an objective one. In Thompson v. Keohane, 516 U.S. 99 (1995). the Court Explain; Two discrete inquiries are essential to the determination: First, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave. Once the scene is set and the player's lines and actions are reconstructed, the court must apply an objective test to resolve the ultimate inquiry; was there a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.

This Court, is aware, that Plaintiff's was arrested by excessive force, on January 8, 2001, in the Kingston Square Center. by Defendants, and the time of the arrest, Defendant Morgan, approached Plaintiff's and started, to asked him questions, without giving him any Miranda warning. See (Doc ¶ 1); Plaintifff's was later transported to the York City Police Department, were he was subsequently interrogated without Miranda warning. On January 11, 2001, he was then questioned by Defendant Morgan. The Court is aware that this arrest was a subterfuse, or pretext arrest, when Defendants placed "Make Shift Package"

at plaintiff's private mail box without a warrant, to create an arrest; which in modern day text book, "Entrapment." Whatever statements the Defendants alleged Plaintiff's made was used in the "Affidavit of Probable Cause," by Defendant Morgan and Crual to detained Plaintiff's; see (Defendants EXhibit 4, filed with their Summary Judgment Motion). At no time did this Plaintiff's voluntary any information to these Defendants.

The Fifth Amendment privilege against Self-Incrimination provides that [N[o] person shall be compelled in any criminal case to be a witness against himself. To protect the Fifth Amendment right against Self-Incrimination, the Supreme Court in Miranda v. Arizona ruled that police may not interrogated a suspect who has been taken into custody without first warning the person, "that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney, one will be appointed for him prior to any questioning if he so desires." Mirand v. Arizona, 384 U.S. 436, 479, 86 S.Ct. 1802 16 L.Ed.2d 694 (1966); accord Dickerson v. United States, 530 U.S. 428, 443-44, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000)(Revisiting and reaffirming Miranda). If a suspect is not so warned, the prosecution is barred from using statements obtained during the interrogation to establish its case in chief. See Michigan v. Harvey, 494 U.S. 344, 350, 110 S.Ct. 1176, 108 L.Ed.2d 293 (1990); Parsad v. Greiner, 337 F.3d 175, 184 (2d Cir. 2003). cf. Harris v. New York, 401 U.S. 222, 224-26, 91 S.Ct. 643, 28 L.Ed2d 1 (1971) (holding that statements obtained in violation of Miranda may be admitted for impeachment purpose). The free to leave inquiry constitutes a necessary, but not determinative, first step in establishing Miranda custody. The "Ultimate inquiry" for determining Miranda custody, however, is that articulated by the Supreme Court in California v. Beheler, 463 U.S. at 1125, 103 S.Ct. 3517. "Whether there is a formal arrest or restraint of freedom of movement" of the degree associated with a formal arrest." 463 U.S. 1121, 1125, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983). (per curiam)( qouting Oregon v. Mathiason,   429

U.S. 492, 495, 97 S.Ct. 711, 50 L.Ed.2d 714 **(1977)** accord **Stansbury v. California**, 511 U.S. 318, 324, 114 S.Ct. 1526, 128 L.Ed.2d. 293 **(1994)("in** determining whether an individual was in custody, a Court must examine all of the circumstance surrounding the interrogation but the ultimate inquiry is simple whether there was a formal arrest." (internal quotation mark and alteration omitted). However "Slippery" the task of defining such custody has proved in discrete case; **Oregon v. Elstad**, 470 U.S. 298, 309, 105 S.Ct. 1235 **(1985)**. The Supreme Court has resisted efforts to shift attention from the custodial status of the person questioned to the coercive pressures of a particular interrogation. See **Orazco v. Texas**, 394 U.S. 324, 326-27. 89 S.Ct. 1095, **(1969)(**holding that Miranda warning must be given to an arrested defendant interrogated in his own home, even though the familiar surrounding did not present the compulsive pressures of police station). Here Plaintiff's was hit by a "Van" driven by Defendant Glowczeski and tackle by other Defendants, and was subsequently questioned and Defendant Morgan, at the Scene. No other Defendants recalled Defendant Morgan reading Plaintiff's his Miranda warning, and the time of arrest, at the van, in the Kingston Square Center; [see Defendants answer to admission and interrogatories]. The Court has made clear that there simple is no place for a Robust deterrence doctrine with regard to violation of, **Miranda v. Arizona**, 334 U.S. 436 **(1966)**. See **Dickerson V. United**, 530 U.S. 428, 441 **(2000)**. The Supreme Court establish a prophylactic procedural mechanism those safe guards a defendant Fifth Amendment privilege against the innerently coercive nature of custodial interrogation. **Miranda v. Arizona, Supra**. The Court held that unless the defendant was informed of his Fifth Amendment right before questioning any pretrial statement elicited from the defendant during custodial interrogation were inadmissible at trial. the Court in **Dickerson v. U.S. 530 U.S. 428 (2000)**, ruled that Miranda announced a constitutional rule," that could not be overruled by Congress. The Court when on the announced that Miranda is a constitutional rule of law which Congress could not supersede legislatively, and that Miranda and it progeny

