```
 1    Q.  Did you before testifying now speak to Agent
 2  Morgan earlier today?
 3    A.  No, sir, I did not, other than to say hi, how
 4  are you doing.
 5    Q.  So, it was never brought to your attention
 6  from January 10th to now that that box never contained
 7  marijuana?
 8    A.  Other than what's in the report, and it may
 9  have -- usually what we do when we do interdictions, we
10  switch the controlled substance with anything that has
11  the weight of it and just place it in the box.  On this
12  particular date for some reason, I think we still had
13  the marijuana.
14    Q.  You thought that when you went out on January
15  10th, the marijuana already come to you, and you
16  switched it, or you still think that marijuana was in
17  the box?
18    A.  I still think there's marijuana in the box.
19         * * *
20         ATTORNEY NERO:  I have no further
21  questions.
22         THE COURT:  Redirect?
23         ATTORNEY SINNETT:  Very briefly, Your
24  Honor.
25         * * *
                   169
```

```
 1         REDIRECT EXAMINATION
 2  BY ATTORNEY SINNETT:
 3    Q.  Agent Westmoreland, were you there when that
 4  box was prepared, when it was assembled?
 5    A.  No, sir, I wasn't.
 6         * * *
 7         ATTORNEY SINNETT:  No further questions.
 8         THE COURT:  You may step down.
 9         ATTORNEY SINNETT:  Your Honor, may he be
10  excused?
11         THE COURT:  Is there an objection?
12         ATTORNEY NERO:  No objection.
13         THE COURT:  Witness may be excused.
14         THE WITNESS:  Thank you, Your Honor.
15         ATTORNEY SINNETT:  We're going to call
16  Jan Metzler next.
17         ATTORNEY NERO:  Your Honor, if necessary
18  for rebuttal, maybe not today, may he be available?
19         THE COURT:  Mr. Westmoreland, agent,
20  it's been requested that you remain available subject
21  to recall by the defense.  You don't have to stay
22  physically, but you may have to come back.
23         ATTORNEY SINNETT:  May we have Jan
24  Metzler, please?  She is out in the hall.
25         * * *
                   170
```

EXHIBIT 15A

```
 1              JAN METZLER,
 2   called as a witness on behalf of the Commonwealth,
 3         having been duly sworn according to law,
 4                testified as follows:
 5                       * * *
 6              DIRECT EXAMINATION
 7  BY ATTORNEY SINNETT:
 8    Q.  Ma'am, could you tell us your name, please?
 9    A.  Jan Metzler.
10    Q.  And where do you work?
11    A.  I own actually the Mailboxes Etc. store on
12  Eastern Boulevard in York.
13    Q.  What's the address of that particular store?
14    A.  It's 2536 Eastern Boulevard.
15    Q.  And is that Springettsbury Township?
16    A.  Yes.
17    Q.  York County?
18    A.  Yes.
19    Q.  And how long have you owned that?
20    A.  Since April of 1999.
21    Q.  Okay.
22         And specifically in your role as owner, I am
23  assuming then the people who work in that store are
24  under your direction and control?
25    A.  Yes, yes, that's right.
                   171
```

```
 1    Q.  And the paperwork that's generated, I'm sure
 2  there's a lot of paperwork generated as a result of
 3  these different rental agreements and everything.  Is
 4  that kept under your control?
 5    A.  Yes, yes, it is.
 6    Q.  And do you review those documents?
 7    A.  Yes.
 8    Q.  Do you store those documents somewhere in the
 9  business or in your home or somewhere like that?
10    A.  At the business, yes, we do.
11    Q.  Specifically included with those documents,
12  are their rental agreements -- or I'm not sure what you
13  call them, when somebody comes in and says I would like
14  to get a box here for mail to be delivered, what do you
15  call that?
16    A.  It is a rental agreement.
17    Q.  Okay.
18    A.  And there is a specific United States postal
19  form that's also required.
20    Q.  And what all type of information do you ask
21  of someone when they come in?
22    A.  It's pretty general; name, address, phone
23  number.
24         The one important thing also is we do require
25  two forms of identification.  One must be a photo I.D.,
                   172
```

**Page 173**

and the other does not need to be a photo I.D., but some other type of identification.

Q. Okay. And are the same forms used for each person who comes in and signs up for a rental agreement?

A. Yes.

Q. And you indicated these are United States postal forms?

A. Yes. One of the forms is USPS form. There is also a Mailboxes Etc. recommended form that we use as the agreement between us and the customer.

Q. And you filled both of those out, and then after they are filled out and the person gets it, even months, years later if they still have the box, are they kept somewhere?

