

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

TYRONE P. JAMES  
      Plaintiff,        :

                  :      CIVIL ACTION NO. 1:01-CV-1015  
      v.           :      (Judge Kane)  
                  :      (Magistrate Judge Mannion)  

YORK COUNTY POLICE DEPARTMENT,  :  
JAMES H. MORGAN, RICHARD PEDDICORD,  :      JURY TRIAL DEMANDED  
RAYMOND E. CRUAL, GENE FELLS,  :  
DET. KESSLER, CO. BAYLARK,  :  
RANDY SIPES, BRIAN WESTMORELAND,  :  
and DETECTIVE GLOWCZESKI  :  
      Defendants,        :

FILED  
HARRISBURG, PA  
OCT 0 5 2004  
MARY E. D'ANDREA, CLERK  
Per _____  
Deputy Clerk

## PLAINTIFF OBJECTION TO THE MAGISTRATE JUDGE REPORT AND RECOMMENDATION

## ADDRESSING CASE DISPOSITIVE MOTIONS, AS TO SUMMARY JUDGMENT

Plaintiff's pursuant to 28 U.S.C. § 636 (b)(1)(B) and Rule 72.3 M.D.PA; hereby object to the finding and recommendation, dated, August 17, 2004, to dispose of Plaintiff's constitutional claims. This is Magistrate Judge Malachy E. Mannion, second recommendation, to dismiss plaintiff's meritorious constitutional claims. On June 25, 2001, the Magistrate Judge, filed a report and recommendation to dismiss complaint.

### STATEMENT OF THE CASE

Plaintiff on June 8, 2001, filed a 42 U.S.C. § 1983 action, against to following defendants Westmoreland, Morgan, Kessler, Peddicord, Fells and Craul, in violation of his Fourth, Fifth, Sixth, Eighth, and Fourteenth, Amendments of the United States, Constitution.

### STATEMENT OF THE FACTS

On June 8, 2001, filed this civil action pursuant to 42 U.S.C. § 1983, against county and state defendants, in violation of his constitutional rights, upon effectuating and unlawful arrest. (Doc. NO.1).

Plaintiff's filed a supplement to his complaint, which the Court directed three new defendants, Sipes, Westmoreland and Glowczeski on April 25, 2003. (Doc. NO. 70).

1

Has set forth in his Declaration and Affidavit in Plaintiff opposition

Motion to defendants Summary Judgment motion.  Plaintiff's on January 10, 2004,

was charge with possession of a control substance, and criminal attempt,

thereof, of marijuana, from the subterfuge and pretext arrest, after defendants,

Morgan, Kessler, Westmorland, Craul, Peddicord, placed a "Make Shift Box,"

at Plaintiff private mail box, without a warrant, for the Plaintiff's to

retrieved.  Upon Plaintiff retrieving said "Make Shift Box," he was rush by

defendants Westmoreland, Morgan, Crual, Peddicord and Kessler.  Plaintiff's

was then hit by a Government vehicle, driven by defendant Glowczeski, he was

thrown to the ground by the impact, tackle by the Defendants, trampled upon

and stepped upon by defendants, with their boots and shoes.  Defendants Craul

and Peddicord, took possession of all of Plaintiff's property and his personal

belongings.  The used of excessive force was constant at all time while

plaintiff's was hit with the vehicle and on the ground.  Plaintiff's was denied

his Miranda warning, by defendant Morgan, when he approached plaintiff's at

the van and proceeded to question the Plaintiff.  Plaintiff's was transported

to the York City Police Department, where he was questioned by defendant Morgan,

denied Miranda warning, and his right to counsel.  His "Lawyer Network Card,"

was distroyed.  Statements defendants Morgan, alleged Plaintiff's made was used

in Defendants Craul "Affidavit of Probable Cause," to filed "Criminal Complaint"

against Plaintiff's who was arrest without a warrant, or probable cause.

Statements  Morgan, alleged, Plaintiff's made was used at other proceeding,

such as Preliminary Hearing, Suppression Hearing and Trial, which were false

accusations, made by the defendants, that plaintiff, made such statements.

Plaintiff's was Preliminary Arraigned, by Defendants, Morgan and Craul, at

7:30, p.m., after he was arrested by defendants, that morning at 10:35, a.m.;

Plaintiff's was again denied counsel, when he requested a phone call to call

his attorney, and Defendant Morgan, instructed prison official, Defendant

Baylark, "Not to give Plaintiff's any phone call, pending investigation."

Plaintiff's was further interrogated by Morgan, who elicited statements, from

Plaintiff's about his finances, and later presented at trial by the Defendants.

On January 10, 2001, Plaintiff was subsequently charge with two additional drug trafficking offenses; possession of cocaine and marijuana, and criminal attempt, thereof; after he was taken from the York County Prison, by a constable, taken to the District Justice office, and upon Defendant Morgan and Peddicord request, bail was set at $2.5 million dollar "cash only" bond.

A jury trial was held on November 12-15, 2001. Plaintiff's was convicted by the jury, not of his peers; as plaintiff only had one black jury, from the entire jury pool to choose from, where the county of York, have a more than two (2%) percent black population.  On January 7, 2001, Plaintiff's was sentenced to 18 to 36, months, from the offense, he was originally charge with a the time of his arrest, on January 10, 2001, at 10:35 a.m., from criminal attempt, for which, there was no contraband, found at plaintiff's mail box, or in the State of Pennsylvania, but was only base on erroneous information given to defendant Morgan, by way of defendant Sipes, from California. Plaintiff's was subsequently found guilty for the additional offenses.  He received a total term of confinement of 12½-25 years in State Prison.  Plaintiff was fine a total of $55,000 dollars for fine and cost.  Deductions of these fines and costs, have been deducted from his inmate account, here at SCI-Rockview, under Act 84, Pa.C.S.A. 42, at 20%, on all incoming gift and from nominal wages earned, for institutional labor.

Plaintiff's pursue his procedural due process, by exercising his right to a direct appeal, which is guaranteed to his under the United States Constitution, 14th Amendment and Pennsylvania Constitution, Article V section 9.  Governmental Official, specifically, former Clerk Of Court, York County, Mr. Maryln Holtzapple; who failed to served this pro se litigant a copy of the Honorable Judge Thompson, Order, dated February 19, 2002, directing the clerk to served plaintiff, and direct him to filed a "Statement of matter complaint of, Pa.R.A.P. 1925(b); to preserve all issues raised for direct appeal, during trial. The Court Docket Statement, was fabricated by the Clerk

of Court, to show that plaintiff's was served, when in actually he was not. This prejudice this plaintiff's and delayed his appeal. A Post Conviction Relief Petition, is now pending on the matter, in the Court Of Common Pleas, Court County. Government official have been retaliating against plaintiff's for beginning a civil action against these defendants.

On April 24, 2004, the Defendants filed summary judgment motion and then filed a supplemental brief, with exhibit on June 30, 2004. Plaintiff, has made timely response, along with exhibits, Declaration and Affidavit in support, and Statement of material fact.

Still before, the Magistrate Judge, are several Motions, (1) Motion to Compel Discovery, (2) Motion to Direct The U.S. Marshals Office To Served Subpoenas, and (3) Motion For Enlargement Of Time; filed by this plaintiff.

### STANDARD OF REVIEW

Federal Rule Civil Procedure, 12(b)(6), provides for the dismissal of a complaint, in whole or in part, if the parties fail to state a claim upon which relief can be granted. Dismissal should occur only where it appears that the plaintiff can prove no set of facts in support of his claims which could entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Accordingly, dismissal is appropriate "only if, after accepting as true all of the facts alleged in the complaint and drawing all reasonable inferences in the plaint's favor, no relief could be granted under any set of facts consistent with the allegations of the complaint. A dismissal under rule 12 (b)(6) should only be granted if "it is certain that no relief can be granted under any set of circumstance which could be proved. Ataines v. Kerner, 404 U.S. 519, 30 L.Ed.2d 652, 92 S.Ct. 594 (1972). Complaint should not be dismissed unless it appear beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitled him to relief. Dismissal is harsh and therefore, should only be imposed in extreme circumstances, Hernandez v. City Of El Monte, 138 F.3d 393 (9th Cir. 1998). A dismissal under Rule 12(b)(6) should only be granted if "it is certain that no relief can be granted under

any set of circumstances which could be proved." Steamfitters Local Union No. 420 Welfare v. Phillip Morris, Inc., 171 F.3d 912, 919 (3d Cir. 1999)( citing City of Pittsburg v. West Penn Power Co.., 147 F.3d 256, 262 n. 12 (3d Cir. 1998).

Complaint should not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. US EX REL THOMPSON V. COLUMBIA HCA HEALTHCARE CORP., 125 F.3d 899 (5th Cir. 1997), HAINES V. KERNER, 404 US 519, 30 LEd.2d 652, 92 S.Ct. 594 (1972). Gainey v. Brotherhood of R. and SS. Clerk etc., 177 F.Supp. 421 affirmed 275 F.2d 342 (3rd Cir. 1998).

In deciding a motion to dismiss, a court should generally consider only the allegations contained in the complaint, the exhibits attached to the complaint, matter of public record, and "undisputably authentic," documents which plaintiff has identified as the basis as the basis of the claim. Pension Benefit Guarantee Corp. v. White Consolidated Industries, Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

To make prima facie case under § 1983, plaintiff must demonstrate that person acting under color of law, deprived him of federal right. Berg v. County Of Alleghany, 219 F.3d 261 (3rd Cir. 2000).

Motion to dismiss under Rule 12(b)(6), is not whether the plaintiff will ultimately prevail on the merits of his claims, but only whether he is entitled to offer evidence in support of them. Scheuer v. Rhodes, 416 U.S. 233, 236 (1974); but see Moses Cone Hosp. v. Mercury Const., 460 U.S. 1, 74 L.Ed.2d 765, 103 S.Ct. 927 (1983)(fact that a state lawsuit on an issue is pending is not generally a bar to federal suit on same issue). Gallo v. City of Philadelphia, 161 F.3d 217, 221 (3d Cir. 1998). The Court of Appeal, Third Circuit, addresses, that, it must accept as true all factual allegations in the complaint and will affirmed a dismissal under Rule 12(b)(6) only if it is certain that no relief can be granted under any set of facts which could be proved." City of Pittsburgh v. West Penn Power Co., 147 F.3d 256, 262 n. 12 (3d. Cir 1998)(internal quotations omitted). Warth v. Seldin, 422 U.S. 490,

501, 95 S.Ct. 2197, 2206-07, 45 L.Ed.2d 343 (1975). A complaint should be dismissed only if after accepting as true all of the facts alleged in the complaint, and drawing all reasonabvle inference in the plaintiff's favor no relief could be  granted under any set of facts consistent with the allegations of the complaint. ALA Inc. v. CCAIR, Inc, 29 F.3d 855, 859 (3d Cir. 1994).

It has long been recognized that the underlying purpose of summary judgment is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense.  Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir. 1976) cert. denied, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977).

Summary Judgment is appropriate if the pleading deposition answers to interrogatories and admissions of file, together with the affidavits, if any show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of laws.  Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

The moving party bears the initial responsibilty of stating the basis for its motion and identifying those portions of the records which demonstrate the absence of a genuine issue of material fact. Id.  The moving party can discharge that burden by "Showing... that there is an absence of evidence to support the nonmoving party case." Id. at 325.

Issue of fact are genuine "Only if a reasonably jury, considering the evidence presente, could find the nonmoving party." Childer v. Joseph, 842 F.2d 689-94 (3d Cir. 1988)(Citations Omitted); Matsushita Elec. Indus. Co., v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); oritano Saving & Loan Association v. Fidelity & deposit Company of Maryland, (3rd Cir. 1993); Troy Chemical Corp. v. Teamster Union Local NO. 408, 37 F.3d 123 125-126 (3rd Cir. 1994), Arnold Pontiac GMC, Inc. v. General Motors Corp., 700 F.Supp. 838, 840 (W.D.Pa. 1988).

An issue of material facts is said to be genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Material facts are those which will effect the outcome of the trial under governing law. Anderson v. Liberty Lobby. Inc., 477 U.S. 242, 247-48(1986)(emphasis in

original). A disputed fact is material when it could affect the outcome of the suit under the governing substantive law. Anderson, 477 U.S. at 248. The Court may not weight the evidence or make credibility determination. Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d. Cir. 1998). A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson, 477 U.S. at 250. If the moving party meets his initial burden, the opposing party must do more than raised some metaphysical doubt as to material facts, but must show sufficient evidence to support a jury verdict in its favor. Id. See Morgan v. Havir Manufacturing Co., 887 F.Supp. 759 (E.D.Pa. 1994); Mc. Grath v. City of Philadelphia. 864 F.Supp. 466, 472-473 (E.D.Pa 1994).

