## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TYRONE P. JAMES,** | : | |
| **Plaintiff** | : | |
| | : | **CIVIL ACTION NO. 1:01-CV-1015** |
| **v.** | : | |
| | : | **(Judge Kane)** |
| **YORK COUNTY POLICE** | : | |
| **DEPARTMENT, JAMES H. MORGAN,** | : | |
| **RICHARD PEDDICORD, RAYMOND** | : | |
| **E. CRAUL, GENE FELLS, DET.** | : | |
| **KESSLER, CO. BAYLARK, RANDY** | : | |
| **SNIPES, BRIAN WESTMORELAND,** | : | |
| **and  DETECTIVE GLOWCZESKI,** | : | |
| **Defendants** | : | |

## MEMORANDUM AND ORDER

### I.     Introduction

This case arises out of the circumstances surrounding Plaintiff's January, 2001 arrest, detention,

interrogation and prosecution for state criminal charges.  Plaintiff's complaint is brought pursuant to 42

U.S.C. § 1983 against the York County Police Department and several individual police and

correctional officers.  Many of the Defendants named by Plaintiff in his amended complaint have been

dismissed in dispositive motions; in addition to the York County Police Department, the following

Defendants remain: Randy Sipes, James Morgan, Brian Westmoreland, Richard Peddicord, Raymond

Craul, Detective Glowczeski, Detective Kessler, and Gene Fells.  The claims remaining against these

Defendants following their previous motion to dismiss and Order of this Court adopting the Magistrate

Court's Report and Recommendation are:  (1) Fourth Amendment claim of excessive force in the

course of an arrest; (2) Fifth Amendment claim of denial of Miranda rights and continued interrogation;

(3) Fourth Amendment claim of unlawful search and seizure; (4) Eighth Amendment claim of excessive

bond.  (Doc. Nos. 45, 79, 93.)  Plaintiff's only claim against Defendant Sipes is for unlawful search and

seizure in violation of Plaintiff's Fourth Amendment rights.

Defendant Sipes has filed a motion to dismiss the claim against him, arguing that this Court lacks

personal jurisdiction and that Plaintiff fails to state a claim upon which relief can be granted.  The other

Defendants (Morgan, Westmoreland, Peddicord, Craul, Glowczeski, Kessler, and Fells, hereinafter

"police Defendants") have filed a joint motion for summary judgment, arguing that Plaintiff's remaining

claims against them must fail as a matter of law.   The Magistrate Court issued a Report and

Recommendation on August 17, 2004, recommending that each of these dispositive motions be granted

in their entirety.  In Plaintiff's extensive fifty page filing, he objects to every detail of the Report and

Recommendation.  After careful consideration of the parties' filings, this Court will dismiss the claim

against Sipes and grant the police Defendants' motion for summary judgment.

## II.    <u>Factual Background</u>

The facts for purposes of these motions, drawn from the extensive record, and taken in a light

most favorable to Plaintiff, are as follows.  Defendant Sipes, a Special Agent for the Bureau of Narcotic

Enforcement in California (Doc. No. 135, Declaration, ¶ 1) received a call from a Mail Boxes, Etc.

employee within his jurisdiction sometime in January 2001.  The employee had intercepted a suspicious

package and contacted Sipes as per a previous discussion.  Sipes went to the Mail Boxes Etc. and

found that the already-opened package contained approximately nine pounds of marijuana.  He then

contacted authorities in Pennsylvania and reportedly told them that he would send them the original

package, and further provided the addressee and the weight of the box, but no other descriptive details.

At some point before they received the package from California, Officers Morgan and Kessler concocted a "make-shift box," with the same address as the intercepted box (Express Expressions), that did not contain marijuana.  The police had previously determined that Plaintiff was the registered lessee of the box, which was located at the Mail Boxes Etc. on Eastern Boulevard in York.  The police delivered the box to that location and waited for James to pick it up.  On January 10, 2001, James collected his mail at Mail Boxes Etc., and presented a slip he found in his box to the clerk to receive the package.  The clerk, Teresa McCoy, gave him the package that had been delivered by the York Police Officers, and James exited the building with the package.  The box did not contain any contraband and Plaintiff states that he had no knowledge of its supposed contents.

