DPS-46                                                                                      **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 05-2852
_____

TYRONE P. JAMES,
Appellant
v.

YORK COUNTY POLICE DEPARTMENT; JAMES H. MORGAN,
Agent/Investigator; DETECTIVE RICHARD PEDDICORD;
RAYMOND E. CRAUL, Detective; SERGEANT GENE FELLS;
DETECTIVE KESSLER, York County Drug Task Force;
CORRECTIONAL OFFICER BAYLARK, York County Prison;
RANDY SNIPES; BRIAN WESTMORLAND; DETECTIVE GLOWCZESKI

_____

On Appeal From the United States District Court
For the Middle District of Pennsylvania
(D.C. Civ. No. 01-cv-01015)
District Judge: Honorable Yvette Kane
_____

Submitted For Possible Dismissal Under 28 U.S.C. § 1915(e)(2)(B) or Summary Action
Under Third Circuit LAR 27.4 and I.O.P. 10.6
November 10, 2005

Before: ROTH, FUENTES AND VAN ANTWERPEN, <u>CIRCUIT</u> <u>JUDGES</u>

(Filed: December 8, 2005 )
_____

OPINION
_____

1

PER CURIAM

    Tyrone James sued the York County Police Department and police and correctional officers for alleged constitutional violations arising from his treatment during his January 2001 arrest, detention, interrogation, and prosecution for state drug charges. Specifically, pursuant to 42 U.S.C. § 1983, he claimed violations of the Fourth Amendment (for an illegal search and seizure, and the use of excessive force during his arrest), the Fifth Amendment (for compelled self-incrimination, <u>Miranda</u> violations, and violations of his right to counsel), the Sixth Amendment (for violations of his right to counsel), the Eighth Amendment (for the use of excessive force and the setting of an excessive bond), and the Fourteenth Amendment (for the use of excessive force).

    Because the allegations on which James based his claims are familiar to the parties, we will recount them only briefly. A California employee of a mailbox rental company reported a suspicious package to a California narcotics officer. After finding drugs in the package, the narcotics officer called the Pennsylvania authorities to set up a sting. Police in Pennsylvania constructed a dummy package and placed it in the Pennsylvania mailbox rental facility where James leased a mailbox. When James claimed the package, two undercover police officers approached him. James dropped the box and began to move away from the officers. The side of a slow-moving van, driven by another officer, hit him. Other officers surrounded him, stepped on him, and handcuffed him. The police arrested James, but they did not read him his <u>Miranda</u> rights

2

before interrogating him. Police and correctional officers refused his requests to call his family members and his lawyer. While James was being interrogated, police officers harassed his wife. Three officers took James to his bail hearing, where his bond was set at $2.5 million dollars, payable in cash only. Those three officers harassed James' wife and her sister at the bail hearing.

After screening James' case pursuant to 28 U.S.C. § 1915A, in an order dated September 18, 2001, the District Court dismissed the harassment claims that James brought on behalf of his wife and her sister, as well as the claims James filed in order to end or alter his state prosecution and confinement. On the motion of some Defendants, the District Court, in its order of October 8, 2003, dismissed James' Sixth Amendment claim of denial of counsel, and his Eighth and Fourteenth Amendment claims of excessive force, for failure to state a claim. On November 12, 2003, upon review of a motion for summary judgment, the District Court dismissed James' claims against Correctional Officer Baylark, for failure to exhaust administrative remedies. The District Court dismissed the suit against Randy Sipes[1] for lack of personal jurisdiction on Sipes' motion pursuant to Rule 12(b)(2) and Rule 12(b)(6) of the Federal Rules of Civil Procedure. Under § 1915A, the District Court again evaluated the claims against the York County Police Department, and dismissed them for failure to state a claim in its order of May 6, 2005. In that order, the District Court also granted summary judgment in

---

[1] We substitute the correct spelling for Defendants' names where necessary.

favor of the remaining Defendants on the remaining claims.  Over the course of the case, the District Court also denied James' motions for appointment of counsel and his discovery motions.  James appeals and moves for appointment of counsel.