govern the admissibility of statements made during custodial interrogation in both the state and federal Court.  From Defendant Morgan Testimony, [Preliminary Hearing, dated March 28, 2001].  It is fear to say that Morgan alleged that this Plaintiff's made statements, which from the face of the pleading, and being advised of his right to remain silent; this Plaintiff's, was never read is Miranda Right, by Defendant Morgan, or any other of the Defendants.

The Supreme Court 2003 decision in Chavez v. Martinez 123 S.Ct. 1994 (U.S. 2003), rejected a strict use-at-trial requirement for § 1983 Fifth Amendment damages actions.  Weaver v. Brenner, 40 F.3d 527 (2d. Cir. 1994).  It observed that, according to the Supreme Court, criminal proceeding in facts begin during custodial interrogation of a criminal suspect.

Under the Fifth and Fourteenth Amendments "Police officers may not attempts to compel or coerce a suspect into confessing ... when official deliberately choose to ignore the law and the constitution in favor of their own methods; the challenged Conduct was conscience-shocking.  The issue presented here is one under a substantive and objective due process right.  See generally County of Sacramento v. Lewis 523 U.S. 833, 849, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998).  Plaintiff's have state a claim under his Fifth Amendment Claim.

The Sixth Amendment guarantee the right to assistance of counsel at postarraignment interrogation.  The arraignment signal, "the initiation of adversary judicial proceedings'" and thus the attachment of the Sixth Amendment.  See United States v. Gouveria, 467 U.S. 180, 187, 188, 104 S.Ct, 2292, 2297 81 L.Ed. 146 (1984).  The Government efforts to elicit incriminating information from the accused including interrogation represent,"Critical Stage" at which the Sixth Amendment applies, Mane. v. Moulton, 474 U.S. 159, 106 S.Ct. 477, L.Ed.2d. 139, United States v. Henry, 447 U.S. 264, 100 S.Ct. 2183, (1980); Brewer v. Williams, 430 U.S. 387, 388 (1977).  The Sixth Amendment right to Counsel attaches at the time adversarial judicial proceedings have been initiated against a person by way of formal charge, preliminary hearing, indictment, information or argument.  Here Plaintiff's was unlawful arrest

at the Kingston Square Center, By Defendant, and was never Mirandarized; he was later transported to the York City Police Department; there he was subjected the persistant interrogation, by Defendant Morgan; even though his Supervisor, Defendant Westmoreland, was willing to release Plaintiff's , for lack of probable cause; Defendant Morgan, in his [Answer to Admission, claimed that District Attorney's William Graff's ordered my detention. without warrant or probable cause], disorder obeyed superiors, and detained Plaintiff's,. Plaintiff's requested his Attorney's on several occasions, during questioning, by way of phone call and that, "He would like to speak to his Attorney, to represent him in this manner," Morgan proceeded to arraigned him nine (9) hours after the arrest. During arraignment and at the York County Prison, Plaintiff's request counsel, and the used of a phone; plaintiff was denied by Defendant Morgan, who instructed Prison Guards Baylark, and Asbury."Not to give James any phone call pending investigation;" plaintiff's was placed an Segregated united without any access to medical care, or the use of the phone. The following mornings, Morgan continued is interrogation. [See Note Of Testimony, Morgan, Exhibit, Preliminary hearing, dated March 28, 2001, attached, page 6-35].

Michigan v. Jackson, 106 S.Ct. 1404, 475 U.S. 625, 89 L.Ed.2d 631 (1986) (held that if police initiated interrogation after defendants assertion at arraignment or similar proceeding of his right to counsel, any waiver of the defendant right to counsel for that police-initiated interrogation, is invalid). The Fifth Amendment prohibits interrogation after a clear request for counsel is made. See Davis v. United States, 512 U.S. 452, 450 (1994)("if a suspect requests counsel at any time during the interview, he is not subject to further questioning until a lawyer has been made available or the suspect himself reinitiates conversation")(citing Edwards v Arizona, 451 U.S. 477, 484-85); also see Miranda v. Arizona, 384 U.S. 436 (1966). Alston v. Redman, 34 F.3d 1237 (3rd Cir. 1994)( suspect who has requested presence of counsel cannot be questioned concerning any crime, not just one that got him in custody).

Plaintiff's neither reinitiated any conversations with any of the Defendants, the only conversation was to request counsels.