A. They are filed in the store.

Q. And are they kept under your supervision?

A. Yes, they are.

Q. What about some sort of a log or record-keeping system to determine when people come in and sign for packages?

A. We do keep a signature form for package acceptance, and really the purpose of that is to verify that any packages we have received and we have signed for on behalf of the customer are then signed for by

**Page 174**

the customer when they come and pick up the package. So you have a chain of signatures where we had -- if we have a UPS delivery for someone, we become the signatory of the package, and then the customer must, in turn, sign when that package is picked up from us.

Q. And how are these kept, by date or by individual customer or what?

A. They are kept by date.

Q. And so basically like a running tally from day one the whole way through?

A. Exactly.

Q. Keeps on going.

* * *

ATTORNEY SINNETT: Your Honor, may I approach this witness?

THE COURT: You may.

* * *

BY ATTORNEY SINNETT:

Q. I wanted you to go ahead and take a look at these collectively. We have marked them previously as Commonwealth's Exhibit No. 1 for identification purposes.

Would you please take your time and look through those documents and tell me if you recognize

**Page 175**

them?

A. These all are documents that we use that are from my store.

Q. Okay. Now, the -- just if you could briefly, tell us the front page of that, those collective exhibits or that collective exhibit, I should say, what is that document?

A. This is the postal service form that I mentioned earlier, Form 1583, and this is required by the postal service for us to have this form completed whenever we rent a mailbox.

Q. And, in fact, this is the form you were telling us about earlier?

A. Yes.

Q. And who is this form for?

A. This particular form is for Tyrone James.

Q. Okay. And what mailbox was rented by Tyrone James?

A. Our Box No. 164.

Q. And do you have indicated on there when this mailbox was rented by him?

A. Yes. It was October the 5th of 2000.

Q. Okay. Now, what is the next document that's

**Page 176**

contained in that?

A. The next document is not a postal form but a form that all Mailboxes Etc. stores across the country use, a form recommended to us by our corporate office which basically states our responsibility to care for the customer's mail essentially.

Q. And for whom was this form --

A. And this also was the agreement for Tyrone James.

Q. And this would have been for the same or a different mailbox?

A. Same mailbox, Box 164.

Q. What's contained then as the next document?

A. The next is our -- our parcel journal, and this is just the list of packages that were picked up by all customers really that had received any packages between October 4th and January 18th.

Q. Let me back up here for a second. This here is stapled together. This was a service agreement you were talking about previously?

A. Yes, exactly.

Q. And this was a three-page document, is that correct?

A. That's right.

Q. And the front part was the agreement that you

**Page 177**

1 had with the postal form on top?
2 A. Yes.
3 Q. So there were actually five pages, but two
4 different documents?
5 A. That's correct.
6 Q. And what's the next document you have in your
7 hand?
8 A. I'm sorry. I missed this. The next document
9 is a copy of the customer's I.D.
10 Q. And is this made when the person comes in to
11 fill out an application?
12 A. Yes, exactly.
13 Q. And I'm assuming you said it was your policy
14 before to have two pieces of identification --
15 A. That's right.
16 Q. -- when somebody rents a mailbox.
17 A. Yes.
18 Q. And do they make the copies of them right
19 then when the person comes in?
20 A. Exactly.
21 They must produce the I.D. We make the
22 copies for them, but they are done when the person
23 initially signs up for the box rental.
24 Q. And you guys make sure you look at the I.D.s,
25 that it is the person filling it out?

**Page 178**

1 A. Yes.
2 Q. And that's the purpose of that?
3 A. Exactly.
4 Q. And the remaining documents you said were
5 several pages in nature, but they indicate when
6 different parcels or packages were picked up for all
7 your customers, not just Mr. James?
8 A. That's correct.
9 Q. Now, are you familiar with Mr. James?
10 A. I am not.
11 Q. Did you ever see him personally come in and
12 pick up packages or drop things off?
13 A. I have not. I normally don't work out the
14 store myself. I work normally back in the office, and
15 generally my employees -- since -- it is my employees'
16 responsibilities when customers come in for packages to
17 get the package out of our storage area, have the
18 customer sign for it, and give the package to the
19 customer, but I don't normally do that myself.
20 Q. And would you have actually filled out the
21 rental agreement with Mr. James or not?
22 A. I believe it was another of my full-time
23 employees that did it. I recognize my employee's
24 handwriting in the upper right-hand corner of the top
25 corner of the form.