The summary judgment standard has been likened to the "reasonable jury directed verdict standard. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242 251, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). The moving party need not produced evidence to disprove the opponent's claim. Celotex, 477 U.S. at 323, 106 S.Ct. at 2552, but does carry the burden to demonstrate the absence of any genuine issues of material fact. If the Movant has produced evidence in support of summary judgment, then the opponent may not rest on the allegations set forth in its pleadings, but must counter with evidence that demonstrates a genuine issue of fact. Fed.R.Civ.P. 56(e). This, in turn, requires the opponent to "set forth specific facts showing that there is a genuine issue for Trial." Id.

When deciding a motion for summary judgment, nonetheless, a Court's role remains circumscribed in that it is inappropriate for court to resolve factual disputes and to make credibility determination. County Floors, 930 F.2d at 1061. Thus an opponent may not prevail merely by discrediting the credibility of the movant's evidence; it must produce some affirmative evidence. Anderson 477 U.S. at 256-57, 106 S.Ct. at 2514-15. Inference should be drawn in the light most favorable to the non-moving party and where the non-moving party's evidence contradicts the movant's then the non-movant's must be taken as true. County Floor, 930 F.2d at 1061, (citing Goodman v. Mead Johnson & Co., 534

F.2d at 573); also see Big Apple BMW, Inc. v. BMV of North America, Inc. 974

F.2d 1358 (3rd Cir. 1992).

This Court is required to liberally construe a pro se plaintiff's pleadings. Complaint should not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Nodine v. Shiley Inc., 240 F.3d 1149 (9th Cir. 2001)( Summary Judgment is not proper if material factual issues exist for trial).

## ARGUMENT

### WHETHER THIS COURT SHOULD DISMISS PLAINTIFF'S COMPLAINT RELATING TO DEFENDANT SIPES.

Suggest response: No.

has set forth in the Magistrate report and recommendation, Discussion, the Magistrate Judge set forth in sequences the available facts that had been accumulate from the records. upon his review and report, the Magistrate state, (page 14) Plaintiff's failed to establish sufficient minimum contacts of the part of defendant Sipes to permit this Court to exercise personal jurisdiction over this defendant. The Magistrate, went on to state, that, since defendant Sipe's motion to dismiss is based, in part, on lack of personal jurisdiction the court may consider the declaration of defendant Sipes in support of this claim without converting the motion to one for summary judgment.  Citing Fed.R.Civ.P. 41(b); Costello v. United , 365 U.S. 265, 285 (1961); and Deuser v. Vecera, 139 F.3d 1190, 1191 n.3 (3th Cir. 1998).

Furthermore, even if the plaintiff had stated enough facts to establish that this court does, in fact, have personal jurisdiction over this defendant, the claim against defendant Sipes should be dismissed for failure to state a claim upon which relief can be granted, as is discussed below in connection with the police defendants' motion for summary judgment (See page 18-19, and Footnote #7).  Plaintiff's object to these findings.

On March 12, 2004, defendant Sipes filed Motion to dismiss.  Defendant Sipes argued that the Fourth Amendment search and seizure claim against him should be dismissed for lack of jurisdiction over him and plaintiff's has failed

to state any claim against him upon which relief can be granted. (Doc. Nos. 135, 130). Plaintiff filed his responding brief on March 15, 2004 (Doc. No. 137). Defendant Sipe filed a reply brief on April on April 15, 2004,(Doc. NO. 152). Plaintiff's responded with a brief. Defendants Sipes, state in his sworn affidavit, that his only contact with the forum sister state, Pennsylvania, was that he telephonically contacted the Pennsylvania Office of the Attorney General and Shipped a package to that office. The Defendant failed to state that his action a year prior to that incident, he submitted Memorandum to various Mails Boxes Etc., in the Riverside County, California, to look out for packages; he failed to address the issue that he immediately contacted and Agent Ron from the Pennsylvania State Attorney Office, whom in turn contacted Defendant Morgan; whom maintained constant contacts with Defendant Sipes, throughout the investigations and his September 12, 2001, testimony, in Pennsylvania. Defendants Sipes, failed to disclosed that he instructed Defendant Morgan to initiate interrogation of Plaintiff's about his finances, on January 11, 2004, at the York County Prison; at that time Plaintiff's has invoked his rights to counsel, and to remain silent. Defendant Sipes constantly remained close contact with the defendant Morgan in Pennsylvania, and was coerced by Morgan in writing a late report. Defendant Sipes, concocted the illegal search of the package, at the Mail box Etc., by the Clerk Norisa, in Riverside California, where he alleged seized such package, without a warrant. [ See Exhibit 1 Note Of Testimony, dated September 12, 2001, Defendant Sipe].

State action may be found if the private party has acted with the help of or in concert with state officials. Specifically when the private party has been "delegated... a power traditionally exclusively reserved to the State. Flagg Bros. 436 U.S. at 157, 98 S.Ct. at 1734 ( qouting Jackson v. Metropolitan Edison Co., 419 U.S. 345, 352, 95 S.Ct. 449, 454, 42 L.Ed.2d 477 (1974). A private party has taken the decisive step that caused the [alleged] harm to the plaintiff and the question is whether the state was sufficiently involved to treat that decisive conduct as state action. National Collegiate Atheltic

Ass'n v. Tarkanian, 488 U.S. 179 109 S.Ct. 454, 102 L.Ed.2d 469 (1989). The
Due Process Clause protect an individual liberty interest in not being subject
to the binding judgment of a forum with which he has established no meaningful
"contacts, ties, or relations." International Shoe Co. v. Washington, 326 U.S.
at 319, 66 S.Ct. at 160, by requiring that individual have "fair warning that
a particular activity may subject [them] to the jurisdiction of a foreign
sovereign. Shaffer v. Heitner, 433 U.S. 186, 218, 97 S.Ct. 2569, 2587, 53
L.Ed.2d 683 (1977). The Due Process Clause, "give a degree of predictability
to the legal system that allows potential defendants to structure their primary
conduct with some minimum assurance as to where that conduct will and will
not render them liable to suit. World-wide Volkswagen Corp v. Woodson, 444
U.S. 286, 297 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1930). Where a forum seeks
to assert specific jurisdiction over an out-of-state defendant who has not
consented to suit there, this "fair warning" requirement is satisfied if the
defendant has purposely directed "his activities at residents of the forum.
See Keeton v. Hustler Mazagine, Inc., 465 U.S. 770, 774, 104 S.Ct. 1473, 1478,
79 L.Ed.2d 790 (1984) and the litigation results from alleged injuries that
"arise out of or relate to " those activities. Helicopte-Ros Nacionales de
Colombia SA v Hall, 466 U.S. 408, 414 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404
(1984). Thus "[the forum state does not exceed its power under the Due process
clause if it assets personal jurisdiction over a corporation that delivers
its products into the steam of commence with the expectation that they will
be purchased by consumer in the forum states, and those products subsequently
injure forum consumers World-wide Volkswagen Corp. v. Woodson, Supra. 444 U.S..,
at 297-298, 100 S.Ct. at 567-568. Similarly a publisher who distributes magazine
in a distant state may fair be held accountable in that forum for damages
resulting there from an allegedly defamatory story. Keeton v. Hustler Magazine,
Inc. Supra, see also, Calder v. Jones 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d
804 (1984)(suit against author and editor) and with respect to interstate
contractual obligations we have emphasized that parties who "reach out beyond
one state and create continuing relationships and obligations with citizens

of another states are subject to regulation and sanction in the other state for the consequences of their activities. Traveler Health Assn. v. Virginia, 339 U.S. 643, 647, 70 S.Ct. 927, 929 94 L.Ed. 1154 (1950); McGee v. International Life Insurance Co., 355 U.S. 220, 222-223, 75 S.Ct. 199, 200-2001; Detective's use of such force against plaintiff's. See Burger King Corp v. Rudzewicz, 471 U.S. 462, 476 (1985).

Pursuant to the "effect test" set forth by the United States Supreme Court, Calder v. Jones, Supra; personal jurisdiction may be exercised over a non-resident defendant where the actions of the defendant in one state purposefully causes injury to the plaintiff in the forum state. However, Calder has been limited to those cases where a plaintiff "can point to contacts which demonstrate that the defendant expressly aimed its tortious conduct at the forum, and thereby made the forum the focal point of the tortious activity." IMO Indus. v. Kiekert AG, 155 F.3d 254, 265 (3d Cir. 1998).

Defendant Sipes, not only conducted an illegal search of the packages in California, he immediately contacted the forum state Pennsylvania, State Attorney General Office, contacted defendant Morgan, did a investigative check, on Plaintiff's by running a "ID" check on him, placed seizure on his bank accounts, provided those information to Defendant Morgan, He initiated a interrogation on January 11, 2001, by Defendant Morgan, at the York County Prison, and shipped the package to the State Attorney General Office at Defendant Morgan request, and furthermore flew out to Pennsylvania to testified; was only clear that is tortious conduct was directed toward Plaintiff. Defendant was a major influences to the actions in Pennsylvania, where plaintiff's was hit by a van, Defendants tackle, trample and stepped upon him and the use of excessive force was enforced. Plaintiff's sustained injury, because of tortious conduct of Defendant Sipes. [See Exhibit 1, Sipes Testimony]. Plaintiff's have provided sufficient evidences to show and presented a valuable claims, to show that if it wasn't for Defendant Sipes tortious conduct, he would not have suffered injury from the used of force. At no time did any of these defendants made any good faith effort to obtained

a search warrant to conduct searches of packages or mail box. He initiated the unlawful search of plaintiff mail box, when Defendant Morgan Placed "make shift Box," there for plaintiff's to retrieved, resulting in the use of force, furthermore, he instructed Defendant Morgan to interrogate Plaintiff's on January 11, 2001, after plaintiff's invoke is right to counsel, made out false report, shipped controlled substance from California, to Defendant Morgan, and came to Pennsylvania and testified, stay in contact with defendant Morgan to corroborate their reports.    Defendants Sipes, failed to sworn to any of those tortious conducts.

Plaintiff's in his response to Defendant Sipes motion to dismiss, Plaintiff made a verified statement under 28 U.S.C. § 1746, that the foregoing reasons are true. that Defendant Sipes privy into the secrecy of plaintiff's private affairs, example his bank account, package, and initiate further interrogation of plaintiff's in the forum state, with Defendant Morgan, without any judicial approval; plus invaded privacy right, when he run background check on Plaintiff, without probable cause, and provide those information to Defendant Morgan. Defendant Sipes, constant contribution to the abuse and violation of plaintiff constitutional right made him liable.

A Court may assert personal jurisdiction over a non-resident to the extent permitted by the law of the state in which the Court is located.  Fed.R.Civ.P. 4(e)(1).  Pennsylvania long-arm statute permits a Court to exercise jurisdiction over non-resident defendants, "To the fullest extent allowed under the Constitution of the United State and [jurisdiction] may be based on the most minimum contact with the Commonwealth allowed under the Constitution of the United State." 42 Pa. C.S.A. § 5322(b); Burger King Corp. v. Rudzewcz, 471 U.S. 462, 476 (1985); World-Wide Volkswagen Corp. v. Woodson 444 U.S. 286, 297 (1980); International Shoe Co. v. Washington, 326, U.S. 310, 320 (1945). Personal jurisdiction may be exercise over a non-resident defendant where the actions of the defendant in one state purposefully cause injury to the plaintiff in the forum state. Calder v. Jones, 465 U.S. 783 (1984).

Defendant Sipes specifically and expressly aimed his tortious conduct at the forum state Pennsylvania, when he immediately, contacted, Agents, in PA., by way of telephone, from the Mail Box Etc., Riverside, California; where his cause of action, is justifiable under personal jurisdiction. Defendant Sipes demonstrate a continuous contact with the forum state, through Defendant Morgan, when he initiated further interrogation of this Plaintiff's on January 11, 2001, at the York County Prison; send written false reports, and later flew to Pennsylvania, to testified.  Plaintiff's have clearly state this claim in his response, briefs.  Furthermore the service of process was sufficient pursuant to Fed.R.Civ.P. 4(e)(1); Bank & Trust Co. v. EA Int'l Trust, Civ. NO. 93-6163, 1999 WL 549036, at (W.D. Pa. July 26, 1999).