Upon exiting the store, two plain-clothed York County law enforcement officers ran towards Plaintiff, who dropped or threw the box and began to return to the Mail Boxes Etc.[1]  Defendant Glowcseski hit Plaintiff with the side of the van he was driving in order to stop Plaintiff.  (Doc. No. 200, Ex. 4,  Deposition of Plaintiff at 19; Doc. No. 168, Deposition of Plaintiff at 59.)   The van was not moving fast and Plaintiff stated that "it probably wasn't his intention to hit me like you running somebody on the freeway," but that Glowcswski was going a "nominal speed" in order to stop him.  (Doc. No. 168, Deposition of Plaintiff at 54, 58, 59.)  After falling to the ground from being hit by the van, Plaintiff was able to immediately get up, at which time some of the officers tackled him, handcuffed

---

[1]Defendants maintain, as they did at trial, that one of the Officers held out his police badge and identified himself as a police officer.  They also state that Plaintiff ran from the police after throwing the box toward the police.  Plaintiff disputes both of these facts, however, they are not determinative to the motion.  He did state at his deposition that he was "moving briskly" toward the store, away from the officers.  (Doc. No. 168 at 65.)

him, and put their boots on him.  (Id. at 57; 69-72.)  Plaintiff did not go to the hospital as a result of this incident.  As a result of the force used to arrest him, Plaintiff suffered and suffers continuous back pain, headaches, high blood pressure and loss of weight.  (See, e.g., id. at 63.)

After being handcuffed, Plaintiff was taken into the van and driven to the York County Police Station.  He was interrogated that day as well as the following day.  Plaintiff maintains that he was never read his Miranda rights and that he requested an attorney.  Defendants state that Plaintiff was at least twice read his rights, that he waived his rights, and while he was denied telephone calls, he did not specifically request to call his lawyer.  During the interrogation, Plaintiff made certain statements that were potentially incriminating, such as stating that he travels to California once a month to pick up his social security check.

Plaintiff was charged in the Court of Common Pleas of York County with possession with intent to deliver and attempted possession with intent to deliver.  (Doc. No. 149, Ex. 2, docket report; Court of Common Pleas docket on criminal cases 2022 ca 2001; 1760 ca 2001; 1345 ca 2001, available at http://ujsportal.pacourts.us/)  Plaintiff's attorney filed a motion to suppress and a petition for bail reduction.  Hearings were held on these matters and both motions were denied.  Plaintiff was tried by jury and convicted.  He appealed his sentence to the Superior Court.  That court summarily affirmed the Court of Common Pleas, Commonwealth v. James, 817 A.2d 1179 (Pa. Super. Ct. Dec 17, 2002), and Plaintiff's petition for allowance of appeal was denied by the Pennsylvania Supreme Court. Commonwealth v. James, 853 A.2d 360 (Pa. Jun 15, 2004).  Plaintiff filed Post Conviction Relief Act petitions in 2003 and 2004, which are currently pending in the state court system.

**III.   Standard of Review**

4

Pursuant to 28 U.S.C. § 636(b)(1)(C), "[a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  Id.

## IV.   Sipes's Motion to Dismiss

### A.   Standard of Review

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is properly granted when, taking all factual allegations and inferences as true, the moving party is entitled to judgment as a matter of law.  Markowitz v. Northeast Land, Co., 906 F.2d 100, 103 (3d Cir. 1990).  The burden is on the moving party to show that no claim has been stated.  Johnsrud v. Carter, 620 F.2d 29, 33 (3d Cir. 1980).  "A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).  However, "a court need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss."  Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906, 908 (3d Cir. 1997).

### B.   Personal Jurisdiction

Sipes has brought his motion to dismiss in part pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, challenging this Court's right to exercise personal jurisdiction over him.  The Magistrate Court recommended dismissing the suit on this basis, finding that "there is no indication that defendant Sipes specifically directed his conduct toward the State of Pennsylvania, regardless of whether the effects of his conduct were felt by the plaintiff here or not."  (Doc. No. 188 at 14.)  The

Court agrees that it lacks personal jurisdiction over Defendant Sipes, although for different reasons than those set forth in the Report and Recommendation.