We have jurisdiction pursuant to 28 U.S.C. § 1291.  The first issue is the scope of our review.  James identified two District Court orders in his notice of appeal, the final judgment entered on May 6, 2005, and an order of February 20, 2002,[2] in which the District Court denied two of James' motions for appointment of counsel and denied one of James' discovery motions without prejudice to refiling after the District Court ruled on a then-pending motion to dismiss.  Although Rule 3 of the Federal Rules of Appellate Procedure requires an appellant to designate the "judgment, order, or part thereof appealed from," an appeal from a final judgment will implicate all non-final orders and rulings which produced the judgment.  See Polanski v. Trump Taj Mahal Assocs., 137 F.3d 139, 144 (3d Cir. 1998).  For that reason, we will review all the District Court orders described above, insomuch as they dismiss James' claims, not just the two District Court orders that James listed in his notice of appeal.

James also specifically appeals from "the Order dated May 4, 2004," in which a Magistrate Judge denied some of James' discovery motions.  Because a Magistrate Judge issued the order of May 4, 2004, under the authority of 28 U.S.C. § 636(b)(1)(A), James

---

[2] The order that James identifies as the February 20, 2000 order is the order stamped as filed on February 20, 2002, but listed on the District Court docket as filed on February 25, 2002.  It is the order entered on February 26, 2002.

was obligated to preserve his objections to that order by timely objecting to it in the District Court.  See United Steelworkers of America v. New Jersey Zinc Co., 828 F.2d 1001, 1007-08 (3d Cir. 1987).  James only objected to a portion of that order, insomuch as it granted Defendants' motion to depose him and denied him a protective order from the proposed deposition pending the resolution of one of his motions for appointment of counsel.  Therefore, we will review the aspect of the Magistrate Judge's order that the District Court considered.

After considering the relevant District Court orders, we will affirm because no substantial question is presented on appeal.  See L.A.R. 27.4.  Our review of the District Court's orders dismissing James' claims for lack of subject matter jurisdiction and for failure to state a claim under 28 U.S.C. § 1915(e)(2) and Rule 12(b)(6) is plenary.  See Gould Electronics, Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000); Allah v. Seiverling, 229 F.3d 220, 223 (3d Cir. 2000); Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996).  We likewise exercise plenary review over the District Court's grant of summary judgment.  See Abramson v. William Paterson College, 260 F.3d 265, 276 (3d Cir. 2001).  We review de novo the District Court's order dismissing claims against one Defendant for lack of personal jurisdiction, although we review any related factual findings for clear error.  Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 368 (3d Cir. 2002); Pennzoil Prods. Co. v. Colleli & Assocs., 149 F.3d 197, 200 (3d Cir. 1998).  Our review of the pertinent discovery orders is for an abuse of discretion.  See United States v. Al Hedaithy, 392 F.3d

580, 605 (3d Cir. 2004). Similarly, we review the orders denying the motions for appointment of counsel to evaluate whether the District Court clearly abused its discretion. See Tabron v. Grace, 6 F.3d 147, 155 n.4 (3d Cir. 1993).

First, the District Court properly dismissed, on screening pursuant to 28 U.S.C. § 1915A, the claims that James wished to bring on behalf of his wife and her sister. Ordinarily, a person does not have standing to vindicate the constitutional rights of a third party. See Barrows v. Jackson, 346 U.S. 249, 255 (1953). Although exceptions to this rule exist, see Singleton v. Wulff, 428 U.S. 106, 114-15 (1976), none applies in James' case. Therefore, James could not bring claims of police harassment on behalf of his wife or her sister. The District Court also did not err in dismissing, on screening, the portions of the complaint in which James sought to end or alter his state prosecution and confinement. See Preiser v. Rodriguez, 411 U.S. 475, 500 (1973).

In its order of October 8, 2003, the District Court properly dismissed some of James' claims. Specifically, to the extent that James brought his excessive force claim under the Eighth Amendment or the Due Process Clause of the Fourteenth Amendment, he failed to state a claim. The Eighth Amendment prohibits the use of excessive force against those convicted of a crime. See Graham v. Connor, 490 U.S. 386, 395 n.10 (1989). The Due Process Clause of the Fourteenth Amendment protects pretrial detainees, those charged with, but not yet convicted of, a crime, see Bell v. Wolfish, 441 U.S. 520, 523 (1979), from the use of excessive force. See Brown v. Borough of

6

Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990). James alleged the use of excessive force during the course of his arrest, before he was charged with, or convicted of, a crime. Therefore, the Eighth and Fourteenth Amendment protections against the use of excessive force were inapplicable.[3] Also, James failed to state a Sixth Amendment claim for denial of counsel. The Sixth Amendment right to counsel does not attach until the initiation of formal judicial proceedings. See Brewer v. Williams, 430 U.S. 387, 398 (1977). James based his denial of counsel claim on allegations that he was not permitted to call his lawyer or otherwise speak to counsel while he was being interrogated, which was before he was charged. (Complaint/Amended Complaint at Legal Claim 3.[4])