The Defendants have raised the the questions, that, notwithstanding this deficiency, the Court need no even reach the issue of whether the statements were against Plaintiff in his trial, because even if they were, the Heck doctrine prohibits Plaintiff's from obtaining § 1983 relief. More specifically, a finding by this Court that the questioning, interrogation and any subsequent statements made by Plaintiff were impermissible and unconstitutional under § 1983 would most certainly call into doubt the validity of his underlying conviction. The Heck doctrine prohibits Plaintiff from obtaining § 1983 relief. Heck v. Humphrey, 512 U.S. 477, 114 S.Ct. 2364 (1994). Nevertheless, because of Heck's accrual rule and the inevitable uncertainty hovering over the question of whether the merits of particular § 1983 claim, if successful, would undermine a conviction or imprisonment, Heck does create some serious practical problems for potentional plaintiff's files suit before the conviction is overturned, it could turn out that the § 1983 action has not yet accrued and will be dismissed under Heck. On the other hand , if a plaintiff waits until the conviction is overturned before filing a § 1983 damages action, it could turn out that, that § 1933 action accrued earlier and the claim would be time-barred. From a plaintiff's perspective, then, there is a real incentive to file even before the plaintiff's is conviction, or after the conviction, or the conviction is overturned, at least where there is some uncertainty about the relation between the § 1983 merits and the conviction. Here Plaintiff's filed § 1983 actions on June 6, 2001, way before his convictions. Plaintiff's counsel may have raised those issues, which would have been harmless error; plaintiff's, counsel never litigated these issues has to exculpatory evidences, because the Commonwealth case in-chief, was base on the search in California, and not the procedural issues, relating to the violations, of this Plaintiff Due process right and Equal Protection; to the extent Plaintiff's claims for monetary relief do not necessarily imply tn invalidity of his outstanding criminal covictions.

See Id; Heck, 512 U.S. at 487, 114 S.Ct. 2364.

Where Plaintiff raised meritorious claims in violation of his procedural due process, embedded in to United States Constitutions, plaintiff's may seeks damages for the alleged violation of constitutional rights. Is Heck limited to § 1983 damages action implicating the validity of convictions or imprisonment or does it extend to procedural due process, under the 14th Amendment, handed down to the state; in which all law enforcement officers, must follow, as a public servant. Heck, did not bar this plaintiff's damages and declaratory relief claim that his right to counsel was establish and Miranda warning should have been giving by Defendants, specifically when he requested counsel; that violated procedural due process. This would not implicate the lawfulness of his confinement, because the challenge was to the procedural rather than the the result; which trial court would ruled as harmless. See Gotcher v. Wood, 66 F.3d 1097 (9th Cir. 1995); Edward v. Balisok, 117 S.Ct. 1584, (U.S. 1997). These Defendants retaliated when they show bias and deceit and still proceeded, hinder plaintiff's to obtained relief, in the proper Court, when County and State Empolyee, obstructed juctice, and barring plaintiff's from obtaining direct appeal. [see Defendant exhibit 1 and plaintiff rebuttal Exhibit]. Furthermore the Defendants failed to specify what facts and evidence supported the finding of guilt could go forward because, if this claim were successful, it would not neccesarily imply the invalidity of the deprivatin of his conviction. Heck v. Humphrey, 114 S.Ct. at 2372. ( if the suit "will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed. emphasis in original). It's clear to the Court that plaintiff's doesn't seek immediate release, but violation of his constittutional right and monetary damages; in which plaintiff's have demonstrated a vilations of his constitutional rights by the Defendants. Albright v. Oliver, 510 U.S. 266, 114 S.Ct. 807, (1994). The Defendants raised the questions of statements made by the Plaintiff's, but failed to raised the merits issues, that plaintiff's requested counsel, which

was deliberately and intentionally denied by Defendant Morgan; only this Court can remedy, this Constitutional violations; because, it is fear to say that law enforcement believe, that a suspect is not entitled to a phone call to contact counsel, when a suspect repeatedly request counsel, during interrogation.