**Page 179**

1 * * *
2 ATTORNEY NERO: I would object.
3 ATTORNEY SINNETT: She is custodian of
4 the records.
5 THE COURT: You have no objection to
6 these documents?
7 ATTORNEY NERO: I have an objection only
8 because she is not the one who prepared them. I was
9 under the impression she prepared these documents.
10 ATTORNEY SINNETT: Your Honor, that's
11 why I tried to establish her as the custodian. She is
12 the owner/supervisor.
13 THE COURT: No. We are satisfied that
14 the evidence has established her as the custodian of
15 the records, if not the author.
16 ATTORNEY NERO: That's fair.
17 * * *
18 BY ATTORNEY SINNETT:
19 Q. And then just so I am aware or the jury is
20 aware, I should say, the last document or this time
21 sheet that you have --
22 A. Yes.
23 Q. -- I believe the collective group of them you
24 have runs from October 4, 2000, and the last entry
25 being January 10th of 2001, is that fair?

**Page 180**

1 A. That's the last page, starts with January
2 10th, yes.
3 Q. Okay. And that's the last entry on that
4 page?
5 A. The last entry on that page is January 18th.
6 Q. And you put these documents together at the
7 request of either the police or the District Attorney's
8 Office, is that fair to say?
9 A. Yes, yes.
10 * * *
11 ATTORNEY SINNETT: I believe that's all
12 the questions I have of this witness, Your Honor.
13 THE COURT: Cross examination.
14 * * *
15 CROSS EXAMINATION
16 BY ATTORNEY NERO:
17 Q. Was the request made by the police or the
18 District Attorney's Office?
19 A. By both.
20 Q. Now, I believe you testified that you never
21 prepared these documents.
22 A. I did not myself prepare these documents.
23 Q. You have a policy that requires an applicant
24 for a box to have two pieces of identification?
25 A. Yes.

**Page 181**

1  Q. One -- at least one must be a photo I.D.?
2  A. That's right.
3  Q. And what is the reason for that?
4  A. So that we can make sure that the person
5  signing up for the box is who they say they are.
6  Q. Answer me this question then: Let's say that
7  I signed up for a box. Can Mr. Sinnett or anybody else
8  come and claim items from my box?
9  A. No.
10 Q. Would I be correct in saying that the reason
11 you have this agreement you have him sign is because at
12 the very least the signatures should match?
13 A. Yes, I would say so.
14 Q. That is to say then, that if Mr. James came
15 to pick up a box, you would expect him to sign Tyrone
16 James and knowing what his signature is like, you would
17 compare to make sure that it was indeed Tyrone James?
18 A. We don't actually compare the signatures at
19 the time a package is picked up, no.
20 Q. Do you ever go back?
21 A. I have not. I have not had occasion to do
22 that, no.
23 Q. Well, is identification requested?
24 A. No, just the signature is requested.
25 Q. You already told us that you do not know Mr.

**Page 182**

1  James.
2  A. That's correct.
3  Q. And you pretty much work in the back?
4  A. Yes.
5  Q. Let's assume for the sake of argument that
6  you were working up front one day and I came to pick up
7  a parcel, and I said, Mr. James, what would you do?
8  A. Well, by and large most of our mailbox
9  customers become very regular customers within our
10 store, and by that I mean they are virtually there
11 daily picking up their mail, and for the vast majority
12 of them, we get to know them very well.
13      If someone came into the store and requested
14 mail for a particular box and I did not recognize the
15 person, I would ask for I.D. in that particular case.
16      Now, I can't say a hundred percent we know
17 everyone, but generally speaking, we know very well our
18 customers that are mailbox renters. We only have about
19 70 people renting mailboxes, so we do get to know them
20 fairly well.
21 Q. But you do concede somebody can come in and
22 sign for something?
23 A. It's possible.
24 Q. Were you present on January 10th?
25 A. Yes. I was in the store that day.

**Page 183**

1  Q. Did you see my client come in there that day?
2  A. I did not see him myself, no.
3  Q. Who prepares this, the entire line, is that
4  the person doing the picking up?
5  A. I'm sorry. I don't know what you are looking
6  at here.
7  Q. Any one of these pages, who prepares from
8  date of receipt to date picked up, is the entire thing
9  filled out by the customer?
10 A. On the package signature sheet?
11 Q. Yes.
12 A. Is that what you are referring to?
13 Q. Yes.
14 A. No.
15      Everything actually is filled out by my
16 employees; the date we received the package, the
17 carrier that brought the package, the zip code that the
18 package came from, who the -- and we fill identity,
19 even the recipient's name who the package is for, their
20 mailbox number, if the package was damaged, the
21 condition, and we have the customer sign so the
22 customer really only signs in the last column.
23 Everything else is written by my employees.
24 Q. And this is prepared when the package is
25 received by you?