The Clerk of Court properly served the Defendant Sipes. See Fed.Rule Civ.P. 4(6). Plaintiff claims has to deal with state authority and local government agency, [law enforcement], who conspired to deprive plaintiff's of his constitutional rights.

The Magistrate, state that the plaintiff's failed to state a claim against defendant Sipes and recommended that this claim be dismiss.  For a complaint to survive a Motion to dismiss challenge, the Complaint must state a prima facie case that avers sufficient facts, that if proven would entitled the plaintiff to relief.  The Court required to review the alleged facts "in the light most favorable to the claimant (Plaintiff) and only dismiss the action if it appear inconceivable that the Plaintiff could produce reliable evidence justifying relief under any legal theory.  See Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed 80 (1957); and also Gainey v. Brotherhood of R and SS Clerk, Etc., 177 F.Supp 421 affirmed 275 F.2d 342 (3rd Cir. 19).  Plaintiff's has set forth all meritorious claims against Defendant Sipes.  Sipes made an unlawful seizure, by coerced or instigated and unlawful search of the shipped package, by instructing Mail Box Etc., Clerk, Norisa, to conduct search in violation of one's constitutional and privacy rights.  He further initiated contact with the forum state Pennsylvania, where his tortious conduct cause

and unlawful search and seizure of plaintiff's private mail box, the use of excessive force, causing great bodily injury to plaintiff's and severe back injury, and illegal and coercive interrogation, and illegal seizure of his bank account.  Defendant Sipes tortious conduct, create a pretext and subterfused arrest, causing harm to this Plaintiff's.  Defendant Sipes, further shipped the package to Defendant Morgan, at his request, three days after his seizure of the package to the Attorney General Office in Pennsylvania, and not at Mail Box Etc., 2536 Eastern Blvd., [even though Plaintiff's was later arrested, and charged with possession of contraband he never possessed]; and later flew out to Pennsylvania, to testified, against this plaintiff's on his frivolous reports.  He provided physical description, in his investigative report which was illegal.  Plaintiff's have clearly set forth his material facts.

This Court is required to liberally construe a pro se plaintiff's pleading. Haines v. Kerner, 404 U.S. 519, 520 (1972). In doing so, the Court is to "apply the applicable law irrespective of whether a pro se litigate has mentioned it by name. "In Cruz v. Reto, 405 U.S. 319 (1972); the Court said that a complaint "Should not be dismissed for failure to state a claim unless it appears beyond doubt that the Plaintiff's can prove no set of facts in support n of his claim which would entitled him to relief." 405 U.S. at 332, quoting from Conley v. Gibson, 355 U.S. 41, 45-46 (1951). In Haines, the Court added that in considering a motion to dismiss, a "pro se complaint," ( one submitted by the plaintiff for himself, without a lawyer). should be held to "less stringent standards than the formal pleading drafted by lawyers." 404 U.S. at 520.

In the interest of justice, the Magistrate has failed to appoint counsel in this action, to represent this plaintiff.  Apparently, a competent attorney would go through the records, to show that a genuine issues of material facts exist, and the Magistrate has been bias and prejudice, in his ruling to appoint the Plaintiff's Counsel, in this matter.

**II**

WHETHER THIS PLAINTIFF'S IS ENTITLED TO SUMMARY JUDGMENT AND TO PROCEED TO

TRIAL.

When the Judge consider a motion for Summary Judgment, he or she supposed to view the evidence submitted by both side, "in the light most favorable to the party opposing the Motion." United v. States v. Diebold, 369 U.S. 654, 655 (1962); Adicker v. SH. Kress & Co.,, 398 U.S. 144, 157, 160 (1970). See also United States v. Western Electrical Co., 337 F.2d 568, 575 (9th Cir. 1964).

On April 13, 2004, the Defendants filed a Motion For Summary Judgment, along with a supporting brief, statement of facts, and apprendix (Doc. NOs. 146, 147, 148, 149). On June 30, 2004, the defendants filed a supplemental brief in support of the motion for summary judgment. (Doc. NO. 168), with uncertified, and incorrect Deposition transcript. Plaintiff's filed a brief in opposition to defendant motion for summary judgment, statement of material facts, Declaration in support, apprendix and exhibits. (Doc. NOs. 177, 178, 179, 180). Plaintiff's received defendants supplemental brief in the institutional mail on or around July 7, 2004. Plaintiff, filed a response to defendant supplement brief for summary judgment, with supporting Declaration. (Doc. NOs. 183, 184). This Court is required to liberally construe a pro se litigant has mentioned in Haines v Kerner, 404 U.S. 519, 520 (1972).

In the motion for summary judgment the police defendant argued that the claims against them should be dismissed for four (4) reasons: (1) The Eighth Amendment claim of excessive bail must fail because the defendants had no authority to grant bail, or control the amount of bail; (2) There is no viable Fifth Amendment claim against the defendants because the violations of the Miranda warnings, if any, did not amount to a violation of the Constitution; (3) There is no viable Fourth Amendment claim, if in fact there was an unconstitutional search and seizure, because alternate remedies existed for the plaintiff, and (4) The Fourth Amendment excessive force claim must fail

because the defendants had qualified immunity. Claiming that the Police Defendants summary motion should be granted, by the Magistrate judge; Plaintiff's objected.

Regarding the issue of excessive bail, the Eighth Amendment provides that defendants in a criminal case are entitled to reasonable bail.  A claim of excessive bail is cognizable under section 1983. Harvin v. Post, 1997 WL 116985, at * 4 (E.D. Pa. 1997).  Wagenmann v. Adams, 329 F.2d 196, 211-212 (1st Cir. 1987)(a law enforcement officer may be liable in a § 1983 excessive bail claim if he  "help[s] to shape" or "exercis[es] significant influence over" the bail decision.)

Under the Excessive Bail Clause, Due Process Clause and the Eighth Amendment Excessive Bail Clause.  The Court applied a diferential standard of review, in light of Congress "broad power" over setting bond in criminal proceedings.  The U.S. Supreme Court in U.S. v. Salerno, 431 U.S. 739 (1987), involving the 1984 Bail Reform Act.  The statute implicates legitimate goals- protecting the community from aggravated felons.

The Defendants note that Pennsylvania, the relevant rules of criminal procedure provide a remedy in case where a criminal defendant claims that he has been a victim of excessive bail; citing Pa.R.Crim.P. 529(b)(1), which provides: " [T]he existing bail order may be modified by a judge of the court of common pleas (1) at any time prior to verdict upon  motion of counsel for either party with notice to opposing counsel and after a hearing on the motion..." The Magistrate concluded that the docket of the plaintiff's criminal proceedings indicates that he did file a motion to reduce his bail, which was denied. (Doc. NO. 149, EX. 1).  The Magistrate concluded that the Court concludes that principles of federalism, comity and judicial economy require that the plaintiff's Eighth Amendment claim of excessive bail against the police defendant should be dismissed, citing James v. York County Police Dept., et al., 167 F.Supp.2d 719, 720-721 (M.D.Pa. 2001).  Plaintiff's aver, that these Defendants, exercise significant influence over the bail process, by giving sworn false statement; in the Criminal Complaint filed on January 10, at 7:05,

by Defendants Morgan and Craul, in District Justice Leppo Office; specifically

in the "Affidavit Of Probable Cause, claiming that, plaintiff, possessed a

controlled substance in the state of Pennsylvania, at 2536 Eastern Blvd., when

in actually, there was no contraband found in the plaintiff's possession. [see

Exhibit 2, page 37, September 12, 2001, suppression hearing, where District

Attorney Stinett, addressed that the contraband was never forward to the

Pennsylvania crime lab, but to Federal Forensic scientist, in New York, contrary

to Defendant Craul sworn statement under oaths, in DJ Leppo Office]. Defendants

Morgan and Craul, under sworn testimony persuaded the District Justice to issues

a high bond, even though there was no probable cause or a search or arrest

warrant to detained plaintiff. At preliminary arraignment, Defendant Morgan

addressed the Court and assert and make comment about the watch defendant was

wearing, "neither himself or the District Justice could affords it, work for

the state," they went on to assert that plaintiff's was a flight risk, and

have extensive ties out side Pennsylvania. They specifically asked the Judge

to set a High Bond; where plaintiff would be detained by defendant Morgan and

be subjected to perlonging interrogation, especially on January 11, 2001, and

the illegal search of plaintiff dwelling with his wife and children, where

he interrogation her, without informing her about her husband whereabout.

Furthermore the same time the defendants was arraigning Plaintiff's at District

Justice Leppo Office; defendants were seeking search warrant from the same

District Justice, which tainted the criminal complaint filed, and inflicted

a showing of prejudicial and bias decisions in the Judge setting of bond, for

this Plaintiff's; Defendant misleading the District Justice. Plaintiff, was

later pull from the York County Prison, on January 12, 2001, by a Constable

Kelly, taken to a District Justice Huskell Office, where he was meet by

defendant Morgan and Peddicord, where they gave frivolous sworn statement under

oaths, and requested that the District Justice, set a "Cash Only" bond in the

total amount of $2.5 million dollars. [see Exbibit 3, Plaintiff's bail bond

hearing held on September 12, 2001, before Judge Thompson, Jr., in the Court

Of Common Pleas, York County]. This Court should be aware that Defendants [Exhibit 1] is flawed, because the Clerk Of Court, York County, failed to correct the Docket Statement to show that plaintiff's was never served a copy of the Judge Thompson, Jr. order dated February 19, 2002; in which he fabricated the Docket Statement.

Pa.R.Crim.P. 532(A), release critera; to determine whether to release a defendants and what conditions, if any, to impose, the bail authority shall consider all available information as that information is relevant to the defendant appearance or non-appearance at subsequent proceedings, or compliance or non-compliance with the conditions of the bail bond; including information about; which give ten (10) critera.

Pa.R.Crim.P. 523(B), the decision of a defendant not to admit culpability or not to assist in an investigation shall not be a reason to impose additional or more restrictive condition of bail on the defendant; especially one that is arrested without a warrant and without probable cause.

When deciding whether to release a defendant on bail and what condition of release to impose, the bail authority must consider all the criteria provided in this Rule, rather than considering , for example, only designation of the offense or the facts that the defendant is a non-resident.  This Court should note, that the concludes of the Preliminary Arraignment, Defendant Kessler, obtained search warrant from the same District Justice, at the time Plaintiff's was being arraigned.  Defendants Morgan, testified, at the preliminary arraignment, about hearsay statements, he elicited from Plaintiff's wife; he refused Plaintiff's access to the telephone, and instructed Prison Guards, "Not to give Plaintiff's any phone call pending investigation." At the bail hearing, held January 10, 2001, defendants Morgan and Craul, presented false statements on the Affidavit of Probable Cause, presented hearsay testimony, to discredit the Plaintiff's, and violated Plaintiff's right under husband and wife privilege, specifically when he didn't informed her about the whereabout of her husband, but tried and elicit statement from her, and

illegally search her home.  Defendants Morgan Craud and Peddicord, statements

to the District Justice, along with the blatant violation of Plaintiff's

constitutional rights, showing that Defendants played a major role, in

influencing the Bond Process on January 10 and 12, 2001, at District Justice

Leppo and Huskell Office.

The Magistrate stated that the docket of the plaintiff's criminal

proceedings indicated that he did filed a motion to reduce his bail, which

was denied.  This Court should note that the Clerk of Court, York County, Marlyn

Holtapple, fabricated said documents. (Doc. NO. 149. Ex.1).  This Court, should

take into account the length of time, plaintiff was detained at the York City

Police Department, before he was arraigned, by defendants, and the time bond

was issued, on January 10, and 12, 2001; defendants further informed the Court

that Plaintiff's was under investigation.  See Pa.R.Crim.P. 523(B).

Defendants remedy in disposing this Excessive claim are inapplicable,

they should be held accountable for their conducts; especially in misleading

the Bail Authority and showing gray influence, and dominant or Authority over

the District Justice, because defendants Morgan believe or feel that he is

a member of the state attorney general office and above the law, of this

Commonwealth and the Constitution of the United States, when he denied

Plaintiff's his constitutional rights.

The Eighth Amendment states that excessive bail shall no be required ...

this Constitutional provision is interpreted to prohibit excessive bail without

creating a right to bail.  Bail become excessive when a Court sets the amount

of bail higher than the reasonably necessary to ensure a defendant appearance

at trial.  Government action depriving an individual of life liberty or property

be implemented in a fair manner and not be Arbitrary.  See United States v.

Salerno, 481 U.S. 739, 95 L.Ed.2d 697, 107 S.Ct. 2095.