A federal court sitting in diversity may exercise personal jurisdiction over a non-resident defendant to the extent permissible under the law of the state in which the court sits. Mellon Bank (East) PSFS v. Farino, 960 F.2d 1217, 1221 (3d Cir. 1992). Pennsylvania's long-arm statute permits jurisdiction over out-of-state defendants "based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa. Cons. Stat. Ann. § 5322(b). Therefore, the Pennsylvania statutory standard for assessing personal jurisdiction collapses into the constitutional one, and the exercise of personal jurisdiction is "proper as long as it [does] not violate due process." Mellon, 960 F.2d at 1221. Under the due process clause, a court may exercise personal jurisdiction over a non-resident defendant only when there are certain "minimum contacts" between the defendant and the forum state such that the defendant "would reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). "Once it has been decided that a defendant purposely established minimum contacts within the forum State, these contacts may be considered . . . to determine whether the assertion of personal jurisdiction would comport with [traditional notions of] fair play and substantial justice." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 466 (1985).

In this case, Sipes has averred, and Plaintiff does not dispute, that his only contacts with Pennsylvania were contacting the Attorney General's Office by telephone, shipping a package to that office, and testifying against James in September of 2001 at a preliminary hearing. (Doc. No. 135, Affidavit.) While these contacts ordinarily may not meet the minimum necessary for this Court to

6

exercise specific jurisdiction, in certain cases, under the "effect test" of <u>Calder v. Jones</u>, 465 U.S. 783

(1984), "an intentional tort directed at the plaintiff and having sufficient impact upon it in the forum may

suffice to enhance otherwise insufficient contacts with the forum such that the 'minimum contacts' prong

of the Due Process test is satisfied." <u>IMO Indus., Inc. v. Kiekert AG</u>, 155 F.3d 254, 260 (3d Cir.

1998) (citing <u>Keeton v. Hustler Magazine, Inc.</u>, 465 U.S. 770 (1984)).

In <u>Calder v. Jones</u>, the United States Supreme Court considered whether there was personal

jurisdiction in California over Florida-based defendants where the "brunt of the harm" from the

intentional tort was felt in California. 465 U.S. 783 (1984). The Court found that the California

court had jurisdiction over the Florida petitioners because "their intentional, and allegedly tortious,

actions were expressly aimed at California." <u>Id.</u> at 789. The Third Circuit requires that under this

"effects" test, the plaintiff demonstrate the following:

>  (1) The defendant committed an intentional tort;
>
>  (2) The plaintiff felt the brunt of the harm in the forum such that the forum can be said to
>  be the focal point of the harm suffered by the plaintiff as a result of that tort;
>
>  (3) The defendant expressly aimed his tortious conduct at the forum such that the forum
>  can be said to be the focal point of the tortious activity.

<u>IMO Indus.</u>, 155 F.3d at 265-66; <u>see also</u> <u>Reminck v. Manfredy</u>, 238 F.3d 248 (3d Cir. 2001)

(applying three-part test of <u>IMO Industries</u>).

Here, the tort alleged against Sipes is unlawful search and seizure. Plaintiff claims that the

allegedly unlawful search of his mailbox and the seizure of his person was initiated and put into action by

Sipes from California. If there was an intentionally unlawful search and seizure, Plaintiff would satisfy

the first prong of the <u>IMO Industries</u> test. However, as discussed in more detail below, the

Pennsylvania state courts have already determined that the search and seizure of James was lawful.

Accordingly, Plaintiff cannot demonstrate that Defendant Sipes committed an intentional tort.

Therefore, regardless of whether Plaintiff felt the harm in Pennsylvania or Sipes's conduct was aimed

toward Pennsylvania, this Court cannot exercise personal jurisdiction over Defendant Sipes.

Accordingly, this Court need not address Defendant's argument that he was not properly

served with Plaintiff's complaint pursuant to Fed. R. Civ. P. 4(e) or that the complaint fails to state a

claim upon which relief can be granted.

## V.      Police Defendants' Motion for Summary Judgment

Defendants Morgan, Westmoreland, Peddicord, Craul, Glowczewski, Kessler, and Fells

("police Defendants") have moved for summary judgment, arguing that the remaining claims against

them should be dismissed.

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56.

A factual dispute is material if it might affect the outcome of the suit under the applicable law.  Anderson

v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A factual dispute is genuine only if there is a

sufficient evidentiary basis which would allow a reasonable fact-finder to return a verdict for the non-

moving party.  Id. at 249.  The nonmoving party receives the benefit of all reasonable inferences.

Sempier v. Johnson and Higgins, 45 F.3d 724, 727 (3d Cir. 1995).