In its order of November 23, 2003, the District Court properly granted summary judgment in favor of the York County prison because James admitted that he brought no claims against the prison. (Objections to Report & Recommendation dated March 23, 2003, at 16-17.) The District Court also properly granted summary judgment in favor of Baylark on the ground that James did not exhaust his administrative remedies through the prison grievance system. Prisoners must exhaust all available administrative remedies

---

[3] Additionally, the "generalized notion of 'substantive due process'" under the Fourteenth Amendment, was not the guide for analyzing his claim because James could seek relief under a more explicit textual source of protection, the Fourth Amendment. Graham, 490 U.S. at 388. See also County of Sacramento v. Lewis, 523 U.S. 833, 842 (1998).

[4] James' complaint and amended complaint differ only in that his amended complaint was filed against three additional defendants. A document (doc. 22) that fleshes out his specific claims against the three additional defendants was treated as a supplement to his complaint.

before bringing a suit under 42 U.S.C. § 1983 about prison conditions. See 42 U.S.C. § 1997e(a); Spruill v. Gillis, 372 F.3d 218, 227 (3d Cir. 2004). Defendant Baylark showed, and James did not dispute, that James did not seek an administrative remedy. James argued, however, that he was not required to exhaust his administrative remedies because the exhaustion requirement did not apply to the type of suit he brought against Baylark. This argument is without merit because the exhaustion requirement applies to "all inmate suits about prison life, whether they involve general circumstances or particular episodes." Porter v. Nussle, 534 U.S. 516, 532 (2002).

James also claimed that the administrative remedy was not available to him because he was not given a copy of the prison handbook, which describes the grievance procedures, or otherwise made aware of the prison procedures. Baylark admitted that James did not receive a handbook until a month after the incident in question, but claimed that James was apprised of the procedures for filing a grievance upon admission into the prison. Construing the facts in the light most favorable to the non-moving party, the District Court concluded that James could not have filed a grievance because he was unaware of the grievance procedure when Baylark denied him use of the telephone. The District Court nonetheless granted summary judgment on the basis that James did not file a grievance even after he received a handbook one month later. James, however, claimed that he never received a handbook, and only later learned of the grievance procedure while researching his criminal case in the prison law library. Nonetheless, the result in

the District Court was correct. James should have filed a grievance when he discovered the administrative process. Although the prison could have rejected James' later-filed grievance as untimely, had it done so, the District Court could have evaluated whether James' resulting procedural default was excused because the application of the ordinary deadline for filing a grievance offended the Federal Constitution or the policy behind § 1997e(a). See Spruill, 372 F.3d at 232. Because James never filed a grievance, he failed to exhaust his administrative remedies and the District Court properly granted summary judgment in favor of Baylark.

The District Court also properly granted summary judgment in favor of Defendants Morgan, Westmoreland, Peddicord, Craul, Glowczewski, Kessler, and Fells, in its order of May 6, 2005. Although James argued that Craul and Morgan gave "false" testimony to influence the bond decision, and otherwise played a significant role, with Peddicord, in setting the bond amount, the District Court properly granted summary judgment in favor of those Defendants on the Eighth Amendment excessive bond claim. First, in Pennsylvania, the district justice, not the police officers, set bail. See Pa. R. Crim. P. 120. Although authority to set bail is not a determinative factor, see Wagenmann v. Adams, 829 F.2d 196, 211 (1st Cir. 1987), police involvement in the bail decision did not "manipulate" or "help to shape" or "exercise significant influence over"

the bond decision.[5]  See id. at 211-12.  Furthermore, no Defendant was involved in the hearing on James' motion to reduce bail in the Court of Common Pleas.  James submitted the transcript, which sets forth the attorneys' arguments on whether James was a flight risk and the trial court's decision that the amount of bail was necessary.  (Appendix to Objections to Report & Recommendation, Ex. 3.)  Moreover, as the District Court concluded, in light of the state court's decision to deny a bail reduction, principles of federalism, comity, and judicial economy precluded review.