Under Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); the Supreme Court held, Restraining equity jurisdiction within narrow limits is ... important under our Constitution [] in order to prevent erosion of the role of the jury and avoid a duplication of legal proceedings and legal sanctions .... This underlying reason for restraining Courts of equity interfering with criminal prosecutions is reinforced by an even more vital consideration, the notion of "Comity," that is, a proper respect for state functions. Id at 44, 91 S.Ct. at 750; Samuels v. Mackel, 401 U.S. 66, 69, 73, 91 S.Ct. 764, 766, 768, 27 L.Ed.2d 688 (1971)(extending the Younger rule to actions for declaratory relief.)   The blatant violation of this Plaintiff's Constitutional rights, by the Defendants; and the Blatant Obstruction of Justice, by state employees, in retaliation of plaintiff's pursuing avenue for relief, make this only clear, that a constitutional right have occurred, and if a reasonable jury should hear the merits, relief would be granted. The right protected under Fifth Amendment is the right not to be compelled to be a witness against oneself in a criminal prosecution; whereas the right to counsel during custodial interrogation recognized in [Miranda] is merely a procedural safeguard; governed by the Fourteenth Amendment Due process. Giuffre v. Bissell, 31 F.3d 1241 (3d Cir. 1994); Olender v. Township of Bensalem, 21 F.Supp.2d 775, 786 (E.D. Pa. 1999).

Defendant Morgan conducts are conscience-shocking; a cover up of his conduct; his willful and intentional destruction of Plaintiff's Lawyer Network Card, to contact his attorney;  His verbal abuse, and threatening remakes, the placing of a make shift box, at Plaintiff's private mail box, without a warrant, State creating danger; and  the use of force, when a Van driven by

the Defendant Glowczeski, hit Plaintiff's to the ground, then other Defendants tackle, trample and stepped upon him, have no value of principle in this Country we called the United States, and our Soceity, under Plaintiff's Federal protective rights. One that cannot be eliminated by his defense against a single criminal prosecution." Younger, 401 U.S. at 46, 91 S.Ct. at 751, County of Sacramento v. Lewis, 523 U.S. 833, 849, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998).("Conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level"). Here. preventing Plaintiff's from exercising his Constitutional right and Equal protection; and his Due Process right; retaliating against him exercising thess rights embedded into the Constitution. Phelps v. Hamilton, 59 F.d 1058, 1064-65 & n.12 (10th Cir 1995). For these reasons this matter should be allowed to proceed. Summary Judgment, should be granted in favor of the Plaintiff.

III

WHETHER THERE IS A UNDISPUTED MATERIAL FACT REVEAL THAT DEFENDANTS ARE ENTITLE TO SUMMARY JUDGMENT AND THE COMPLAINT SHOULD BE DISMISS BECAUSE THERE IS NO VIABLE FOURTH AMENDMENT SEARCH AND SEIZURES CLAIM AGAINST DEFENDANTS.

Plaintiff's seek damages, for the unlawful search of his Private Mail Box, by the Defendants, at 2536 Eastern Blvd., when Defendants search plaintiff's mail box, without a warrant, placed make shift box, at Plaintiff's mail box, without United Parcel Service Delivery, and warrant, for plaintiff's to retrieved,; then arrested Plaintiff's, without an arrest warrant. Plaintiff's avers that the search of his private mail box and his arrest was unlawful. Property from Plaintiff's, Person were seized, is related to legitimate business matter; business account number was confiscation; bank accounts and numbers were seized; lawyer network card, was confiscated and destroyed; keys were taken; bank check; and Frequent Flyers miles were lost; business account number was lost; and Plaintiff's suffered from great business loses.

In Fourth Amendment violations, court determine standing by deciding whether a defendant had a reasonable expectation of privacy in the area search or the items seized.  See U.S. v. Salvucci, 488 U.S. 83, 86-87(1980); Rakas v. Illinois, 439 U.S. 128, 134 (1978).  Plaintiff's have a ligitimate expectation of privacy in his private mail box.  Furthermore, the was no exigent circumstances existed, because, there was no drug found at plaintiff's mailed box; and none in the state of Pennsylvania.  [See Defendant Exhibit 4, Crual Affidavit of Probable Cause].  Coolidge v. New Hampshire, 403 U.S. 443, 468, 91 S.Ct. 2022 (1971)(holding that the police identified no exigent circumstances to justify the warrantless search of an autombile parked in a private driveway).  The protection of the Fourth Amendment extend to items in the mail.  U.S. v. Van Leeuwen, 397 U.S. 249, 90 S.Ct 1029 (1970); Parkhurst v. Trapp, 77 F.3d 707 (3rd Cir. 1996)(unlawful search can never be justified by its fruits).  From the records, it's clear that the Defendants have no search warrant or arrest warrant to search the mail box, furthermore, planted a "Make shift Package," for Plaintiff's to retrieved.  U.S. v. Jacobsen, 466 U.S. 109, 113 (1984); Walter v. U.S., 447 649, 657 (1980) (4th Amendment violation when Federal agents screened films removed from sealed package not previously screened by private employees because significant expansion of private search).  Defendants had no right to enter Plaintiff's mail box without a search warrant.

The Supreme Court has interpreted the Fourth Amendment to require adherence to judicial processes and has held that searches conducted outside the judicial process, without prior approval by a judge or magistrate are per se unreasonable.  See Generally, Katz v. United States, 389 U.S. 347, 351-352, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967).