**Page 184**

1  A. Exactly.
2  Q. Let's say the package received by you on
3  January 2nd --
4  A. Um-hum.
5  Q. -- is this prepared January 2nd, and I don't
6  come to pick it up until February 2nd, I then go to
7  whatever line there is and sign for it on that date?
8  A. Um-hum, yes, yes.
9      The dates are when the package was received,
10 not when they were picked up.
11 Q. The person preparing this, when the packages
12 are received, is that the person, the person
13 responsible, or is that person present when someone
14 comes in?
15 A. Not necessarily, no.
16      Because we have different employees working
17 different shifts, generally our packages are received
18 in the morning. The employees working in the morning
19 sign the packages in and take all the information. The
20 customer may pick up the package in the afternoon, and
21 there is employees who have signed it in may not even
22 be in the store at that time.
23 Q. Since you kept these records, I assume you
24 went through the records, correct? You prepared them?
25 A. We kept them, yes. We keep records of every

## Page 185

1 day that we receive packages, yes.
2 Q. And you prepared them to bring here because
3 you were requested to do so by Mr. --
4 A. Yes.
5 Q. Have you seen Mr. James' signature anywhere
6 on these documents except the application?
7 A. I did not compare the signature on the
8 application to any signatures on the packages.
9 Q. Could you take a minute to do that? Would
10 you?
11              * * *
12        ATTORNEY SINNETT: She is to compare it.
13 I don't think he is asking her to make a determination
14 whether they are the same.
15        ATTORNEY NERO: I am asking her if she
16 can see my client, Mr. James, signed for anything.
17        ATTORNEY SINNETT: That's fine.
18        THE WITNESS: There is a few package
19 signatures in here that Mr. James signed, just working
20 from the back. The first one -- or going from January
21 backwards, the first one would have been January 10th.
22              * * *
23 BY ATTORNEY NERO:
24 Q. Did you see him sign there?
25 A. I did not see him sign.

## Page 186

1 Q. So you say that because there is a signature
2 next to the box?
3 A. Yes, one on December 19th.
4 Q. On December 19th, you can see Mr. James'
5 signature?
6 A. I don't recall.
7 Q. Well, you are looking at it now.
8 A. Well, I see that it was signed by him. I
9 don't remember if on December 19th I saw him sign it.
10 Q. Look at that signature and look at the
11 signature you filled out. Tell me if they are --
12              * * *
13        ATTORNEY SINNETT: I don't believe she
14 is entitled to give an opinion. He is going to need an
15 expert for that.
16              * * *
17 BY ATTORNEY NERO:
18 Q. So, the question is you don't know if Mr.
19 James signed for any of these packages? You have no
20 direct knowledge of that?
21 A. I was not personally present when those
22 signatures were taken, so --
23              * * *
24        ATTORNEY NERO: That's fair. I have no
25 further questions.

## Page 187

1        ATTORNEY SINNETT: No further questions
2 of her, Your Honor.
3        THE COURT: You may step down.
4        May this witness be excused?
5        ATTORNEY SINNETT: She can, Your Honor.
6 Are you going to need her subject to rebuttal or
7 anything?
8        ATTORNEY NERO: (Whereupon, Attorney
9 Nero moved head horizontally).
10        THE COURT: Witness may be excused.
11        ATTORNEY SINNETT: Our next witness who
12 is Terisa McCoy, she also works at that Mailboxes Etc.
13 I don't know if they are together or not.
14        THE WITNESS: No, we are not.
15              * * *
16              TERISA MCCOY,
17 called as a witness on behalf of the Commonwealth,
18        having been duly sworn according to law,
19              testified as follows:
20              * * *
21        DIRECT EXAMINATION
22 BY ATTORNEY SINNETT:
23 Q. Ma'am, could you tell us your full name
24 please?
25 A. Terisa McCoy.

## Page 188

1 Q. And where do you work?
2 A. Mailboxes Etc.
3 Q. And which Mailboxes Etc. do you work at?
4 A. Kingston Square Shopping Center on Eastern
5 Boulevard.
6 Q. And is that the one that's owned by Jan
7 Metzler?
8 A. Yes.
9 Q. And how long have you worked there?
10 A. Two years.
11 Q. Going back to approximately when, do you
12 recall?
13 A. October -- about October 15th.
14 Q. Of '99?
15 A. Yes.
16 Q. Okay.
17        And during the time that you were employed
18 there, did you ever become familiar with a subject by
19 the name of Tyrone James?
20 A. Only through him coming in and getting
21 packages.
22 Q. Now, that person that came in and got
23 packages that you knew or at least recognized the name
24 of Tyrone James, is that person present in the
25 courtroom today?