The Magistrate Judge, went on to concluded that principle of Federalism,

comity and judicial economy require that the Plaintiff's Eighth Amendment claims

of excessive bail against the police defendants should be dismissed; James

v. York County Police Dept. et al., 167 F.Supp.2d. 719, 720 721 (M.D.Pa. 2001).

From the review of the records or the case cited, that this Court previously dismissed;  If the Magistrate, believe that such a claim had been previously dismissed, or should be dismiss, because these defendants are Police Officers, then there are no room for an individual constitutional right, rights for citizens, would be absurd.  Each person are create equal, and are entitled to the same justice, and constitutional right of this magnificent and beautiful country, U.S.A., so if the Magistrate believe that, because they are police officers, they are always right, over a prisoner, or someone's that is behind bars, that would be wrong and prejudicial in upholding the law of the Land.  This goes to show why so many injustice are in the country, America, so many innocence people behind bar.  This Court are aware, that Police do make mistakes, inadvertently or advertently, consciously and unconsciously, so deliberately, because they are put in the position to violation a citizen constitution right.  I am a victim of constant police brutally and abuse.

This Magistrate Court noted that Defendant did not argued for dismissal of the Plaintiff's claim that his Eighth Amendment Right were violated by setting of excessive bail (Doc. NO. 79 at 13); However, Defendants object to the finding, arguing that they didn't have any involvement i setting bond, and that claim was already dismissed by the Court, September 18, 2001, Order. The Magistrate and Defendants contention that the excessive bond claim was previously dismissed is unsupported by the records.

In the October 3, 2001, Order, by the District Court.  The Court rule that it did not mention yet let alone dismiss, Plaintiff's Eighth Amendment excessive bond claim in the September 18, 2001, Order. (See Doc. NO. 16). These Defendants play a major role and influence over the District Justice, and the setting of bond, by manipulating the Court, with their authority, to impede the Justice, to detained plaintiff's on a high bonds, so that they could complete their investigation, applying excessive bond, in violation of plaintiff's constitutional right, and by any means necessary; Even if means

denial of Federal Laws, and Constitutional rights. Pa.R.Crim.P. 523(B); Wagerman

v. Adams, Supra; Hensley v. Municiple Court, 411 US 345, 36 LEd2d 294, 93 S.Ct.

1571 (1973); US v Gebro, 948 F.2d 1118 (9th Cir. 1991); and Torres v.

McLaughlin, 163 F.3d 169 (3rd Cir. 1998)

The Defendants "law enforcement officers should be held liable under §
1983, for their influence, plaintiff's excessive bond claim, under the Eighth
Amendment, in which they help shape and in many ways exercise significant
influence over the bail decision, in which they deliberately misleading the
District Justice, with false Affidavit of Probable Cause, misleading sworn
statement made under oaths, amounting to hearsay, and violation of husband
and wife privileges, or privilege information, which they presented to the
Justice, on January 10, and 12, 2001; not on September 12, 2001, at the bail
reduction hearing, in which nine months have passed, after the facts, that
they had elicited and influence the Magistrate, in setting high "cash only"
bond, the harms were already done, and a Eighth Amendment violation excessive
bail had occurred. [See Exbibit 3]; such claim of excessive bail had occurred
and is recognizable under section 1983. Hervin v. Post, 1997 W.L. 116985,
at * 4 (E.D. Pa 1997). Also see Commonwealth v. Smith, 378 A.2d 1239; Pa.R.Crim.
P. Rules 519 (A)(1), 509, 520 (A), 525(A)(B) and 520(c).

**Plaintiff claims of his Fifth Amendment rigths were violated by the
Defendants, in engaging in custodial interrogation, without providing Miranda
warnings, and his denial of counsel upon Pliantiff's request.**

The Magistrate Judge, claim that Plaintiff's Fifth Amendment right
violation claims by the (Police) defendants, because they engaged in custodial
interrogation of him without providing Miranda warnings, must fail. Plaintiff's
object to the Magistrate findings; citing Chavez v. Martinez, 538 U.S. 760
(2003); Renda v. King, 347 F.3d 550 (3d Cir. 2003).

The United States Supreme Court has held that the failure to administer
Miranda warnings cannot be a basis of a § 1983 action, where the statements
obtained from the criminal defendants were not used against the defendant in

the criminal trial. The Magistrate, citing Renda, stated that the Third Circuit Court Of Appeals states, "[I]n light of the Supreme Courts recent decision in Chevez... questioning a plaintiffs in custody without providing Miranda warning is not a basis for a § 1983, claim as long as the plaintiff's statement are not used against [the plaintiff's] at trial. Renda, 347 F.3d at 557-558. The Magistrate, when on the state that plaintiff's conceded several times that he gave no information to police officers, or investigators during the period from January 10, 2001 and January 12, 2001. ("...[N]o statements were made by plaintiff's (sic) voluntary (sic) any information to these Defendants...") (Doc. No. 177, p. 18). The Magistrate, stated that there is no evidence that any alleged Un-Mirandized statements were ever used against the plaintiff, in light of the foregoing. This Plaintiff's disagreed with the Magistrate findings. It's clear from the Apprendix and Exhibits that Plaintiff's had presented to the Court, that Defendant Morgan alleged that Plaintiff's made statement to him, which was used at various pre-trial and trial proceedings; example in the Affidavit Of Probable Cause, present to the District Justice Leppo, Defendants Morgan and Craul alleged that Plaintiff's made incriminating statements to him, that, "He had just flew in from California, and drove to the Mail Box to retrieved his package," [see defendants, summary judgment exhibit 4]; defendant Morgan, further alleged, that upon him approaching plaintiff's at the van, that stroke plaintiff's, Plaintiff's avers that, He didn't know it was marijuana in the Make Shift Box, placed there, by the Defendants, which turned out to be rock-salt." [see Defendants Morgan testimony, dated March 23, 2004]. These allegations by Defendant Morgan, against plaintiff's were incorporated into his trial transcripts, and used at trial. Defendant Morgan further went on to tell the Court, that, "Defendant stated that he fly to California, to pick up his Social Security Supplemental Income check,"0 when in actuality, that monthly check was deposted directly into plaintiff's bank account. These allegations, Defendant Morgan claimed Plaintiff's made to him was a blatant violation of

22.

his Fifth Amendment Right, to Miranda warnings and Right to Counsel. The Affidavit of Probable Cause, filed by Defendant Craul, on January 10, 2001, in it alleged that Plaintiff's made statements to Defendant Morgan, claiming that, "(The Defendant admitted to Agent Morgan, that he took a plane from California on 1-9-01, in the P.M., and he arrived at the Harrisburg International Airport at approximately 5:05 a.m.; that he then obtained a rental vehicle and drove to York, Pennsylvania)" (See Defendant Morgan, Kessler, Craul, Peddicord, Fells, Glowczeski's and Westmoreland, Apprendix in Support of Motion For Summary Judgment, and Affidavit Of Probable Cause, filed by Defendants Craul and Morgan, before the District Justice, Leppo, on January 10, at 7:05, p.m.; see Ex 4, Def. S.M. Motion). these statements were all introduced, into evidences, and trial by defendant Morgan. Also see [Exhibit 4, Def. Morgan, Note Of Testimony, November 12, 2001].

In Massiah v. United States, 377 U.S. 2001 (1964) the Supreme Court said that, "an accused's Sixth Amendment Right to counsel is violated when evidence is presented at trial of a defendant own incriminating statements that law enforcement officials, 'deliberately elicited from him after he had been indicted and in the absence of his counsel." In contrast, in Rhode Island v. Innis, 446 U.S. 291 (1980), the Court said a defendant is interrogated for purposes of Miranda's protections of the Fifth Amendment privilege against seft-incrimination only when an agent make statements that a reasonable officers would know are likely to elicit an incriminating response. Edwards v. Arizona, 451 U.S. 477 (1981); Oregon v. Bradshaw, 462 U.S. 1039 (1983). Although the Magistrate, never address the issue, Plaintiff's Claims regarding denial of counsel during these interrogation, should be actionable under the Fifth Amendment insofar as it prohibits interrogation after a clear request for counsel is made. See Davis v. United States, 512 U.S. 452, 458(1994)("if a suspect requests counsel at any time during the interview, he is not subject to further questioning until a lawyer has been made available or the suspect himself reinitiates conversation")(citing Edwards v. Arizona, 451 U.S. 477, 484-85); see also Miranda v. Arizona, 384 U.S. 436 (1966). See McNeil v.

attach until the point of arrest. Defendant Morgan, alleged claimed that he
elicited statements from Plaintiff's, that were further used throughout his
criminal proceedings. [See Plaintiff's Exhibit 4].

The magistrate when on to state that Plaintiff's conceded several time,
that he gave no information to police officers or investigators during the
period from January 10, through 12 2001. [..."No statement were made by
plaintiff (sic) at the time of his arrest...] (Doc.NO. 177, p.14); ([A]t no
time did this Plaintiff's (sic) voluntary (sic) any information to these
Defendants...")(Doc. NO. 177, p.18). It is blatantly clear that Defendant
Morgan, lied in his Investigative Report, that Plaintiff's made incriminating
statements, and further used these statements against Plaintiff's in his
Affidavit Of Probable Cause, on January 10, 2001, Filed By Defendant Craul,
in the Criminal Complaint; Defendant Morgan further went on to testified to
such statements throughout Plaintiff's trial. Example, Defendant Morgan stated,
to defendant Craul, that Plaintiff's, alleged to him, in the affidavit, that,
("the Defendant admitted to Agent Morgan that he took a plane from California
on 1-9-01, in the P.M. and he arrived at the Harrisburg International Airport
at approximately 5:05 a.m.; that he then obtained a rental vehicle and drove
to York, Pennsylvania")(See Defendant Exhibit 4, Affidavit Of Probable Cause,
Apprendix In Support Of Defendants' Motion For Summary Judgment). Defendant
Morgan further went on to state, that, Plaintiff's alleged to him, "He flew
out to California to pick up is Supplemental Security Income Check;" Defendant
Morgan when on the state, that Plaintiff's at the Van, blurted out, "That he
didn't know that it was Marijuana in the Box," without giving Miranda warning.
(See Plaintiff's Exhibits, in support of his opposition to Defendants Motion
For Summary Judgment, Note of Testimony, March 28, 2001). Defendant Morgan
Have made contradicted statements under oaths. The Defendants failed to address
this issues accurately, because, he know, that he violated Plaintiff's
constitutional rights when he failed to Mirandarized Plaintiff's. There was
no signed waiver form, and no evidence present by the Defendants that

Case was ever Mirandized by the Defendants [See Plaintiff's Exhibit Downloaded Document Page 25 of 50

Plaintiff, was ever Mirandized by the Defendants [See Plaintiff's Exhibit 4].

Plaintiff's Fifth Amendment Right should proceed. In Missouri v. Seibert, U.S. NO. 02-1371, the Supreme Court recently rule that a two step interrogation in which police deliberately interrogated an in-custody suspect thoroughly prior to providing the advisement of right required by Miranda v. Arizona, 384 U.S. 436 (1966), and resumed questioning her on the same matter shortly therefore following the provision of Miranda Warning, violated her Fifth Amendment rights to be free from compelled self-incrimination and required suppression of the post-warning statements.

The Supreme Court establish a prophylactic procedural mechanism those safe guards a defendants Fifth Amendment privileges against the inherently coercive nature of custodial interrogation. Miranda v. Arizona, Supra. The Court held that unless the defendant was informed of his Fifth Amendment Right before questioning any pretrial statement elicited from the defendant during custodial interrogation were inadmissible at trials.