Once the moving party has shown that there is an absence of evidence to support the claims of

the non-moving party, the non-moving party may not simply sit back and rest on the allegations in the

complaint.  Instead, [it] must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden at trial."  Id. at 322.

###### A.    Eighth Amendment Claim of Excessive Bail

The police Defendants argue that Plaintiff's Eighth Amendment claim must be dismissed because none of the Defendants had authority to set the bail against Plaintiff.  The Magistrate Court recommended that the claim be dismissed, noting that whether enforcement officers can be liable under this theory is an open question and finding that because Plaintiff's motion to reduce his bail was heard and denied by the state courts, the claim must be dismissed.  Plaintiff objects to this recommendation.  Plaintiff alleges that Defendants Craul and Morgan gave false testimony which influenced the setting of bail and that Defendants Peddicord, Craul, and Morgan played a "significant role" in setting bond. (Doc. No. 199, ¶¶ 13, 17; Doc. No. 178, ¶ 6.)

The Eighth Amendment to the United States Constitution grants to a defendant in a criminal case the right to reasonable bail. U.S. Const. amend. VIII.  A claim for a violation of this right is therefore cognizable under 42 U.S.C. § 1983.  In Wagenmann v. Adams, 829 F.2d 196 (1st Cir. 1987), the Court of Appeals for the First Circuit upheld a jury finding of liability under § 1983 against a police officer for failure to set reasonable bail.  The Court noted that even though the officer "lacked statutory power to accomplish the end by himself," he could be liable under § 1983 because "[t]he

record strongly implies that [the defendant] did appreciably more [than arrest the plaintiff]:  helping to shape, and exercising significant influence over, the bail decision."  Id. at 211-13

Here, not only did the police officers not have the authority to set or reduce bail, Pa R. Crim. P. 520; 131, their involvement did not rise to the level of "helping to shape" or "exercising significant influence over the bail decision.  Wagenmann, 829 F.2d at 213.  Plaintiff recognizes that the authority to set bail in his case rested with the judiciary, as he argues in his brief that the "District Justice should have made a more thorough investigation on the evidences [sic] presented to him, in a neutral manner," rather than relying on the testimony of Craul and Morgan.  (Doc. No. 177 at 11.)  More importantly, Plaintiff moved to reduce the bail set by the District Justice, and his motion was heard by Judge John Thompson in the Court of Common Pleas, York County.  (Doc. No. 200, Ex. 3.)   None of the police Defendants testified or had any involvement at the bail hearing; the court heard argument from the attorneys and then denied Plaintiff's motion, finding that he was a flight risk and the amount of bail ($2.5 million) was necessary to ensure Plaintiff's appearance at trial.  Id.

Therefore, even if it is possible to advance a § 1983 claim against police officers under this theory, in this case, because the bail determination was already challenged by Mr. James and was upheld by a judge, this Court agrees with the Magistrate that principles of federalism, comity and judicial economy require that this claim be dismissed.

### B.     Fifth Amendment Claim for Miranda Violations

Defendants argue that Plaintiff is not entitled to relief on his Fifth Amendment claim because Plaintiff has not demonstrated that his custodial statements were used against him at trial and that Heck bars the claim.  Heck v. Humphrey, 512 U.S. 477, 487 (1994).  The Magistrate Judge adopted

Defendants argument, stating that "[t]here is no evidence that any alleged Un-Mirandized statements were ever used against the plaintiff." (Doc. No. 188 at 18.) Plaintiff objects to the recommendation that his Fifth Amendment claim be dismissed, arguing that statements he made while in police custody were used against him at various pre-trial and trial proceedings. (Doc. No. 198 at 22.) Plaintiff also argues that he has a claim for denial of his right to counsel which was not addressed by the Magistrate.

First, it is clear that the statements Plaintiff made while subject to police interrogation following his arrest at Mail Boxes Etc. on January 10, 2001 were used against him in his criminal trial. (See, e.g., Doc. No. 200, Ex. 4, Notes and Testimony of Morgan at 95-99.) In the cases cited by the Magistrate, Chavez v. Martinez, 538 U.S. 760 (2003) and Renda v. King, 347 F.3d 550 (3d Cir. 2003), un-Mirandized statements were not used against the criminal defendants because charges were either never brought, or dropped. Those cases explain that there is no inherent constitutional violation for failure to follow the prescriptions of Miranda v. Arizona, 384 U.S. 436 (1966), but rather that Miranda created procedural protections to safeguard a criminal defendant from self-incrimination. Chavez, 538 U.S. 760; Renda, 347 F.3d 550. Likewise, the right to counsel during custodial interrogation, "is merely a procedural safeguard, and not a substantive right." Giuffre v. Bissell, 31 F.3d 1241, 1256 (3d Cir. 1994). Therefore, if Plaintiff was not Mirandized, as he claims, he would have a § 1983 claim not for failure to Mirandize, but for violation of his Fifth Amendment right against self-incrimination.