      The District Court also properly granted summary judgment on the Fifth Amendment claims based on police interrogation without the benefit of Miranda warnings and the denial of his right to counsel.  The Fifth Amendment protects against compelled self-incrimination.  See Chavez v. Martinez, 538 U.S. 760, 766 (2003) (plurality).  Therefore, James cannot bring a claim pursuant to 42 U.S.C. § 1983 merely for being questioned before being provided with Miranda warnings.  See id. at 766-70; Renda v. King, 347 F.3d 550, 552 (3d Cir. 2003).  Likewise, he has no free-standing Fifth Amendment claim for denial of counsel during his interrogation.  See Giuffre v. Bissell, 31 F.3d 1241, 1256 (3d Cir. 1994).  Furthermore, to the extent that James' Fifth Amendment claims were based on assertions of compelled self-incrimination, Heck bars

---

[5]Even by James' description, the "false" testimony of which he complains is Craul and Morgan's testimony about the crime for which he has since been convicted.  To the extent that success on his excessive bond claim against Craul and Morgan would imply the invalidity of his conviction, Heck v. Humphrey, 512 U.S. 477, 487 (1994), bars his claim.

their review. See 512 U.S. at 487. His statements were used against him in his trial. (Appendix to Objections to Report & Recommendation, Ex. 4.) Questioning the evidence used in James' prosecution would put the validity of his still-valid conviction at issue. Furthermore, the state trial court already reviewed and rejected James' Fifth Amendment claims in ruling on a motion to suppress. (Appendix to Objections to Report & Recommendation, Ex. 5.)

The District Court's grant of summary judgment on James' Fourth Amendment claims for unlawful search and seizure was proper, too. James argued that his rental mailbox was unlawfully searched and that he was unlawfully seized. However, he conceded that his arrest and conviction were based on the evidence gathered from the mailbox rental company and its facilities. (James' Brief in Support of Motion to Compel Discovery (doc. 120) at 5; Appendix to Objections to Report & Recommendation, Ex. 5.) Therefore, his Fourth Amendment claims were a thinly-veiled collateral attack on his conviction. Accordingly, review of his Fourth Amendment claims is barred by Heck. See 512 U.S. at 487. Moreover, the state court previously rejected James' claims of unlawful search and seizure when it denied his suppression motion. (Appendix to Objections to Report & Recommendation, Ex. 1 & 5.)

The District Court did not err in granting summary judgment on the Fourth Amendment claims of excessive force on the basis of qualified immunity, either. Qualified immunity shields government officials from liability for civil damages "insofar

11

as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The inquiry into the applicability of qualified immunity is twofold: (1) whether the plaintiff alleged the deprivation of a constitutional right, and (2) whether that right was established at the time of the alleged deprivation. Saucier v. Katz, 533 U.S. 194, 201 (2001).

Whether James alleged a deprivation of his right to be free from excessive force in the course of his arrest turns on whether he showed that a seizure occurred and that it was unreasonable. See Kopec v. Tate, 361 F.3d 772, 776 (3d Cir. 2004). It is undisputed that James' arrest was a seizure, so the question becomes whether the force used in the arrest was unreasonable. Defendants contend that James did not allege the use of unreasonable force. Reasonableness is judged on the totality of the circumstances, including the seriousness of the crime, the safety threat posed by the suspect, the suspect's attempts to resist arrest or to evade it by flight. See Graham, 490 U.S. at 396; Kopec, 361 F.3d at 776 -77. Upon review of these factors, it is clear that the force used by Defendants Craul, Kessler, Fells, Peddicord, Westmoreland, and Morgan cannot be considered unreasonable. James alleged that after he threw down his package and moved away from police officers, he was thrown to the ground, roughly stepped on, and handcuffed by officers in the course of his arrest. As the District Court concluded, it was objectively reasonable for the officers to use a modest amount of force for a brief period

of time (until James was placed in a police van), to prevent James' escape.

The District Court also properly held that Defendant Glowczewski did not use an unreasonable amount of force, despite hitting James with the side of a van. The parties dispute whether the van was moving at the time of impact, but, for our purposes, we assume, as James testified at his deposition, that the van was moving at a nominal speed. (Supplement to Brief in Support of Defendants' Motion for Summary Judgment, Ex. 1.) Although James claimed physical injuries, he was able to stand up immediately after he was hit. (Id.) Under the circumstances, Glowczewski, in slowly moving the van to block James' escape, did not use unreasonable force. Cf. Sharrar v. Felsing, 128 F.3d 810, 822 (3d Cir. 1997).