Under Terry v. Ohio, 392 U.S.1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and its progeny, an officer may conduct a brief, investigatory stop when that officer has "a reasonable, articulable suspicion that criminal activity is afoot.  Illinois v. Wardlow, 528 U.S. 119, 123, 120 S.Ct. 673, 675, 145 L.E.2d 570 (2000).  Here Defendants placed "make shift package," without a search

warrant, for Plaintiff's to retrieved; following Plaintiff's receiving this make shift package, placed there by the defendants; without any knowledge of its content; received package as regular mail, and existed the Mail Box Etc., building, towards his car, when he was approached by two strange looking individuals, looking like "thugs"; without identifying themselves as police officers, Defendants Morgan and Westmoreland, came running towards Plaintiff's. Plaintiff's in fear of great bodily injury, plaintiff's drop the box he was carrying, which was retrieved from his mail box, the moved back toward the Mail Box Etc.; when he was hit by a Government's Vehicle, driven by Defendant Glowczeski's; thrown to the ground; tackle; trample; handcuffs; and stepped upon by Defendants. At no time did Plaintiff's resisted, fight, or run from these plain clothes, Defendants, who failed to identified themselves, as police officers, when they came running toward Plaintiff's as he existed the Mail Box Etc.

Here Defendant Morgan spearheaded the entire investigation; begin January 8, 2001, through 2002. Even though Defendant Westmoreland, was his supervisor, Morgan gave the Order, "to take Plaintiff's down, as soon as he exited the Mail Box Etc." U.S. v. Garcia. 23 F.3d 1331 (8th Cir 1994)(Court is not impowered to suspend constitutional guarantees so that government can fight war on Drug). The Fourteenth Amendment to the United State Constitution provide that the state can not deprive any person of life, liberty, or property without due process of the law. Hewitt v. Helms, 549 U.S. 460 (1983); Blakledge v. Perry, 417 U.S. 21, 40 L.Ed. 628, 94 S.Ct. 2098 (1974).

Defendants lacked probable cause to stop or arrest Plaintiff's, as there was no arrest or search warrant. See Berg. v. County Of Allegheny, 219 F.3d 261, 268 (3d. Cir. 2000)(arrestee section 1983 claim for false imprisonment base on mistaken arrest and detention was proper, because police locked probable cause to arrest); Lee v. City of Los Angeles, 250 F.3d 663 (9th Cir. 2001)(arrest without probable cause violates the Fourth Amendment and gives rise to a claim for damages under section 1983). Plaintiff's is not litigating

this issue in state court; on ground of rejudicata or collateral estoppel from raising claim of arrest without probable cause in section 1983 action, because cause of action not the same Ingram v. City of Calumbus, 185 F.3d 579, 586 (6th Cir. 1999). Defendants did unlawful arrest Plaintiff's detained him without an arrest or search warrant. See Gerstein v. Pugh, 420 U.S. 103, 114, 95 S.Ct. 854, 863, 43 L.Ed.2d 54; (the Fourth Amendment requires a Judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest. The Fourth Amendment also protects against unreasonable government seizure of persons and property,[seizure of a person occurs when, in view of all the circumstance surround the incident]. A person reasonably believes he or she is not "Free to leave" an encounter with a government official. See Michigan v. Chesternut, 486 U.S. 567, 573 (1988); U.S. v. Mendendall, 446 U.S. 544, 64 L.Ed.2d 497, 100 S.Ct. 1870 (1980); Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868(1968). The Supreme Court held in City of Indianapolis v. Edmond, 121 S.Ct. 447, 454 (2000), however that a checkpoint designed to interdict narcotics served only the general interest in crime control, which is not sufficient to justify an exception to the reasonable suspicion requirement for a stop. The Defendant failed to "show an authority" to an individual. See California v. Hodari D., 499 U.S. 621, 625-26 (1991). Here a seizure occurred upon Defendant came running towards Plaintiff's , apply a vehicle to hit plaintiff's, tackle him, trample upon him, handcuffed him and stepped upon him. Defendants apply the use of force, against this Plaintiff's.

The Defendants claims that Plaintiff's action under the search and seizure claims is bar under Heck; 512 U.S. at 487 n.6.