The Court in Dickerson v. United States, 530 U.S. 428 (2000); ruled that Miranda, announced a constitutional rule, that could not be overruled by Congress. The Court when on to announced that Miranda is a constitutional rule of laws, which Congress, could not superseded legislatively and that Miranda and it progeny the admissibility of statements made during custodial interrogation in both State and Federal Court. The Supreme Court 2003 decision in Chavez v. Martinez, 123 S.Ct. 1994(U.S.. 2003) rejected a strict use at trial requirement for § 1983, Fifth Amendment damages actions. Plaintiff's, hereby submits the Deposition Hearing held May 25, 2004, at SCI-Rockview, by Defendant Counsel, Jason Guirintano, as [ Exhibit 5, pages 16-44 and 76-128]. Defendants Morgan, further went on to give sworn testimony at trial, that Plaintiff's provided information to him, that "He had just flown in from California that morning. He had been to California to pick up some social security check that apparently was delivered to a California address for him," that was frivolous and false. Defendant Morgan, went on to state, that,

Plaintiff is allegedly stated to him, that, "the package, plaintiff's picked up, on January 10, 2001, plaintiff's thought, that it contained beauty supply for his wife, business." that was also false. Miranda warning, are inserted in the Midst of coordinated and continuing interrogation, they are likely to mislead and "depriv[e] a defendant of knowledge essential to his ability to understand the nature of his rights and the consequences of abandoning them." Moran v. Burbine, 475 U.S. 412, 424 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986). None of these statements defendant Morgan alleged Plaintiff's made was voluntary giving or stated, but was sworn to under oaths and testify to by Defendant Morgan; [See Plaintiff's Exhibit 4], relating to compelling self-incrimination, without no Miranda Warning. See Chavez, Supra, at 778 123 S.Ct. 1994. These False, and Unwarn statements was admitted into evidence by defendant Morgan and defendant Craul. See [plaintiff's Exhibit 4.]. See U.S. v. Patane 124 S.Ct. 2620 (2004).

On October 3, 2003, the Honorable Judge Kane, ordered Plaintiff's claims regarding denial of counsel, actionable under the Fifth Amendment, insofar as it prohibits interrogation after a clear request for counsel is made, citing, Davis v. United States, 512 U.S. 452, 458 (1994)("if a suspect requests counsel at any time during the interview, he is not subject to further questioning until a lawyer has been made available or the suspect himself reinitiates conversation")(citing Edwards v. Arizona, 451 U.S. 477, 484-35); see also Miranda v. Arizona, 384 U.S. 436 (1966). Plaintiff's requesting a phone call to contact his counsel, doesn't reinitiates conversation with Defendants. Defendant Morgan, blatantly admitted, that, "He deny Plaintiff's a phone call at the York City Police Department, to contact his Attorney," he further went on to state, that, "He instructed Prison Guards, not to give Plaintiff's a phone call pending investigation," these action clearly show that defendant Morgan, destroyed Plaintiff's "lawyer Net Work Card" to contact his attorney, when Plaintiff's requested to used his card, to call his attorney, by way of Defendant Morgan, who, give plaintiff no inventory receipt, regarding this valable piece of documents; and in violation of Pennsylvania Rule Of Criminal

Procedure. [See Defendant Morgan Note of Testimony, Preliminary Hearing, dated March 28, 2001, submitted by Plaintiff's in his Opposition Motion to Defendant Motion for Summary Judgment].

Plaintiff's have made a valid claim that he was under arrest and that he had a constitutional right to counsel. Michigan v. Jackson, 106 S.Ct. 1404, 475 U.S. 625, 89 L.Ed.2d 631 (1995)(held that if police initiates interrogation after defendant assertion at arraignment or similar proceeding of his right to counsel any waiver of the defendant right to counsel for that police initiated interrogation is invalid). Also see Alston v. Redman, 34 F.3d 1237 (3d Cir. 1994)(Suspect who has requested presence of counsel cannot be questioned concerning any crime, not just one that got him in custody). Here defendant Morgan, testified, that he reinitiated contact and questioned Plaintiff's on January 11, 2001 and the York County Prison, at Defendant Sipes request. [See Plaintiff's Exhibit 4, page. 96:12-14]. Defendant Morgan stated that he didn't questioned Plaintiff's at the Van, but only read him his Miranda warning, [see Exhibit 4. page 95], but yet he claimed that Plaintiff's blurted out at the van, "That he didn't know it was marijuana in the box," when defendant Morgan confronted him at the Van. [See Pri. H. Note of Testimony, defenant Morgan, dated March 28, 2001]; neither there is any evidence that this defendant Morgan ever read plaintiff's his constitutional right as it relates to Miranda. "The Fifth Amendment is an old friend and a good friend. It is one of the great landmarks in man's struggle to be free of tyranny, to be decent and civilized." "The American Government is premised on the theory that if the mind of man is to be free, his ideas, his beliefs, his ideology, his philosophy must be placed beyond the reach of government." There is no more cruel tyranny than that which is exercised under cover of law, and with the colors of justice U.S. v. Jannottie 673 F.2d 578, 614 (3rd 1982). The Constitution and Bill of Rights was to protect individuals and minorities from the oppression of the majority. "If the government, police and prosecutors could always be trusted to do the right thing, there would have never been a need for the Bill of Right. "Prosecutor does not represent an entity whose

27.

interest include winning at all cost; prosecutor's client is society, which seeks justice not victory." From Defendant Morgan testimony, show that this Defendant blatantly lied on the witness stand, to seek victory, not justice, while he impeded on plaintiff's constitutional and violated his civil rights. [Exhibit 4, page 137, 138, 139, and 140:4-9, " Defendant Morgan, stated, "That it's at his discretion to give plaintiff's a phone call, even if it take, him to call his Attorney, because, that would have jeopardize the furtherance of his investigation]. [See Exhibit 4, page 141, 142, showing Defendant Sipas, involvement, in the forum state, also see page 145, showing plaintiff's invoking his Miranda right, and Defendant Morgan being coercive].

Plaintiff's has satisfied a recognizable claims under the Fifth Amendment, as it relates the <u>Chavez v. Martinez</u>, 538 U.S. 760 (2003). This Honorable Court should not dismiss this claim, as there is a genuine issue of material facts in dispute; furthermore, this would not invalidate in palintiff's conviction under <u>Heck v. Humphrey</u>, 512 U.S. 477, 114 S.Ct. 2364 (1994). Plaintiff's have set forth a procedural claim in violation of his Constitutional rights embedded in the "Bill of Right." Plaintiff's doesn't seek immediate release, but a violation of his constitutional rights, compensatory, Declarartory and Punitive damages.

## Whether Plaintiff's State A Valid Claims Under The Fourth Amendment, Search and Seizure.

The Magistrate in his Report and Recommendation, claim that Plaintiff's Fourth Amendment search and seizure claim, should be dismiss, because he failed to allege or establish that the Plaintiff's coviction has been overturned admisistratively or judicially.

Plaintiff's claims for unreasonable search of his property "may lie even if the challenged evidence [is] introduced in a state criminal trial resulting in [his] still-outstanding conviction." <u>Heck</u>, 512 U.S. at 487 n. 7, 114 S.Ct. 2364. That claim would not necessarily imply the invalidity of a conviction following the admission of such evidence "because of doctrines like the

independent source rule and inevitable discovery,... and especially harmless error." Id. Plaintiff's claims for unreasonable search of his property, then are not barred by Heck, have accrued and should not be dismissed at this stage. Plainitff's have proven not only that the search was unlawful, when Defendants, enter Plaintiff's private mail box without a warrant, search his mail box, and placed a "make shift box" there without a warrant or any common courier delivery, which caused him great compensatory injury, when he was hit by a van driven by one of the Defendant, tackle, trample and stepped upon by the other defendants. This caused him great back, nee, and shoulder injuries, the closure of his businesses and emotional and mental distress and anguish.

It is well established that police cannot rely upon exigent circumstances to justify a warrantless entry where the exigent derivas from their own actions. See Commonwealth v. Arionda, 397 Pa.Super 364, 580 A.2d 341 (1990); Commonwealth v. Wagner, 486 Pa. 548, 557, 406 A.2d 1026, 1031 (1979). In Commonwealth v. Melendez, 544 Pa. 323, 676 A.2d 226, 229 (1996), the Pennsylvania Supreme Court opined: If the police created a danger that their surveillance might be discovered, because they stopped Melendez' car, they can hardly be allowed to rely on that to justify a warrantless intrusion. Commonwealth v. Williams, 483 Pa. 293, 396 A.2d 1177, 1179 (1978), assert, where the offense is not such a grave, violent offense, "The justification for proceeding without a warrant is more likely absent. The Fourth Amendment's exclusionary Rules has been construed by the United States Supreme Court as serving solely a deterrent purpose, [to police misconduct]. The exclusionary rule under Pennsylvania, Article I Section 8, [of the Pennsylvania Constitution] has been interpreted by the Court to serve the purposes of safe guarding privacy and ensuring that warrants are issued only upon probable cause. Commonwealth v. Zhahir, 561 Pa. 545, 751 A.2d 1153, 1159, n.5 (2000)(citations omitted). See Commonwealth v. Edmunds, 526 Pa. 374, 586 A.2d 887 (1997). The Court stated, of course, this undisputed proposition cannot blind them to the fact that knowledge of the likelihood of suppression of evidence improperly obtained under Article I § 8 of the Pennsylvania Constitution will inevitably deter some police

misconduct.   See Com v. Mason, 535 Pa 560, 637 A.2d 251, 257 n.3 (1993).

("Deterring police misconduct is not an end in itself.   The ultimate distinction, then, between the Federal and the Pennsylvania analysis is not that the Federal Court seeks only to deter police misconduct, and the Pennsylvania Courts seek to protects certain rights, but that the Federal court place less important than do we on the right of privacy.").   A second goal of deterrence lurks behind Pennsylvania historically dogged protection of individual privacy rights under her constitution is evidence by exception to the exclusionary rule, like the independent source doctrine, which permits the introduction at trial of evidence seized during an illegal search if the prosecution can demonstrate that the allegedly tainted evidence ultimately would have been procured through means independent of the illegality.   See Mason, 637 A.2d at 254.   Thus the Pennsylvania Supreme Court, has held that where there is probable cause independent of police misconduct that is sufficient in itself to support the issuance of a warrant, the police should not be placed in a worse situation than they would have been absent the error or violation under which the evidence was seized.   Commonwealth v. Brundidge, 533 Pa 167, 620 A.2d 1115, 1119-20 (1993); see also Commonwealth v. Rood, 686 A.2d 442, 448 (Pa.Cmwlth. 1996).   At no time did any of the arresting officer, seek a search warrant or and arrest warrant, for the search and seizure of Plaintiff's private mail box, Mail Box Etc., 2536 Eastern Blvd., York, PA 17402; furthermore, there was no exigent circumstances, to enter the private mail box the place "make shift Box," without a warrant, by Defendant Morgan.

The Pennsylvania Supreme Court relied on the two-prong test set forth by the United States Supreme Court governing the application of the independent source doctrine, "(1) Whether the decisions to seek a warrant was prompted by what was seen during the initial [warrantless] entry; and (2) whether the magistrate was informed at all of the information" improperly obtained.   Id. at 1119.   See Murray v. United States, 487 U.S. 533, 542 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988).   It is axiomatic, of course, that once a judicially created rule is promulgated, the common law system requires that Courts consider this

in its various factual guise and expand or contract the rule as justice requires.

The plaintiff's seek Declaratory, Compensatory, and punitive damages of his person and private mail box, by defendant Morgan Craul, and Peddicord, without an arrest or search warrant, without any United Parcel Service, common courier delivery. Various items taken from plaintiff's person was used to call various companies and business owners, that plaintiff's had maintained and established a good business relationship with, by defendant Morgan, ruining this plaintiff's reputation, and defaming his character. Defendant Morgan call various airlines, renter car company, business distributor in the beauty products business, business banking establishment, family and friend; which reputable harm to plaintiff's business. See Hector v. Watt, 235 F.3d 154, 157 (3d Cir. 2000). (victim of unreasonable searches or seizure may recover damages directly related to the invasion of their privacy. Bogle v. Mc.Clue, 332 F.3d 1347, 1359 (11th Cir. 2003)(upholding award of damages for emotional harm caused to victim of race discrimination). To recover compensatory damages a plaintiff in a civil right action under 42 U.S.C. § 1983 need not prove physical injuries. Hector v. Watt, Supra. A Plaintiff's party may recover punitive damages in a section 1983 case if the defendants action were committed with "malice or reckless indifference to the factually protected rights of a aggrieved individual. See Kolstad v. American Dental Ass'n, 527 U.S. 526, 119 S.Ct. 2118, 144 L.Ed.2 494 (1999). See Also Smith v. Wade, 461 U.S. 30, 103 S.Ct. 1625 75 L.Ed.2d. 632 (1983)(holding that a jury may assess punitive damages in a § 1983 case, where the defendants conduct is motivated by evil motive or intent or involves reckless or callous indifference to other's civil right's). Nothing in the York City Police Department Policy, in arrest procedure, said that you can hit a suspect with a van, in effectuating an arrest, with deliberate and reckless and callous disregards for the Plaintiff's constitutional rights. No doubt Defendants Glowczeski's hit plaintiff's with his vehicle was very extreme, and deliberate, causing severe back and shoulder injuries. Thus a non-moving party has created a genuine issues of material

fact if favor at trial. <u>Gleason v Norwest Mortgages, Inc.</u>, 243 F.3d 130, 138 (3d Cir. 2001).