However, Plaintiff already challenged the use of his custodial statements against him in his motion to suppress, filed in the York County Court of Common Pleas. (Doc. No. 149, Ex.2.) There, the judge denied the motion and held that Plaintiff had waived his Miranda rights. (Doc. No. 200, Ex. 4;

Plaintiff's deposition at 105-106.)  Plaintiff cannot now launch a collateral challenge to the waiver in his

civil trial.  Because the state court determination has not been overturned, the Heck doctrine as well as

principles of res judicata bar this Court from revisiting the judicial determination that Plaintiff was read

his Miranda rights and waived them.   Accordingly, any claim that relies on Plaintiff's assertion that he

was interrogated without being read his rights and denied a lawyer must fail.

> ### C.    Fourth Amendment Claim for Unlawful Search and Seizure

Plaintiff continues to maintain that Defendants lacked probable cause to search his mailbox and

unlawfully seized him without an arrest warrant.  The Magistrate recommended dismissing this claim as

barred by Heck, and because Plaintiff already pursued a motion to suppress which was denied by the

state court.  This Court agrees on both points.

In Heck v. Humphrey, the Supreme Court ruled that a plaintiff is barred from prosecuting an

action that would necessarily imply the invalidity of his conviction or sentence "unless the plaintiff can

demonstrate that the conviction or sentence has [ ] been invalidated."  Heck v. Humphrey, 512 U.S.

477, 487 (1994).  Accordingly, "to recover damages for allegedly unconstitutional conviction or

imprisonment, or for other harm caused by actions whose unlawfulness would render conviction or

imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or

sentence invalid," the plaintiff must prove that "the conviction or sentence has been reversed on direct

appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a

determination, or called into question by a federal court's issuance of a writ of habeas corpus."  Id. at

486-87.

This Court previously allowed Plaintiff's unlawful search and seizure claim to proceed, noting

that the narrow exceptions laid out in Heck might apply.  James v. York County Police Dept., 167 F.

Supp. 2d 719, 722 (M.D. Pa. 2001).  However, in the intervening time, Plaintiff has not shown that the

search was unlawful or that the evidence might have come in through the doctrines of independent

source rule, inevitable discovery, or harmless error.  In fact, in his deposition testimony, Plaintiff

admitted that were it not for the California interception of the box addressed to Plaintiff's York mailbox

and interdiction by Pennsylvania law enforcement officials, there would be no evidence against him for

the controlled substance crimes for which he was charged and convicted.  (Doc. No. 200, Ex. 5,

Plaintiff's deposition at 110-13.)  It is now clear that the exception in Heck is inapplicable in the instant

case, but rather that Plaintiff's claim for unlawful search and seizure is nothing more than a collateral

attack on his conviction.

Furthermore, Plaintiff filed a motion to suppress the seized evidence, that motion was denied by

the state court.  That court rejected Plaintiff's argument that he was subjected to an unlawful search.

(Doc. No. 200, Ex. 1, N.T. of Sipes from suppression hearing.)  Therefore, any claim that presupposes

an unlawful search and seizure would invalidate the state court ruling which has likewise not been

overturned.  Therefore, these claims will be dismissed without prejudice to re-file in the event that his

conviction is invalidated.

**D.    Fourth Amendment Claim of Excessive Force**

Finally, the police Defendants argue, and the Magistrate agreed, that Plaintiff's claim of

excessive force brought pursuant to 42 U.S.C. § 1983 should be dismissed because they are entitled to

qualified immunity.  Whether there was excessive force is a different inquiry in the qualified immunity

context than at trial; in determining whether an officer is entitled to qualified immunity, the Court must

look at the evidence in the light most favorable to Plaintiff.  Saucier v. Katz, 533 U.S. 194, 201

(2001).  Defendants here argue that Plaintiff fails on either standard.