In its order of May 6, 2005, the District Court also granted the motion to dismiss the complaint for lack of personal jurisdiction filed by Randy Sipes, the California narcotics officer involved in this case. James did not dispute that Sipes' only contacts with Pennsylvania were calling the Pennsylvania Attorney General's Office by telephone, shipping a package to that office, and testifying against James at a preliminary hearing. (Declaration of Randy Sipes.) The District Court held that such contacts were insufficient to establish personal jurisdiction under the "effects" test of Calder v. Jones, 465 U.S. 783, 789 (1984), because the tort of which James complained (the unlawful search of his mailbox and the seizure of his person) had been held lawful by the Pennsylvania courts. We disagree, but we will affirm on other grounds.

The District Court had personal jurisdiction over Sipes because Sipes' allegedly tortious acts were intended to have an impact on James in Pennsylvania. Defendants can "'reasonably anticipate being haled into court'" in the forum toward which they direct intentional and allegedly tortious conduct. Calder, 465 U.S. at 789-90. See also IMO Indus. v. Kiekert AG, 155 F.3d 254, 256 (3d Cir .1998). Nonetheless, although James alleged conduct that met the "effects test" set forth in Calder, the Pennsylvania courts have ruled on the legality of the search and seizure, as the District Court noted. In fact, as explained above, James' arrest and conviction were based on the evidence gathered from that search and seizure that the state courts ratified. (James' Brief in Support of Motion to Compel Discovery (doc. 120) at 5; Appendix to Objections to Report & Recommendation, Ex. 5.) Therefore, success on the claim against Sipes would imply the invalidity of James' conviction. Accordingly, James' Fourth Amendment claim against Sipes is barred by Heck. See 512 U.S. at 487. We will affirm on this alternative basis supported by the record. See Erie Telecomms. v. Erie, 853 F.2d 1084, 1089 (3d Cir. 1988).

In its order of May 6, 2005, the District Court additionally dismissed any remaining claims against York County Police Department pursuant to 28 U.S.C. § 1915A for failure to state a claim. Although the complaint, amended complaint, and supplement to the complaint do not include claims of a custom or policy to use excessive force or to deny Miranda warnings, the District Court addressed the policy claims that James put

forth in his Objections to a previous Report & Recommendation. ("Plaintiff Objection to Magistrate Proposed Findings For Report & Recommendation," filed March 26, 2003.) Specifically, James claimed that his treatment demonstrated that the Police Department had a policy of using excessive force and denying Miranda warnings. (Id.) The District Court held that success on James' policy claims was impossible because James had failed to show the constitutional violations on which his policy claims were based. Although at first blush, the District Court appears to go outside the pleadings to resolve the claims against the Police Department, the District Court only indirectly relies on other Defendants' submissions in support of summary judgment in their favor. The District Court more directly relies on law of the case, see Arizona v. California, 460 U.S. 605, 618 (1983), to dismiss the policy claims for failure to state a claim. Therefore, the order dismissing the claims against the York County Police Department was proper. As the District Court also correctly concluded, it would be futile for James to amend his complaint.

     After the District Court dismissed the claims against the York County Police Department and determined amendment was futile, no other claims remained. Therefore, the District Court did not err in denying, as moot, James' additional motion for appointment of counsel and for discovery, as well as his motion to amend the complaint.

     The District Court also did not abuse its discretion in previously granting Defendants' motion to depose James and denying James a protective order from the

proposed deposition pending the resolution of one of his motions for appointment of counsel. Defendants filed a motion to depose James because he was in prison. James, seeking to defer his deposition until after counsel was appointed, moved for a protective order. The District Court, having declined to appoint counsel, did not abuse its discretion when it denied James' motion and granted Defendants' motion. Likewise, in the order identified as the order of February 20, 2002, the District Court did not abuse its discretion in denying James' motion to compel and granting Defendants' motion for a protective order, both without prejudice to refiling after the District Court considered a pending motion to dismiss James' complaint.

Furthermore, the District Court did not clearly abuse its discretion in denying James' motions for appointment of counsel. The District Court identified the appropriate considerations and did not err in concluding that it was not necessary to appoint counsel. See Tabron, 6 F.3d at 155-58.

In sum, because our review of the pertinent orders entered by the District Court reveals no substantial issue on appeal, we will summarily affirm. James' motion for appointment of counsel is denied.