Plaintiff's Fourth Amendment claim for unlawful arrest would imply the invalidity of a conviction for resisting arrest. Heck, 512 U.S. at 487 n.6. That conflict is clear, because for Plaintiff to be convicted of arresting arrest, the State must prove that he intentionally prevented the officer's from effecting a Lawful arrest, the lawfulness of which Plaintiff would have

to negate as an essential element of his Fourth Amendment Claim. Id. Here Plaintiff's was never charge with resisting an arrest; because Plaintiff's never evade, or fight with any of these Defendants, at the time of his unlawful arrest. If Plaintiff's had been charged with resisting arrest, his Fourth Amendment claim for seizure of his person would not had accrued. Smith v. Holtz, 87 F.3d at 113. If Plaintiff's has not been so charged however, his claim has accrued and the claim should be allowed to proceed. Again Plaintiff's was never charged with resisting arrest; neither had him being convicted of such offense; therefore, Plaintiff's claims, if successful, necessarily would not imply the invalidity of a potential conviction; because of doctrine like independent source and inevitable discovery and especially harmless error. Id. at 2372-73 n.7

Nevertheless, because of Heck's accrual Rule and the inevitable uncertainty hovering over the question of whether the merits of a particular § 1983 claim, if successful, would undermine a conviction or imprisonment; Heck. On the other hand, if a plaintiff wait until the conviction is overturned before filing a § 1983 damages action, it could turn out that § 1983 action accrued earlier and the claim would be time-barred; especially Constitutional violation by Defendants. See Albright v Oliver, 510 U.S. 266, 114 S.Ct. 807, 127 Ed.2d 114 (1994); Wyath v. Cole, 504 U.S. 158, 112 S.Ct. 1827, 118 L.Ed.2d 504 (1992).

Plaintiff seek, violation of his Procedural due process right; Declaratory relief claims; Monetary damages; in which dismissal is not appropriate under Preiser v. Rodriquez, 411 U.S. 475, 488-90 (1973); Edwards v. Balisok, 117 S.Ct. 1584, 137 L.Ed.2d 906 (U.S. 1997). Plaintiff's was never charged with resisting arrest; contrary to the Defendants "Answer To Plaintiff's Request For Interrogatories And Admission," that Plaintiff's struggle and fight with them. Defendant claims that Plaintiff's was trying to struggle out of his jacket; How could he had a fight with them?

The Court in Heck recognized that a § 1983 claim for damages for an unreasonable search may present circumstances where a judgment for the Plaintiff's would not necessarily imply that his criminal conviction was

unlawful. Id. 114 Ct. at 2372 n.7. Such would be the case where there was adequate untainted evidence to sustain the conviction, the unlawful seized evidence was admitted under an exception to the suppression rule or an unconstitutional search did not produce evidence that used to convict the § 1983 plaintiff; even then a plaintiff cannot sustain a § 1983 claim absent proof that a unlawful search "caused him actual compensatory injury" other than his conviction and imprisonment. Id.

The Supreme in Heck did not categorically exempt unreasonable search claim from the invalidation requirement. The Court note that such a claim "May lie" and positioned circumstances in which the success of such a claim would not necessarily improper a plaintiff's conviction. Id. Defendants acts might well establish a conviction obtained by fraud or corruption such that the presumption of probable cause would not apply, thus, the subsequent discovery of Defendants' alleged unlawful acts as pled, constitutes materially changed circumstance which implicate the controlling assumption underlying the state Courts decisions. ie. The assumption that Plaintiff had received a legally supported and constitutional valid conviction untainted by Fraud or corruption; Plaintiff's allegations would therefore establish an exception to res jusdicata and collateral estoppell. See Karibjanian v. Chromalley Pharmaceutical, Inc. NO. 90-4641 1991 WL 34715 at (E.D. Pa. March 13, 1991); Dinicola v. Dipaolo, 945 F.Supp.848 (W.D. Pa. 1996). Resjudicata and collateral estoppel did not preclude relitigating issues of probable cause for arrest in present action. Plaintiff's claims against the unreasonable search of his property, "may lie" even if the challenged evidences [is] introduced in a state criminal trail resulting in [his] still outstanding conviction following the admission of such evidence, "because of doctrines like the Independent source rule and inevitable discovery, ... and especially harmless error. Plaintiff's claim for unreasonable search of his property, then are not barred by Heck; Plaintiff's lose compensatory damages. has to his Business; Bank and Credit Accounts, Loans, Equity in Air Line Frequent Flyer miles programs; deformation

of character, and damages to his business affair.