The Magistrate citing <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994), that, there is no indication in the record that the plaintiff's criminal convictions have been overturned. If this court were to determine that the search and seizure of the plaintiff and his property was unconstitutional, it would necessary imply the invalidity of the plaintiff's conviction. The Magistrate, when on to state, that, "Plaintiff's has a immediate remedy during his State criminal proceeding if he believed that the defendants had unconstitutionally seized either his property or his person. That remedy was to file a motion to suppress that evidence. <u>Colburn v. City of Philadelphia</u>, 2001 WL 872960 (E.D.Pa.2001); <u>Giuffre v. Bissell,</u> 31 F.3d 1241, 1256 (3d Cir. 1994). The Supreme Court has interpret the Fourth Amendment to require adherence to judicial processes and has held that searches conducted outside the judicial process, without prior approval by a judge or magistrate are per se unreasonable. <u>United States</u>, 389 U.S. 347, 351-352, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967). Defendants created a subterfuged and pretext arrest, when they invaded plaintiff's right to privacy, by entering his privacy mail box without a warrant or probable cause, placed a "make shift box," to effectuate an arrest on plaintiff's and his person. Upon the unlawful arrest, personal and business documents, were taken from plaintiff's wallets, and seized. These documents, was later used to defamed plaintiff's, and caused him gray loses to his person and businesses. Certain items, such as his "lawyer Network Card," was destroyed, by Morgan, and no inventory receipts was ever given to the plaintiff's. Plaintiff bank accounts, personal and business accounts, was invaded by the Defendants. Plaintiff's has a legitimate expectation of privacy in his mail box and the items seized from his person, and place. <u>U.S. v. Salvvcci,</u> 488 U.S. 83, 86-87 (1980); <u>Rakas v. Illinois</u>, 439 U.S. 128, 134 (1978).

To establish a cause of action for civil right violation under Section 1983, a plaintiff must show that the defendants acted under color of law and

that the defendants action, deprive plaintiff's of a constitutional or federally secure right, privilege or immunity. See 42 U.S.C. § 1983; Kost v. Kozakiewicz, 1 F.3d 1976, 184 (3d Cir. 1993).

Under the Fourth Amendment, applies to state action via the Due Process Clause of the Fourteenth Amendment, every person has a right to be secure in their person against unreasonable search and seizures. See U.S. Const. Amend. IV., Mapp v. Ohio, 367 U.S. 643, 646-53, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). (holding that states are bound by the same Fourth Amendment principle as Federal government). The seizure of a person for purposes of the Fourth Amendment occurs when "Taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business." Kaupp v. Texas, 538 U.S. 626, 629, 123 S.Ct. 1843, 155 L.Ed.2d 814 (2003)(Intern citation omitted). See California v. Hodari D., 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991)(holding that a suspect is not seized for Fourth Amendment purposes when he flees in response to a show of authority, because the "reasonable person" test is necessary, but not sufficient to identifying a seizure).

Defendants, who were in plain clothes, failed to show authority and identify themselves, as police officers, when they approached plaintiff's at the Mail Box Etc., 2536 Eastern Blvd., York, Pa. 17402.

In United States v. Pollard, 306 F.3d 397, 410-11 (3d. Cir. 2003)("For the most part search and seizures undertaken without a warrant and probable cause or reasonable suspicion are unreasonable and violative of the Fourth Amendment.") the Supreme Court has recognized several exception to the general rule that probable cause is required for a reasonable seizure or an arrest, such as a limited seizure when an officer has reasonable suspicion of illegal activity. See Terry v. Ohio, 392 U.S. 1, 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Not one where the officers have created to make an unlawful arrest, or (it must be recognized that when a police officer accost an individual and restrains his freedom to walk away, he was "seized" that person). Court have

33.

treated even brief investigatory stop as seizure under the Fourth Amendment, subject to at least the "reasonable suspicion" standard out line in Terry v. Ohio, See United States v. Arvizu, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002).

The Court have held that a seizure is unreasonable if the invasion that the seizure entails outweight the need for the seizure. Camara v Municipal Court, 337 U.S. 523, 534-37, 87 S.Ct. 1727, 13 L.Ed.2d 930 (1967); United States v. Montoya de Hernandez, 473 U.S. 531, 537 105 S.Ct. 3304, 37 L.Ed.2d. 381 (1985)(holding that reasonableness depends on the nature of the seizure, the surrounding circumstances and balance of individual's Fourth Amendment rights with legitimate government interests). (Citing, inter alia New Jersey v. T.L.O., 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985) and United States v. Villamonte-Marquez, 462 U.S. 579, 103 S.Ct. 2573, 77 L.Ed.2d 22 (1983). The placed of a "Make shift Box," at plaintiff's private mail box, without probable cause, or any valid seized warrant, to subterfuged an pretext arrest, without any governmental interdiction, and contraband in the State of Pennsylvania, was outrageous, and shock the conscious level. Defendants created danger, when plaintiff's was subsequently hit by a government vehicle, driven by one of the Defendants, which cause injuries, to the plaintiff's.

The Magistrate stated, "It appears from the York County Court of Common Pleas criminal docket in this matter, that plaintiff's attorney did, in fact, seek to have certain evidence seized during the arrest excluded, and that these pre-trial motions were denied. (Doc. No. 149, Ex.1). As a result, the plaintiff's Fourth Amendment search and seizure claim against the police defendants must also fail; for these same reasons, the Fourth Amendment search and seizure claim against defendant Sipes must also fail."

This Court should note that the search and seizure claims plaintiff's challenged in his suppression motion, was never related to the placing of the "make shift box" at plaintiff's mail box, without a warrant, counsel never raised the placing of the "make shift box" by defendant Morgan, trial counsel never filed a brief in suppose of the Mail Box Etc. 2535 Eastern Blvd., search.

Counsel never challenged the procedural conduct of these Defendants placing a make shift box at the plaintiff's private mail box, or whether Defendant Sipes, actually open up that box in California, himself, or paid the Clerk, for her service, in assisting him in his investigation, of his quest for drugs parcels; in violative of plaintiff's Fourth Amendment rights. A private party has taken the decisive step that caused the [alleged] harm to the plaintff's, and the question is whether the state was sufficiently involved to treat that decisive conduct as state action. National Collegiate Athletic Ass'n v. Tarkanian, 488 U.S. 179 109 S.Ct. 454, 102 L.Ed.2d 469 (1988).  State action may be found if "there is a sufficient close nexus between the state and the challenged action of the [private] entity so that the action of the latter may fairly be treated as that of the state itself.  See Jackson, 419 U.S. at 351, 95 S.Ct. at 453.  State action msy be found if private party has acted with the help of or in concert with state officials; specifically when the private party has been "delegated... a power "traditionally exclisively reserved to the state. Flagg Bros., 436 U.S. at 157, 98 S.Ct. at 1734 (quoting Jackson v. Metropolitan Edison Co., 419 U.S. 345, 352, 95 S.Ct. 449, 454, 42 L.Ed.2d 477 (1974).

Plaintiff's Fourth Amendment right are in violation, because of a subterfuge and pretext arrest creat by the defendants to entrapped plaintiff's and the cause him irreparable harm. [see Plaintiff's deposition transcripts, 5/25/04].  The Magistrate had overlooked the fact that there was no probable cause, no search warrant, or arrest warrant, to enter plaintiff's private mail box to search and arrest him.  U.S v. Garcia, 23 F.3d 1331 (8th Cir. 1994)(Court is not impowered to suspend constitutional gaurantee, so that government can figth war on Drugs).

Heck 512 U.S. at 487 n. 6, 114 S.Ct. 2364, as set out a bright line rule for such § 1983 damages action in the future, apparently requiring a favorable termination of the criminal proceeding in all cases; additionally the Court provided some guidance for determining when a § 1983 damages action necessarily implied the wrongfulness of a criminal conviction.  That conflict is clear

because for Plaintiff to be convicted of resisting arrest the State must prove that he intentionally prevented officers from effecting a lawful arrest, the lawfulness of which plaintiff's would have to negate as an essential element of his Fourth Amendment claim.  Id.  If Plaintiff's has been charged with resisting that arrest, his Fourth Amendment claim for seizure of his person has not accrued.  Smith, 87 F.3d. at 113.  If he has not been so charged, however, his claim has accrued and the Claim should be allowed to proceed.  Plaintiff's avers, that, "He was never charged with resisting arrest; even when these defendants alleged that , "plaintiff's fight with them," which was not true!  See James v. York County Police Dept., 167 F.Supp.2d 719 (M.D. Pa. 2001).

Defendants Morgan, spearheaded the investigation, on January 8, 2001, through 12, 2001, when plaintiff's arrested without a warrant; furthermore, it would not invalidate his conviction, because plaintiff's procedural Due Process was violative, by Defendant Morgan, pursuant to defendant investigative conduct and technique, in violation of Federal laws, Pennsylvania laws, State Attorney General Practice, and York City Police Department procedures.  This also apply to Defendant Sipes, under California laws, and Department of Justice, practice; as it related to search and seizure, warrantless arrest,  and arrest without probable cause.

The Supreme Court held in City of Indianapolis v. Edmond, 123 S.Ct 447, 454 (2000)9 that a check point designed to  interdict narcotic served only the general interest in crime control, which is not sufficient to justify an exception to the reasonable suspicion requirement for a stop.  See California V. Hadari D., 499 U.S. 621, 625-26 (1991).

Conversely, the Court in Heck, provided some guidance for necessary imply the wrongfulness of a criminal conviction; a suit for damages attributable to an alleged unreasonable search may lie even if the challenged search produced evidence that was introduced in a State criminal trial resulting in the § 1983, plaintiff's still-outstanding conviction [b]ecause of doctrines like independent source and inevitable discovery, and especially harmless error..." Heck at

2372, 73 n.7. (citation omitted).

Neverless, because of Heck's accrual rule and the inevitable uncertainty hovering over the question of whether the merits of a particular § 1983 claim, if successful would undermine a conviction or imprisonment, Heck, does create some serious practical problems for potential plaintiff's contemplating § 1983 damages action.    Thus, if a plaintiff file suit before the conviction is overturned, it could turn out that the § 1983 action has not yet accrued and will be dismissed under Heck.    On the other hand; if a plaintiff waits until the conviction is overturned before filing a § 1983 damages action, it could turn out that § 1983 action accrued earlier and the claim would be time-barred.

The Supreme Court granted Certiorari and then not unexpectedly, reversed and remanded in Edwards v. Balisok, 117 S.Ct. 1584, 137 L.Ed.2d 906 (U.S. 1997).    An unpublished Ninth Circuit decisions holding that Heck did not bar the plaintiff's damages and declaratory relief claim that his good-time credits where denied in prison disciplinary procedures that violated procedural due process.    According to the Ninth Circuit, the Plaintiff's claim did not implicate the lawfulness of his continuing confinement, because the challenge was to the procedures, rather than the result.    Gotcher v. Wood, 66 F.3d 1097 (9th Cir. 1995), on which Edwards relied for the distinction between a claim for using the wrong procedure and a claim for reaching the wrong result.

The Defendant have failed to specify what facts and evidence supported the finding of guilt could go forward, because, if the claim were successful, it would not necessarily imply the invalidity of the deprivation of Plaintiff's constitutional right; when interdiction procedure was improperly used by the Defendants to conduct controlled delivery, by placing "Make shift box," at Mail Box Etc., 2536 Eastern Blvd.,, York, PA 17402, without any warrants, to subterfuged a pretext arrest, upon plaintiff retrieving said make shift box. Most importantly, there was no controlled substances in the State of Pennsylvania at the time plaintiff's, was arrest by this Defendants, even through the Defendants claimed in the "Affidavit of Probable Cause," stated by, Defendant Craul, on January 10, 2001, that the controlled substance was

forwards to the Pennsylvania Crime lab, when there was no Drugs present or Pennsylvania, to have probable cause to arrest. See Muhammad v. Close, 123 S.Ct. 2573 (U.S. 2003); James v. York County Police Dept., 167 F.Supp.2d 719 (M.D.Pa. 2001). Also see [Deposition Transcript, 5/25/04, pp. 16-44 and 76-128, plus all corrections.].

Defendants initiated an unlawful arrest, by conspiring to entrapped Plaintiff's into picking up a make shift box, placed at plaintiff's private mail box, by the defendants, in order to subterfuged an pretext arrest. This amount to a wrongful procedures, denying plaintiff's of his constitutional due process rights, under subjective and objective procedural due process, and equal protection of the laws. This would not draw into question the validity of Plaintiff's convictions.