The doctrine of qualified immunity protects police officers performing discretionary

functions, such as arrests.  See Wilson v. Layne, 526 U.S. 603 (1999).  Qualified immunity

generally shields government officials from liability for civil damages, so long as the officials'

"conduct [did] not violate clearly established statutory or constitutional rights of which a

reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  In

determining whether qualified immunity applies, the Court considers:  (1) whether the plaintiff has

alleged the deprivation of an actual constitutional right, and if so, (2) whether the right was clearly

established at the time of the alleged violation.  Saucier, 533 U.S. at  200; Eddy v. Virgin Islands

Water and Power Auth., 256 F.3d 204, 208 (3d Cir. 2001).  This analysis must occur for each

individual defendant based on his particular conduct.  Grant v. City of Pittsburgh, 98 F.3d 116,

122 (3d Cir. 1996).  All allegations must be viewed in a light most favorable to Plaintiff.  Saucier,

533 U.S. at 201.

In determining whether a police officer is entitled to qualified immunity, both the existence

of a clearly established right and the objective reasonableness of the officers' actions are questions

of law for the Court to decide.  Sharrar v. Felsing, 128 F.3d 810, 828 (3d Cir. 1997); see also

Wilson, 526 U.S. 603.  There is an issue for the jury "[o]nly if the historical facts material to the

latter issue are in dispute . . . ."  Sharrar, 128 F.3d at 828.

### 1.    *Deprivation of Constitutional Right*

This Court must "determine first whether the plaintiff has alleged a deprivation of a

constitutional right at all, before reaching the question of whether the right was clearly established

at the time."  United Artists Theatre Circuit, Inc. v. Township of Warrington, 316 F.3d 392, 398-

99 (3d Cir. 2003) (quoting Johnson v. Newburgh Enlarged Sch. Dist., 239 F.3d 246, 251 (2d Cir.

2001)).  The standard for a claim of excessive force in the course of an arrest was enunciated by

the Supreme Court in Graham v. Connor, 490 U.S. 386 (1989).  The Court held that such claims

must be analyzed under the Fourth Amendment reasonableness standard, judged from the

perspective of a reasonable officer on the scene.  Id. at 395-96.   "To state a claim for excessive

force as an unreasonable seizure under the Fourth Amendment, a plaintiff must show that a seizure

occurred and that it was unreasonable."  Kopec v. Tate, 361 F.3d 772, 776 (3d Cir. 2004) (quoting

Estate of Smith v. Marasco, 318 F.3d 497, 515 (2003)).  Here, it is undisputed that Plaintiff's arrest

constituted a seizure.  Thus the only issue on the first prong of the qualified immunity test is whether the

seizure was reasonable.

        The Graham Court recognized that "the right to make an arrest or investigatory stop

necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."

Id. at 396.  Furthermore, "[n]ot every push or shove . . . violates the Fourth Amendment.  The calculus

of reasonableness must embody allowance for the fact that police officers are often forced to make

split-second judgments– in circumstances that are tense, uncertain, and rapidly evolving– about the

amount of force that is necessary in a particular situation."  Id. at 396-97 (internal citation omitted).

Therefore, a case-specific analysis must occur, balancing factors such as "the severity of the crime

at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and

whether he is actively resisting arrest or attempting to evade arrest by flight."  Graham, 490 U.S. at

396 (citing Tennessee v. Garner, 471 U.S. 1, 8-9 (1985)).

        The Magistrate dismissed out of hand that Plaintiff alleged a deprivation of a constitutional

right with respect to Defendants Craul, Kessler, Fells, Peddicord, Westmoreland, and Morgan.

Plaintiff alleges that he was handcuffed by either Peddicord or Craul in a rough manner and

thrown to the ground, where he was kept by the force of several officers' feet.  He alleges that

Kessler did not use any force, but should have intervened to stop the others.  Plaintiff states that the

force used to effectuate his arrest was excessive because he never was resisting arrest, he just did

not realize immediately that these were police officers and he was "moving briskly" away from

them to protect himself.   Even under the most generous reading of Plaintiff's allegations in his

pleadings, the force used by Defendants Craul, Kessler, Fells, Peddicord, Westmoreland ,and

Morgan in effectuating Plaintiff's arrest cannot be considered a deprivation of a right under the

standard for excessive force claims in Graham, 490 U.S. 386.  All that these officers did, by