The Defendants relying on Shelton v. Macey, 883 F.supp. 1047 (E.D.Pa 1395) and other Courts ruling relating to the seizure; is contrary to this case. Shelton, relates to a plaintiff's convicted of a drug offense, and drugs were seized by the Task Force; the Court rule that if the search and seizure were unconstitutional, the criminal prosecution could not stand. This decision is contradicting to Plaintiff's case in-chief. First, there was no drugs at Plaintiff's mail box, and no drugs were found on this Plaintiff's at the time he was arrested, on January 10, 2001, at 10:35, at the Mail Box Etc., Kingston Square Center. No illegal activity was ever conducted at that mail box; furthermore Defendants placed "Make Shift Box" at Mail Box Etc., 2535 Eastern Blvd., York, Pa. 17402, for Plaintiffs' to retrieved. Plaintiff's was never charged with possession, pursuant to 35 P.S. § 780-113 (a)(30), has to what the Defendants are inferring from. (See Affidavit Of Probable Cause, dated January 10, 2001; sworn to by Defendants Craul, before District Justice Leppo). There was no Marijuana in the State of Pennsylvania the time and place these Defendant make the interdiction, and initiated the unlawful arrest; which amounted to Entrapment. Shelton v. Macey, supra; and the other citations, the Defendants cited in the Brief are inapplicable in this case. If is a material fact that Plaintiff's did not ran, evade, or fight with law enforcement; neither was he ever charge with resisting a arrest; therefore this arrest was unlawful, and the search of his person and property have accrued.

For these reason Defendants Motion For Summary Judgment should be denied and Plaintiff's should be awarded Summary Judgment for the unlawful search and seizure of his private mail box; his person; and his property.

IV

THE UNDISPUTED MATERIAL FACTS REVEAL THAT DEFENDANT ARE ENTITLED TO SUMMARY JUDGMENT AS TO FOURTH AMENDMENT EXCESSIVE FORCE CLAIM

In order to establish that the use of force to effect an arrest was

unreasonable and therefore a violation of the Fourth Amendment, Plaintiff's must establish that the government interest at stake were outweighted by "the nature and quality of the intrusion on [Plaintiff's] Fourth Amendment interest. Graham v. Connor, 490 U.S. 386, 396, 109 S.Ct. 1365, 104 L.Ed.2d 443 (1989). This test "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others and whether he is actively resisting arrest or attempting to evade arrest by fight." Sharrar v. Felsing, 128 F.3d 810, 821 (3d Cir.1997), quoting Graham, 490 U.S. at 396, 109 S.Ct. at 1872. Indeed, "the calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation." Id. See also Mellott v. Heemer, 161 Fed. 117, 122(3d Cir. 1998).

In this case Plaintiff's was approached by Defendants Morgan, Westmoreland Crual, Pedricord, Kessler and other law Enforcement official, some of whom is not apart of this suit. Defendants Westmoreland and Morgan, failed to identity themselves as police officers; they came running towards Plaintiff's, at no time did Plaintiff's ran, evade, or fight with Defendants. In fear of great bodily injury, of these Defendants who were all in plain clothes; Plaintiff's moved back towards the Mail Box Etc.; when suddenly he was hit by a government vehicle driven by Defendant Glowczeski's; Plaintiff's was thrown to the ground; Defendants proceed to trample upon Plaintiff's; stepping upon him; handcuffed him; and proceed to step upon Plaintiff's. Plaintiff's was neither arms or dangerous; resisted an arrest, or fleeing from any of the Defendants. The used of a **Moving** government vehicle to hit plaintiffs' to the ground while officers proceed to trample and stepped upon him was unreasonable. Plaintiff's was never charged at any time with resisting arrest; yet Defendant disputed the Facts that there conducts was reasonable to sustained plaintiff's. (See Defendants Answer to Interrogatories and Admission). An

arrest is a seizure of the person that must be conducted in a reasonable manner. County of Sacramento v. Lewis, 523 U.S. 333, 543 (1998); Graham v. Connor, Supra; Nelson v. Mattern, 844, F.Supp. 215, 222 (E.D. Pa. 1994); Bieros v. Nicole, 860 F.Supp 22, 230 (E.D. Pa. 1994); Amnesty America v. Town Of West Hartford, 361 F.3d 113 (2nd Cir. 2004).

The State create danger, was that they placed a "make shift Box," at Plaintiff's mail box without a warrant, for plaintiff's to retrieved; upon him exiting the building attacked him; hit him with a vehicle and trample upon him. There was no exigent circumstances.

Even if the police officers were therefore force "to make split-second judgment," in tense, uncertain, and rapidly evolving circumstances, Graham, 490 U.S. at 397, 109 S.Ct. 1865, as to how to subdued Plaintiff's. It is entirely up to a Jury; it would be up to a reasonable jury to decide the objective standard given the circumstance and the level of plaintiff's resistance techniques. cf Forrester v. City of San Diego, 25 F.3d 804, 807-08 (9th Cir.1994). Because a reasonable jury could also find the officers gratuitously inflicted pain in a manner that was not a reasonable response to the circumstance; however, the determination as to the objectiveness of the force used must be made by a jury following a trial. For this reason summary judgment is not appropriate at this time.