For these reasons plaintiff's claim under unreasonable search and seizure should be able to proceed.

Plaintiff's Fourth Amendment Excesive Force Claim

Plaintiff's Fourth Amendment excessive force claim, the Magistrate recommended, should be dismissed, because defendants are entitled to qualified immunity. Citing Anderson v. Creighton, 483 U.S. 635 (1987), and Saucier v. Katz, 533 U.S. 194 (2001).

The Defendants maintain that they are immune from Section 1983 damage claims if reasonable officials in their positions could have believed that their actions or decisions were lawful in light of existing law and the information they possessed at the time they acted. The Defendants claim that, plaintiff has failed to allege any constitutional violation, at all, in relationship to the used to effectuate his arrest and even if he did so, no reasonable jury could ever find for the plaintiff based on the facts presently in the record. In which the Magistrate agreed.

Plaintiff had made a clear showing of the violation of his constitutional right by the defendants, in which a reasonable jury would find the defendants, in violation of plaintiff, constitutional right based upon the facts and records presented, along with Apprendix and Exhibits. Also see [Deposition Transcript,

38.

5/25/04].

The Third Circuit has held that to state a claim for excessive force under the Fourth Amendment, " a plaintiff must show that a "seizure occurred and that it was unreasonable." Abraham v. Raso, 183 F.3d 279, 288 (1999)(quoting Brower v County of Inyo, 489 U.S. 593, 599, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989). If is quite clear, that plaintiff's was arrested at the Mail Box Etc., 2536 Eastern Blvd., York Pennsylvania 17402, on January 10, 2001, without a warrant, after defendant Morgan, placed a "Make shift Box" at plaintiff's private mail box, to subterfuged and unlawful and illegal arrest without probable cause. See [Defendant Summary Judgment Exhibit 4]. Please note; there was no "controlled substance," (marijuana), in the possession of Plaintiff's, his mail box, or in the state of Pennsylvania, at the time these defendants, provided a tainted "Affidavit of Probable Cause," to effectuate an arrest and detained plaintiff. [Plaintiff Apprendix and Exhibits, of Defendant Morgan Note of Testimony].

A claim for excessive force is "properly analyzed under the Fourth Amendment's objective reasonableness" standard, rather than under a substantive due process standard." Graham v. Connor, 490 U.S. 386, 388, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). See also Tennessee v. Garner, 471 U.S. 1, 8-9, 105 S.Ct. 1694 85 L.Ed.2d 1, (1985). (Noting that several Supreme Court cases dealing with reasonableness under the Fourth Amendment framed the issue as "whether the totality of the circumstance justified a particular sort of search or seizure).

Now Defendant Morgan, after, receiving information, from Defendant Sipes, from California, took it upon himself, and planted a "Make Shift box," at plaintiff's private mail box, without a warrant, exigent circumstances, United Parcel Service, delivery, or drugs interdiction, for plaintiff's to retrieved, upon plaintiff's passively retrieving said "make shift box" from the Mail Box Etc., Clerk, that he had a box waiting for him, plaintiff's exited the store where he was approached by the Defendants, Morgan, Westmoreland, Craul,

Peddicord, Kessler, and other FBI Agents, whom came running towards him, in
plain clothes, and didn't identified themselves, as police officers, "these
defendants, looked like "Thugs."  In fear of great bodily injuries, plaintiff's
moved back towards the Mail Box Etc., establishment, when he was deliberately
and intentionally hit by a vehicle driven by defendant Glowczeski, where
plaintiff's sustained physical injuries, emotional and psychological trauma,
and mental anguish. Defendant Glowczeski's, didn't disputes the facts that
plaintiff's  collided or was hit by the vehicle, but only stated, that,
"Plaintiff's run into his vehicle;" the court should note that at no time,
did Plaintiff attempt, to run, flee or evaded these defendants.  Plaintiff
was tackle, trampled upon, handcuffed, and stepped upon, while he was on the
ground, by all these defendants.  He was later lifted off the ground, and placed
in a van, where he was denied his Miranda warning, and questioned by defendant
Morgan.  Plaintiff's requested to speak to his Attorney on several occasions
to defendant Morgan, but was denied, because, defendant Morgan, feel, giving
plaintiff's a call to his Attorney, would jeopardized his investigation.
Plaintiff's was held hostages without a phone call, or any medical care, for
over seventy two hour.  While Plaintiff's was on psychotic medication at that
time, he was not allowed to contacts, any outside help to retrieved his
prescription medications, prescribed by the psychiatrist at any time.  At no
time did any of the Defendants, offered their assistance to assist plaintiff's
with any of his medical concerns; excepted for defendant Westmoreland, while
Plaintiff's was at the York City Police Department; who was very aggressive
towards this plaintiff, when he tackle this plaintiff after he was intentionally
and deliberately hit by the government vehicle, drive by defendant Glowczeski's.
Defendant Westmoreland, who was Defendant Morgan supervisor, order Morgan,
to release plaintiff's immediately, but Morgan refused to obey his superior
orders, after Defendant Westmoreland left the station, defendant Morgan, then
lock back plaintiff's up in a cell, to further his investigation.  If
plaintiff's was the aggressor, he would have been charged with resisting arrest,
evading a peace officer, and assault, by deadly force.

Model Penal Code § 5.11(2) (1994)(defining "deadly force" as "force which the actor uses with the purpose of causing or which he knows to create a substantial risk of causing death or serious bodily harms.")(citing In re City of Philadelphia Litigation, 49 F.3d 945 (3d. Cir. 1995) and Matthrews v. Jones, 35 F.3d 1046, 1050-51 (6th Cir. 1994). An officer's actions need not actually wound or kill a person to be considered a display of deadly force. See Ryder v. City of Topeka, 814 F.2d 1412, 1416 n.11 (10th Cir. 1987).

Defendant Glowczeski's using a government vehicle to hit plaintiff's, intentionally and deliberately, is an act of deadly force, to cause great bodily harm, to stoke this plaintiff's to the ground. In several of Defendant Glowczeski's interrogatories, upon discovery, plaintiff's brought to this Court attention of defendant Glowczeski, Peddicord and Craul, discriminative pattern of referring to Plaintiff's of "Black male" draw into question, their mind set on racial discrimination, while being an public servant, as to their duties as a police officers. Their deliberate acts, has cause plaintiff's severe back nee, and shoulder injuries, constant headaches, and weight loss. See [ Exhibit 6. Plaintiff's partial medical records, from S.C.I. Rockview; Plaintiff's awaits his record from York County Prison, along with his psychological records, showing emotional and mental stress, trauma and anguish.]

The Supreme Court, deadly force is only reasonable when "it is necessary to prevent the escape [of a suspect] and the officers has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officers or others. Tennessee v. Garner, 471 U.S. 1, 105 S.Ct. 1994, 85 L.Ed.2d 1 (1985).

Here Plaintiff was not harm or dangerous, but was only passively retrieving mails, notable a make shift box, planted there by Defendant Margon, plaintiff's thought to believe coming from a legitimate business, plaintiff had conducted business with in the past, even though plaintiff's didn't take notice of the sender of the "make shift box," because he was not concerned or associated with any illegal activities, with the shipping of drugs from California to Pennsylvania, and had no knowledge of it. Plaintiff's was attacked and run

41.

over with a van by the defendants.

The Third Circuit drawing on Garner and Graham v Connor, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), set forth the following standard for analyzing whether the use of deadly force was reasonable under the Fourth Amendment. "Giving due regard to the pressure faced by the Police, was it objectively reasonable for the officers to believe in light of the totality of the circumstance, that deadly force was necessary to prevent the suspect's escape, and that the suspect posed a significant threat of death or serious physical injury to the officers or other.... The factors to consider include the severity of the crime at issue, whether the suspect pose an immediate threat to the safety of the officer or others and whether he is actually resisting arrest or attempting to evade arrest by flight." Abraham v. Raso, 183 F.3d 279, 288-96 (1999)(citing Graham at 396, 109 S.Ct. (1965). These defendants failed to identify themselves as police officers, at the time they approached plaintiff's in the parking lot of Kingston Square Center, 2536 Eastern Boulevard, York, PA., furthermore, plaintiff's never evade, or resist arrest; neither was he charge with resisting arrest. Therefore, this court should consider the totality of the circumstance, the nature of the seizure, (entrapment) and the lock of a justification for the seizure; without probable cause, a search or arrest warrants, showing that Plaintiff's Fourth Amendment right was violated under the United State Constitution. The Defendants as of this date, as not presented a valid arrest or search warrant to justified their encounter, and search of plaintiff's private mail box, at Mail Box Etc., 2536 Eastern Blvd., or his arrest, on January 10, 2001, at 10:35, a.m. in the parking lot.

Plaintiff's has state clearly that his constitutional right was violated, furthermore defendants are experience officers, in law enforcement, should have known, that they were violating this Plaintiff's constitutional right, when they placed a make shift box, at the mail box to conduct a subterfuge arrest without a warrant; then created danger, when this plaintiff's, retrieved said box, and was deliberately, intentionally, recklessly and sadistically,

hit by a vehicle driven by the defendants. This was a blatant act of excessive force; that even the Magistrate Judge agreed was extreme. This as cause tremendous injuries, in which plaintiff's still suffer from severe back pain. Plaintiff's had made numerous complaints to prison medical staffs, about these injuries. [ See exhibit 6, Plaintiff seeks addition medical records, from the York County Prison, dated, 1/10/2001 through 3/14/2002].

Defendants would not of believed that their action were lawful; when defendant Morgan, who spearhead the investigation, ordered, that, Plaintiff's be taken down by any means necessary. [See Plaintiff's Trial Note of Testimony, 11/12-15/01, Agent Westmoreland]. Defendant Peddicord proceeded to seized all personal property from plaintiff's person.

In Saucier, Katz claimed that the officer needlessly shoved and push him, put him into a van, and then detained him for a brief time. The District Court ruled that the law governing excessive force claims was clearly established at the time the Saucier acted, and that in the Fourth Amendment context, the qualified immunity inquiry is the same as the inquiry made on the merits. As a result, the district court determined that Saucier was not entitled to summary judgment. Saucier, 533 U.S. at 199. The Ninth Circuit Court of Appeals affirmed. Saucier v. Katz, 194 F.3d 962 (1999). The United States Supreme Court reversed and remanded; concluding that Saucier was entitled to qualified immunity.

The United States Supreme Court has made clear that the Fourth Amendment reasonable standard governs claim based on the use of excessive force during arrest. Graham v. Connor, 490 U.S. 386 (1989). Court are divided as to whether the Fourth Amendment continues to apply once the arrest comes to an end or if , instead, the Due Process Clause take over at that point.

In Anderson, it is emphasized that the right the officials is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right... The relevant dispositive inquiry in determining whether a right

is clearly established is whether it would be clear to a reasonable officer
that his conduct was unlawful in the situation he confronted...

Plaintiff's constitutional right was clearly established, when defendant
enter plaintiff's private mail box, to place "Make Shift Box," without a
warrant, initiating entrapment, in violation of Pennsylvania Criminal Statute,
Rule 313(a), of Title 18 Pa.C.S. and Federal Laws and Constitutional Rights.
Not only that, but his action could have cause the death of this Plaintiff
when he put Plaintiff's life at stake, allowing a vehicle to stoke this
Plaintiff's driving by his fellow co-worker, defendant Glowczeski; resulting
in injuries.  Plaintiff's was never giving immediate medical, or was very
assisted by the defendants, to the hospital, to be check out, after the
constitutional violation.  This force was not in good faith effort to maintain
and restore discipline, but was maliciously and sadistically to cause harm
to the plaintiff's.  Where and officers create a unjust situation, his action
cannot be justify be the illegal search and seizure.