Plaintiff's own account, was tackle him as he fled the scene, handcuffed him, and used their feet to

keep him down until they put him in the police van.  Given the fact that Plaintiff was clearly a

flight risk, it was objectively reasonable for the officers to use this modest amount of force for a

brief period of time to prevent him from fleeing.  In other words, the facts alleged by Plaintiff, even

if credited, would not establish that these officers' use of force was excessive in violation of the

Fourth Amendment.  Cf. Kopec v. Tate, 361 F.3d 772, 777 (3d Cir. 2004) (finding that placing

needlessly tight handcuffs on arrestee, failing to respond to pleas to loosen them, which resulted in

permanent never damage, stated claim of excessive force).

   With respect to Defendant Glowczeski, the Magistrate Court assumed that Plaintiff alleged a

deprivation of constitutional rights.   However, when considering the second prong, whether the

right was clearly established, the Magistrate noted that because Plaintiff was unable to prove that

he sustained any serious injuries as a result of being hit by the police van, the van incident could

not "constitute a violation of his Fourth Amendment rights." (Doc. No. 188 at 25.) It appears that the Magistrate conflated the two inquiries, because if injuries were required to constitute a violation, then Plaintiff would have failed to allege a deprivation and the inquiry would have ended. See Bennett v. Murphy, 274 F.3d 133, 136 (3d Cir. 2002) ("If the plaintiff fails to make out a constitutional violation, the qualified immunity inquiry is at an end; the officer is entitled to immunity."). Furthermore, the absence of physical injury does not ipso facto mean that the force used was not excessive. Sharrar v. Felsing, 128 F.3d 810, 822 (3d Cir. 1997). Nevertheless, "the fact that the physical force applied was of such an extent as to lead to injury is indeed a relevant factor to be considered as part of the totality." Id.; see also Mellott v. Heemer, 161 F.3d 117, 123 (3d Cir. 1998) (considering fact that force resulting in little or no physical injury as bolstering conclusion that violent threats and pushing individuals into chair in the course of eviction were objectively reasonable).

In this case, Plaintiff was not injured seriously enough by the impact with the van to be taken to the hospital or to require immediate medical assistance. Although Plaintiff does state that he has sought ongoing medical treatment for back pain, high blood pressure, and loss of weight, which he attributes to the incident, the fact that his injuries were not severe and not necessarily attributable to the Defendants' actions is certainly a highly relevant factor in the constitutional inquiry. Balancing the minor injuries with the fact that Plaintiff was fleeing from the officers and that he was suspected of dealing large quantities of drugs and thus perhaps thought to be a safety threat to the officers, it was reasonable for Glowczeski to use the van to stop Plaintiff from fleeing the scene.

Plaintiff argues in his objections to the Report and Recommendation that Glowczeski's use of a police van to stop Plaintiff constituted the use of deadly force. The Court notes that Plaintiff's

deposition testimony belies that assertion, and it is not only implausible in this situation that the car was being used as a deadly weapon, but most likely also impossible. Based on Plaintiff's own allegations, the van was situated in such a way to stop Plaintiff from escaping; it bears repeating that Plaintiff hit the side of the van and was not hit head on with the van, so it is entirely possible that he hit a stationary object, despite his repeated insistence that the van was moving, albeit slowly. Qualified immunity operates to "protect officers from the sometimes hazy border between excessive and acceptable force." Saucier, 533 U.S. at 206. Here, Glowczeski's conduct did not lie within this "hazy border;" it was objectively reasonable. However, even assuming that it is true that Glowczeski was attempting to kill Plaintiff with the van, he would be entitled to qualified immunity because the force actually used was not excessive or deadly. See Graham, 490 U.S. at 397 ("the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.")

## VI.   Remaining Claims Against York County Police Department

This Court notes that the York City Police Department, as named in Plaintiff's complaint, has never filed a motion for summary judgment.[2] Despite this, the Magistrate previously recommended dismissing the Police Department Defendant, finding that they were not a separate legal entity capable of being sued under § 1983. (See Doc. No. 78 at 3-4 n.1) (citing Ngiraingas v. Sanchez, 858 F.2d

---

[2]Plaintiff represents in his motion to amend the complaint to add "York County Police Department" as a Defendant that this Defendant has refused to comply with his discovery requests because they are arguing that they are not a legal entity. Regardless of this technical difficulty, the Court will dismiss the claims against the Police Department because it is now clear that Plaintiff is unable to state a claim against that Defendant.