Plaintiff's claim of excessive force does not necessarily conflict with a conviction for resisting arrest. Heck v. Humphrey 512 U.S. 477, 114 S.Ct. 2364. That is because "It is possible for a finding that [Plaintiff's] was resisting arrest to co-exist with a finding that the police used excessive force to subdue him." Nelson v. Jashurek, 109 F.3d 142 (3d Cir. 1997)(quoting) Simpson v. City of Pickens, 887 F.Supp. 126 (S.D.Miss 1995). Plaintiff's claims for excessive force has accrued and there are sufficient material facts in disputes, that would only warrant a reasonable jury to decide the objective standard. Therefore summary judgment for the Defendants should be denied.

IV

**THE UNDISPUTED MATERIAL FACTS REVEAL THAT DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT AS TO THE FOURTH AMENDMENT EXCESSIVE FORCE CLAIM BECAUSE THE DEFENDANTS HAD QUALIFIED IMMUNITY.**

**Suggested answer: No.**

On May 25, 2004, the Defendants conducts Deposition Hearing, of Plaintiff's here at SCI-Rockview; Plaintiff's at the ending of the hearing requested a copy of the transcripts, document to be seal and the make the necessary correction, before the Court reporter, filed and certified Deposition transcripts. On June 14, 2004, forward the uncertified transcripts to undersigned counsel Jason C. Giurintano; who forward the documents to the Superintendent Assistance, Mr. Jeffrey Rackovan, here at SCI-Rockview, so Plaintiff's could make the necessary corrections. Due to the institutional restrained and undue burden, place on a pro se, litigant; correction was completed by Plaintiff's, on July 2, 2004; and on July 7, 2004, Mr. Jeffrey Rackovan, had the document notarized. Plaintiff filed a timely "Motion For Enlargement of Time, with this Court," plaintiff's made reasonable requests to obtain Deposition Transcripts, from the undersigned counsel and the Court Reporter. As of this date Plaintiff's received no respond. On July 5, 2004, Plaintiff's received a "Supplement To Brief In Support Of Defendants' Motion For Summary Judgment," and the "uncorrected and uncertified, Deposition Transcripts, taking from Plaintiffs' on May 25, 2004. Plaintiff's is still without copy of the certified Deposition Transcripts, presented as exhibits. Upon Plaintiff's obtaining a copy of said Deposition transcript, this plaintiff's will address, the Defendant Disputes, as to Quality Immunity. This Court still has before it pending, "Plaintiff's Motion For Enlargement Of Time."

**Conclusion**

For These reason, Defendants Motion For Summary Judgment should be denied.

Respecfully Submitted,

Date: July 12, 2004.

Tyrone P. James.

EK 9451
P.O. Box A
Bellefonte, PA 16823-0820.

IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

TYRONE P. JAMES                      :
          Plaintiff,                 :
                                     :          CIVIL ACTION NO. 1:01-CV-1015
          v.                         :          (Judge Kane)
                                     :          (Magistrate Judge Mannion)
YORK COUNTY POLICE DEPARTMENT,       :
JAMES H. MORGAN, RICHARD PEDDICORD,  :          JURY TRIAL DEMANDED
RAYMOND E. CRUAL, GENE FELLS,        :
DET. KESSLER, CO. BAYLARK,           :
RANDY SIPES, BRIAN WESTMORELAND,     :
and DETECTIVE GLOWCZESKI             :
          Defendants,                :

## CERTIFICATION OF SERVICE

I, Tyrone P. James, Plaintiff's, Pro se, hereby certified that, I am this day serving a true and correct copy to assigned counsel's, "Appendix In Support Of Plaintiffs' Opposition Motion For Summary Judgment And Exhibits; Plaintif's Statement Of Material Facts Question In Dispute; Declaration In Support of Opposing Motion For Summary Judgment and In Support Of Summary Judgment In Favor Of Plaintiff's;" in the manner set forth below to the followings.

I certify that this document was given to prison officials on July 12, 2004, for forwarding to Clerk Of Court, U.S. District Court, Middle District. I certify under penalty of perjury that the forgoing is true and correct. 28 U.S.C. § 1746.

BY FIRST CLASS U.S. MAIL:

Amanda Smith                        Donald L. Reihart, Esq.
Pennsylvania Office Of Attorney     Law Office Of Donald L. Reihart
General Office                      3015 Eastyern Blvd. Suite 204
15th Strawberry Square              York, Pa 17402
Harrisburg, PA 17120

Krintin G. Hogue
State Of California, Department Of Justice
Office Of the Attorney General
110 West A Street, Suite 1100
P.O. Box 85266                      _Tyrone James_
San Diego, CA 92186-5266

                                    Tyrone P. James
                                    EX 9451
                                    P.O. Box A
                                    Bellefonte, PA 16823-0820.