... In Graham the Court held that...[b]ecause "police officers are often
force to make split-second judgments----in circumstances that are tense,
uncertain, and rapidly evolving---about the amount of force that is necessary
in a particular situation...[t]he reasonableness of the officer's belief as
to the appropriate level of force should be judged from that on-scene
perspective...the Court set out a test that cautioned against the "20/20 vision
of hindsight" in favor of deterrence to the judgment of reasonable officers
on the scene...[G]raham set forth a list of factors relevant to the merits
of the constitutional excessive force claim., "requir[ing] careful attention
to the facts and circumstances of each particular case, including the severity
of the crime at issue, whether the suspect poses an immediate threat to the
safety of the officers or other , and whether he is actively resisting arrest
or attempting to evade arrest by flight... The records presented to this court
clearly states, that Plaintiff's did not evade or resist an arrest; if so,
he would have clearly had been charge with resisting an arrest.  Plaintiff
with never charged with such offense!  Plaintiff's was never arm or dangerous,

or poses a threat. Guided by Saucier, and in the interest of judicial economy, and in an abundance of caution, the Magistrate, accepted the facts that the Plaintiff's allegations, in regarding defendant Glowczeski operation of the van, constituted a Fourth Amendment excessive force violation claim under Graham v. Connor, but when on to say that plaintiff's failed to show that he had suffered any injuries. The Magistrate, when on to state that, plaintiff's other excessive force claims, those not give rise to a Fourth Amendment claims, in light of the complete lack of any evidence of physical injury presented by any party to this case. The Magistrate went on to state, that after viewing the records, Plaintiff's stated in his Deposition hearing, plaintiff's stated that, "the van was proceeding slowly in the parking lot of Mail Box Etc., and he admitted that he never asked for medical assistance at any time while he was confined at York County Prison for the period January 10, 2001 through 12, 2001. (Doc.NO. 168, pp.54, 59)("...it probably wasn't his intention to hit me..."). This Court should note that, plaintiff's did requested medical treatment, but was placed in the Segregation Unit at the York County Prison, while Defendant Morgan, continued his investigation. The facts that Plaintiff's was not allow to make a phone call to contact his attorney or family, why would this court believe that he would be provided medical service, if it would reveal defendants wrong doing. Plaintiff's, stated in his deposition that the vehicle was driving at normal speed, and there is no why this plaintiff's could have known what Defendant's Glowczeski's was thinking when he used the van to hit Plaintiff's his action speak for itself. Furthermore, three (3) and one-half (½) years, have elapse, since the incident, for plaintiff's to remember the accurrate speed off the vehicle. The Magistrate misconstrued the whole deposition transcripts, by the Attorney, Jason Guirintano, who tried to elicited information from this plaintiff's. The Code Of Civility states that attorneys should "treat all participants in the legal process in a civil, professional, and courteous manner at all time's Code of Civility, Rule II(1). Counsel was just looking out for the best interests of his client, at the same time abusing his power. That was one of the reasons, why plaintiff's requested counsel

to represent him at the Deposition hearing, held on 05/25/04  2004 which was

denied, by the Magistrate. [See  the Deposition transcript, pp. 16-44 and

76-128]. Kolstad v. American Dental Ass'n, 527 U.S. 526, 119 S.Ct. 2118, 144

L.Ed.2d 494 (1999), the Supreme Court held that a defendant state of mind and

not the egregious conduct is determinative in awarding punitive damages, in

a civil rights case. Id.  The true facts of the matter was that Plaintiff's

was deliberately and intentionally hit by the vehicle Defendant Glowczeski's

was driving and suffered injuries.  The Department of Corrections, S.C.I.,

Rockview and York County Prison, are in disputes, for turning over this

plaintiff's psychiatric and medical records, to present to this Court, showing

serious medical defect.  This Plaintiff's still suffered from mental trauma

and emotional distress; along with precocious long term physical suffering.

Plaintiff's was detained subsequently after the initial arrest, while

Defendant Morgan when out and gather other information, then came back and

charged plaintiff's with other offenses.  Fourth Amendment standard to assess

the constitutionality of the duration of or legal justification for prolonged

warrantless post-arrest, pre-arraignement custody.  See County of Riverside

v. Mclaughlin, 500 U.S. 44, (1991); Gerstein v. Pugh, 420 U.S. 103, 125 (1975).

There could be no objective standard to reasonable when Defendants use a vehicle

to hit plaintiff's, to the ground, tackle him to the ground, trample and stepped

upon him, then upon deliberate indifference, lack him up in a cells, without

any medical care.  These actions were orchester, by defendant Morgan, when

he first initiated the make shift box, and placed it at plaintiff's private

mail box illegally, without any probable cause, upon Defendant Sipes, phone

call; then ordered, the other defendants to take him down., by any means

necessary, even if it take hitting plaintiff's with a government vehicle causing

severe injuries.  Defendants conducts are conscious shocking and therefore

quality immunity should not be granted. Graham v. Connor, 490 U.S. 386 (1986).

Defendant, were well aware of there actions and conscious of plaintiff's

constitutional rights, and their actions in violating such rights.

The qualified immunity analysis involves a multi-part inquiry, first a

constitutional right. <u>Saucier v Katz</u>, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)(citing <u>Siegert v. Gillery</u>, 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991). Second, the right allegedly violated must be clearly established such that a reasonable person would have been aware of it. <u>Id</u>. at 201-02 (citing <u>Anderson v. Creighton</u>, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 l.Ed.2d 523 (1987). In this regard a court must determine whether the defendant's actions were objectively reasonable under current Federal law. <u>Gruenke v. Seip</u>, 225 F.3d 290, 298-99 (3d Cir. 2000). The burden is on the defendants and supervisor defendants, however to establish, that they are entitled to qualified immunity. <u>Beers-Capital v. Whetzel</u>, 256 F.3d 120, 142, n.15 (3d Cir. 2001) (Citation omitted).

The Magistrate claimed that from the records, Plaintiff's show that being hit by the Defendants vehicle, he has show no injury. Plaintiff's has set forth in his Declaration In Support, from his medical records, from the Department of Correction, S.C.I.-Rockview, and his anticipating medical records, from the York County Prison, in which, plaintiff's signed waiver, to have such medical documents forward, to SCI-Rockview, medical records. Plaintiff's has made numerous complaints, to prison medical staffs, about his severe back injury, nee and shoulder, injuries, severe headaches, emotional and mental stress, trauma, and anguish plaintiff's suffered him this impact.

Again the Magistrate, when on to state that Plaintiff's in his Deposition, state that the van was proceeding slowly in the parking lot of Mail Box Etc., and that, he never asked for medical assistance at any time while he was confined at York County Prison, for the period January 10, 2001 through January 12, 2001. (Doc. NO. 168 pp. 54, 59). Apparently the Magistrate, viewed only the portion of the Deposition Transcripts, the defendants, attorney's, Jason Guirintano, presented to the Court. Plaintiff's has presented the additional portion of the Deposition Transcripts, into evidence, as Exhibit 5. Plaintiff's clearly established that he was confronted by Defendant Westmoreland, at the York City Police Department, who was concerned about plaintiff's physical well

being, and order defendant Morgan to release, plaintiff's, who after, his supervisor, defendant Westmoreland, left the Station, proceed, to lock back up plaintiff's in a cell, and detained him without any medical treatment, or being taken to the York County Hospital, to check, for injuries.   After Plaintiff's was taken to the York County Prison, he was lack in the Segregation Unit, without any medical attention, from the medical staff's or a doctor. Has clearly stated, by Plaintiff's, the vehicle was traveling at a speed, enough to hit plaintiff, throw him to the ground and causes severe, injury.

The Magistrate took, quots,from the Deposition Hearing, held on May 25, 2004, where, defendants counsel tried to elicits, statements, from plaintiff's, he quoted from the record, ("...It probably wasn't his intention to hit me..."). The Magistrate, has taken this out of context.  Plaintiff's couldn't have known what is in the mind of Defendant Glowczeski's, the fact of the matter, was that he used the van and intentionally stoke plaintiff's to the ground.  Further more three-one half years, have elapsed since, this incident had occurred, and there are strong possibility, that memory loss, could have happened.  [See Defendant Glowczeski, Interrogatories, First and Second].  This Plaintiff's was never charged with resisting arrest, or evading a peace officer. Plaintiff's claim of excessive force, is of arguable merits, and does not necessarily conflict with a conviction for resisting arrest.  That is because "it is possible for a finding that [Plaintiff] was resisting arrest to co-exit with a finding that the police used excessive force to subdue him.  Nelson v. Jasharek, 109 F.3d 142 (3d Cir. 1997)(quoting Simpson v. City of Pickens, 887 F.Supp. 126 (S.D. Miss 1995).  Therefore whether charged with resisting arrest or not Plaintiff's claim of excessive force not be dismissed, and summary judgment should not be granted.

In a recent Third Circuit decision, Kopec v. Tate, 361 F.3d 772 (3rd Cir. 2004), the Court, held, right of arrestee's to be free from use of excessive force in course of being handcuffed  was clearly established precluding qualified immunity for arresting officer in disorderly conduct arrestee's § 1983 Fourth Amendment action against officer alleging that officer placed

excessively tight handcuff K on Darrestee and needlessly failed to respond for

10 minutes to arrestee's place to loosen them, resulting in permanent nerve

damages. U.S.C.A. Constitution, Amendment 4; 42 U.S.C.A. § 1983. The Court

when on to say that the arrestee's right to be free from use of excessive force

in course of handcuffing was clearly established, precluding qualified immunity.

Plaintiff's was not harm and dangerous, neither was he resisting arrest,

or evading police officers, whom have failed to identify themselves. Has

clearly stated in plaintiff's Complaint, these defendants, "looked like thug!"

came running toward plaintiff, attacking him, after he had passively retrieved

a make shift package, placed at his private mailed box, by defendants. There

was no drugs, or contraband in the state of Pennsylvania, when plaintiff's,

was arrested; neither, did he had any intention to pick up any drug parcel.

Plaintiff's had no knowledge of any Controlled Substance, being shipped from

California, by Defendant Sipes. For which Defendant, Sipes, has created and

cause eminent danger in initiating the cause of action and then, requested

further interrogation of this plaintiff's by defendant Morgan, on January 11,

2001; he later traveled to Pennsylvania, to testified, at plaintiff's criminal

trial, shipped contraband from the state of California, to the Pennsylvania

Attorney General Office, to defendant Morgan; therefore Defendant Sipes,

actions, was not minimal, but extensive, to warrant personal jurisdiction,

which in no way would violate the due process clause of the Fourteenth

Amendment. See Pennsylvania's long arm statue, 42 Pa. Cons. Stat. Ann. §

5322(b). Federal Rule 4, Provident National Bank v. California Federal Savings

and Loan Association, 319 F.2d 434 (3d Cir. 1987). Also see International

Shoe Co. v. Washington, 326 U.S. 310, 316, 90 L.Ed.95, 66 S.Ct. 154 (1945).

Dollar Sav. Bank v. First Sec. Bank of Utah, 746 F.2d 208, 211 (3d Cir. 1984).

Plaintiff's Fourth Amendment right was violated, when the state created

danger, when officer placed "Make shift box," at plaintiff's private mail box,

without a warrant, then rush plaintiff's has he exited the Mail Box Etc.,

without identifying themselves; then used deadly force, by using a vehicle

to hit Plaintiff's to the ground, then trample, handcuffed, and stepped upon

him, causing him juries, pain and long suffering. See Annesty America v Town of West Hartford, 361 F.3d 113 (2nd Cir. 2004)(fact issues existed as to whether degree of force used by police officer was objective reasonable). **Schall v. Vazquez**, 322 F.Supp.2d 594, (2004) U.S. Dis. Lexus 11231 (Defendant used deadly force).

In Doe v. Groody, 361 F.3d 232 (3rd Cir. 2004), the Third Circuit rule that the strip-search exceeded the scope of search warrant, and in the absence of probable cause violated the plaintiff's Fourth Amendment right. **Defendant, Morgan,** probable cause to enter plaintiff's private mail box, the placed make shift box, in which plaintiff's has a legitimate expectation of privacy, and which society consider the be reasonable and legitimate. See United States v. Katz, 389 U.S. 347, 351 (1967, Coolidge v. New Hampshire, 403 U.S. 443, 465 (1971).

Summary judgment, for the defendants should not be granted as to quality immunity.

The Magistrate when on to state that a trial date should be set as to the one remaining Fourteenth Amendment claim against defendant "York County Police Deportment," this court should note, that, defendant should be referred to "York City Police Department. This Court should denied defendants motion for summary judgment and set a date for the defendants: Morgan, Westmoreland, Kessler, Craul, Peddicord, Fells, and Glowczeski, in this matter.

### Conclusion

**WHEREFORE,** Plaintiff's, Tyrone P. James, respectfully, request, this Court to denied, summary judgment in respect to the names defendants, Morgan, Westmoreland, Craul, Peddicord, Glowczeski, Kessler, Sipes and Fells, in the above-captioned matter, and set forth a date for trial in this matter.

Respectfully submitted,

Tyrone James

Tyrone P. James,

EX 9451

P.O. Box A.
**Bellefonte, PA 16823-0820.**