1368 (9th Cir. 1988); <u>Peterson v. Easton Police Dep't Criminal Investigations Division</u>, 1999 WL

718551 (E.D. Pa. 1999)).  Disagreeing with the Magistrate on this basis, this Court previously

concluded that: "Plaintiff has alleged that it was the custom or policy of the Police Department to use

excessive force against pre-trial detainees and deny them their right to contact counsel by telephone.  In

the absence of compelling authority to the contrary, this Court will decline to adopt the Magistrate's

finding that a police department is not a 'person' for § 1983, and will allow the action to proceed

against the Police Department Defendant." (Doc. No. 99 at 4).  Because there has been no argument

that the substance of the claim against the Police Department must fail, this Court has not had occasion

to examine the merits of the claim.  The Court has now done so, and has determined that Plaintiff's

claims against the York Police Department must be dismissed.

The Prison Litigation Reform Act allows courts to dismiss <u>sua</u> <u>sponte</u> frivolous or legally

insufficient claims brought by prisoners or plaintiffs proceeding <u>in</u> <u>forma</u> <u>pauperis</u>.  The statute provides,

in relevant part:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the
> court shall dismiss the case <u>at any time</u> if the court determines that--
>> (A) the allegation of poverty is untrue; or
>> (B) the action or appeal--
>>> (i) is frivolous or malicious;
>>> (ii) fails to state a claim on which relief may be granted; or
>>> (iii) seeks monetary relief against a defendant who is immune from such
>>> relief.

28 U.S.C. §1915(e)(2) (emphasis added); <u>see also</u> 28 U.S.C. § 1915A(b) (the Court shall review and

dismiss a prisoner complaint that "is frivolous, malicious, or fails to state a claim upon which relief may

be granted; or seeks monetary relief from a defendant who is immune from such relief").  The standard

19

of review for a §1915(e)(2)(B)(ii) failure to state a claim is the same as the standard for a 12(b)(6)

motion.  Grayson v. Mayview State Hosp., 293 F.3d 103 (3d Cir. 2002).

Plaintiff's complaint against the Police Department alleges a constitutionally deficient policy

regarding the use of force and reading of Miranda rights.  Because the Court has determined that the

force used against Plaintiff was not excessive and that he was in given his Miranda rights, Plaintiff

cannot assert a Monell claim against the Police Department.  In other words, the Police Department

cannot be held liable for any constitutional violations where Plaintiff is unable to show any constitutional

violations occurred.

Furthermore, Plaintiff is unable to amend his complaint to cure this problem unless the

determination that he was Mirandized is overturned by the state courts on appeal.  While courts should

give pro se plaintiffs the opportunity to amend a complaint before dismissing pursuant to 28 U.S.C.

§1915(e)(2), Grayson, 293 F.3d 103, in this case amendment would be futile since Plaintiff is unable to

show that his conviction has been overturned.  Accordingly, the complaint against the York Police

Department will be dismissed pursuant to § 1915(e)(2)(B)(ii).

## VII.    ORDER

Therefore, for the reasons discussed above, **IT IS HEREBY ORDERED THAT**:

1.    This Court **ADOPTS** the Report and Recommendation (Doc. No. 188) filed by Magistrate

Judge Mannion as specified above.

2.    Plaintiff's objections (Doc. No. 80) are **OVERRULED**.

3.    The motion to dismiss filed by Defendant Sipes (Doc. No. 135) is **GRANTED**.  Plaintiff's

claims against Sipes are dismissed in their entirety.

4.     The motion for summary judgment filed by Defendants Morgan, Westmoreland, Peddicord,

Craul, Glowczewski, Kessler and Fells (Doc. No. 146) is **GRANTED**.  The Clerk of Court is

directed to enter judgment for Defendants and against Plaintiff on all claims.

5.    All remaining claims against York City Police Department are **DISMISSED** for failure to state

a claim pursuant to 28 U.S.C.§ 1915(e)(2)(B)(ii).

6.    Plaintiff's motion for order (Doc. No. 197); motion to amend (Doc. No. 206); and motion for

counsel (Doc. No. 208) are **DENIED** as moot.

7.    The Clerk of Court is directed to close the file.


 s/ Yvette Kane
Yvette Kane
United States District Judge

Date: May 6, 2005